**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| | ) | Case No. 26-16423 |
| MAVERIX LLC | ) | |
| | ) | |
| | ) | Chapter 11 |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

***EX PARTE*** **MOTION FOR RULE 2004 EXAMINATION OF DEBTOR MAVERIX LLC AND PRODUCTION OF DOCUMENTS**

Sonoran Capital Advisors, LLC (the "Receiver"), the court-appointed receiver over Maverix LLC (the "Debtor") and Maverix Broadband, Inc. ("Broadband"), by and through undersigned counsel, submits this *Ex Parte* Motion for Rule 2004 Examination of Debtor Maverix LLC and Production of Documents (the "Motion"), and states as follows:

**BACKGROUND**

1. The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on August 31, 2026. [Docket No. 1].

2. On January 22, 2026, the District Court for the City and County of Denver appointed the Receiver over the Debtor, Broadband, and their receivership property. Among other things, the appointment order authorized the Receiver to obtain and investigate the entities' books and records, collect information concerning their assets and liabilities, image electronically stored information, and compel testimony and production concerning matters affecting administration of the receivership estate. Following the Debtor's bankruptcy filing, the Receiver also has duties as a custodian under 11 U.S.C. § 543.

3. The Receiver is a party in interest with a direct and substantial interest in identifying the Debtor's property and records and satisfying its custodial accounting and turnover obligations.

4. David R. Lindauer executed the Debtor's petition as its "Authorized Representative." [Docket No. 1]. The Debtor's Corporate Ownership Statement further states that

Broadband owns 100 percent of the membership interests in the Debtor pursuant to an Amended and Restated Operating Agreement effective January 1, 2023. [Docket No. 1, Attachment 3].

5. The Receiver has obtained and reviewed a copy of Broadband's 2023 federal Form 1120. In Schedule K, Broadband answered "yes" to the question asking whether it received assets in a transaction under 26 U.S.C. § 351 in which any transferred asset had a basis or fair market value exceeding $1 million.

6. The return includes a "Statement Pursuant to § 1.351-3(b) by Maverix Broadband, Inc." The statement identifies Maverix LLC as the transferor, reports a transfer date of January 1, 2023, describes the transferred property as a "Partnership Interest," reports a fair market value of $15,900,000, and an aggregate basis of $9,209,159, and states that no private letter ruling was issued.

7. The return does not identify the specific assets transferred, the consideration issued, the liabilities affected, or the source of the reported basis and value.

8. Treasury Regulation § 1.351-3(e) requires taxpayers to retain permanent records substantiating the amount, basis, and fair market value of property transferred and relevant facts concerning liabilities assumed or extinguished. Those records should disclose what the Debtor transferred, what it received, and how the transaction was recorded.

9. The Receiver has attempted to obtain the underlying transaction documents and tax substantiation materials from the accountant, without success. The Debtor and its management remain the primary sources of institutional testimony and documents concerning the Debtor's own transaction.

## THE REQUESTED EXAMINATION

10. The Receiver seeks a limited examination of the Debtor concerning the purported January 1, 2023 transaction and the production of the Documents identified in **Exhibit A**. The requested information is necessary to determine what property the Debtor owned before and after the transaction, whether any property was transferred to Broadband, whether the Debtor received stock or other consideration, and how the transaction affects the Debtor's present assets and liabilities.

11. The information is also necessary to evaluate the completeness and accuracy of the Debtor's bankruptcy schedules, statement of financial affairs, and tax disclosures; identify property of the estate; locate books and records; and allow the Receiver to satisfy its accounting and turnover obligations under § 543.

12. Because the requested testimony concerns the acts, records, and institutional knowledge of Maverix LLC, the examinee should be the Debtor. The Receiver requests that the Court designate Lindauer under Rule 9001(b)(5) as a person in control of the Debtor to appear and

testify on its behalf. The designation should not preclude the Debtor from producing any additional representative necessary to provide complete testimony concerning the identified topics.

## LEGAL STANDARD AND GOOD CAUSE

13. Rule 2004(a) provides that, "[o]n a party in interest's motion, the court may order the examination of any entity." The examination may concern the debtor's acts, conduct, or property; its liabilities and financial condition; matters affecting administration of the estate; the operation of its business; the source of money or property acquired for a plan; and any other matter relevant to the Chapter 11 case or formulation of a plan. Fed. R. Bankr. P. 2004(b).

14. Rule 2004 is the basic discovery device in bankruptcy and permits broad inquiry into a debtor's financial affairs and the location and extent of estate property. *In re Blinder, Robinson & Co.*, 127 B.R. 267, 273–75 (D. Colo. 1991); *In re Martino*, Case No. 11-31115-MER, 2011 WL 5856327, at *2 (Bankr. D. Colo. Nov. 17, 2011). The requested examination falls squarely within that purpose because it concerns an alleged transfer by the Debtor, the ownership of potentially substantial assets, the Debtor's tax reporting, and the records necessary to administer the case.

15. When the debtor is not a natural person, Rule 9001(b)(5) permits the Court to designate an officer, director, controlling member, or other person in control to appear for the debtor. Lindauer signed the petition for the Debtor and has repeatedly acted as the person controlling or speaking for Maverix LLC. He is therefore the appropriate initial representative for the Debtor's examination.

16. Local Bankruptcy Rule 2004-1(a) expressly permits an order for examination to issue on an *ex parte* application upon the filing of a motion and proposed order. The local rule further provides that the order may not substitute for the subpoena available under Federal Rule of Civil Procedure 45.

17. Good cause exists. The Debtor reported or participated in a transaction involving property with a reported value of $15.9 million, but the return does not identify the transferred assets and contains facially inconsistent descriptions. The underlying records have not been obtained from the accountant. Without the Debtor's testimony and production, the Receiver cannot reliably identify what property was transferred, reconcile the Debtor's and Broadband's records.

## THE PENDING OWNERSHIP COMPLAINT DOES NOT JUSTIFY DENYING THE LIMITED REQUEST

18. On September 18, 2026, CooperReilly Investment Fund, LLC ("CooperReilly") filed a complaint seeking a declaration concerning the extent of the Debtor's interest in certain assets and whether those assets are property of the estate (the "Ownership Complaint"). [Docket No. 51]. The Receiver is not the plaintiff in that proceeding.

19. The Receiver recognizes that Rule 2004 may not be used to evade the discovery protections applicable to issues directly being litigated in a pending adversary proceeding. *Blinder, Robinson*, 127 B.R. at 275. That limitation, however, is not an automatic bar to every Rule 2004 examination after a complaint is filed. It applies to the entities and issues affected by the pending proceeding, while separate parties in interest may examine matters beyond its scope and in furtherance of distinct bankruptcy interests. *In re Buick*, 174 B.R. 299, 305–06 (Bankr. D. Colo. 1994); *In re Martino*, Case No. 11-31115-MER, 2011 WL 5856327, at *3–4 (Bankr. D. Colo. Nov. 17, 2011).

20. The Receiver seeks the examination for independent main-case purposes: identifying the Debtor's property and records, verifying its bankruptcy and tax disclosures, locating custodial records, and performing the Receiver's duties under § 543. The Receiver does not seek through this Motion an adjudication of the Ownership Complaint, nor does it seek to displace discovery that must proceed under Rules 7026 through 7037.

**PROCEDURE**

21. Upon entry of the requested order, the Receiver will issue and serve a subpoena in accordance with Rules 2004(c) and 9016 and Federal Rule of Civil Procedure 45. The subpoena—not the proposed order—will command the Debtor's attendance and production, identify the date and place of compliance, and attach the topics and requests set forth in **Exhibit A**.

22. Consistent with Local Bankruptcy Rule 2004-1(b), the examination and production date will be no earlier than fourteen days after service of the examination order unless the parties agree otherwise or the Court enters a further order for good cause. Before serving a subpoena that commands production, the Receiver will provide the notice required by Federal Rule of Civil Procedure 45(a)(4).

**WHEREFORE,** the Receiver respectfully requests that the Court enter the accompanying proposed order authorizing a limited Rule 2004 examination of Maverix LLC, designating David R. Lindauer as the Debtor's representative and person in control for purposes of the examination, authorizing the Receiver to compel attendance and production through a subpoena issued under Rules 2004(c) and 9016 and Federal Rule of Civil Procedure 45, and granting such other relief as the Court deems just and proper.

**Dated:** Denver, Colorado
September 22, 2026

FENNEMORE CRAIG, P.C.

/s/*David A. Laird*

David A. Laird, Esq.
Fennemore Craig, P.C.
3615 Delgany Street, Suite 1100
Denver, CO 80216
Telephone: (303) 291-3200
Facsimile: (303) 291-3201
dlaird@fennemorelaw.com

*Counsel for Sonoran Capital Advisor*

**EXHIBIT A**

**TOPICS FOR EXAMINATION AND REQUESTS FOR PRODUCTION**

## I. DEFINITIONS

1. "Transaction" means the transaction or series of transactions reported, characterized, or intended to qualify as an exchange under 26 U.S.C. § 351 effective January 1, 2023, involving Maverix LLC and Maverix Broadband, Inc., including any contribution, assignment, exchange, transfer, restructuring, recapitalization, or reorganization associated with that transaction.

2. "Debtor" or "Maverix LLC" means Maverix LLC and all persons acting or purporting to act on its behalf.

3. "Broadband" means Maverix Broadband, Inc. and all persons acting or purporting to act on its behalf.

4. "Lindauer" means David R. Lindauer.

5. "Document" or "Documents" is used in the broadest sense permitted by Rules 2004 and 9016 and Federal Rule of Civil Procedure 45, and includes writings, electronically stored information, communications, spreadsheets, databases, accounting files, tax files, photographs, recordings, and tangible materials, whether draft or final.

6. "Communication" means every transmission of information, whether oral, written, electronic, or otherwise, including e-mail, text message, instant message, letter, memorandum, and notes memorializing an oral communication.

7. "Holdings" means Maverix Enterprise Holdings Inc. and all persons acting or purporting to act on its behalf.

## II. INSTRUCTIONS

1. Unless a request states otherwise, the relevant period is January 1, 2022 through the present.

2. Produce all responsive Documents within the Debtor's possession, custody, or control, including Documents held by current or former officers, managers, employees, accountants, tax preparers, attorneys, consultants, valuation professionals, or other agents that the Debtor has a legal right or practical ability to obtain.

3. Produce spreadsheets, accounting files, tax-preparation files, e-file packages, databases, and similar electronically stored information in native format with formulas and

metadata intact. Produce e-mails with attachments and family relationships preserved. Other Documents may be produced as searchable PDFs.

4. Produce Documents as maintained in the ordinary course of business or organize and label them to correspond to the numbered requests below.

5. If any responsive Document once existed but no longer exists, identify the Document, its former custodian, when and why it ceased to exist, and the person responsible for its loss, deletion, destruction, or disposition.

6. If any responsive material is withheld under a claim of privilege or protection, provide a privilege log that identifies the date, author, recipients, general subject matter, privilege asserted, and sufficient information to evaluate the claim without disclosing the privileged content.

7. Redact personal identifiers as required by Federal Rule of Bankruptcy Procedure 9037. The Receiver will cooperate concerning reasonable procedures for confidential taxpayer information or other protected material.

8. The requests are continuing. The Debtor must supplement its production if it later discovers additional responsive Documents or learns that a prior response was incomplete or incorrect.

**III. TOPICS FOR EXAMINATION**

1. The formation, ownership, capitalization, governance, management, and control of Maverix LLC, Broadband, and Holdings before, during, and after the Transaction.

2. The origin, purpose, negotiation, structure, timing, implementation, and intended legal, tax, accounting, and business consequences of the Transaction.

3. The exact property purportedly transferred in the Transaction, including whether it included any network assets, fiber or conduit, customer accounts, accounts receivable, contracts, permits, grant rights, equipment, vehicles, inventory, intellectual property, records, cash, intercompany interests, or other property.

4. The legal and beneficial ownership of each category of purportedly transferred property immediately before and immediately after the Transaction, and the Documents supporting that ownership.

5. The consideration issued, transferred, or received in connection with the Transaction, including any stock, membership interest, partnership interest, note, assumption of liabilities, cash, or other consideration.

6. All member, manager, shareholder, director, or officer approvals for the Transaction and the authority of every person who executed or approved any Transaction Document.

7. The derivation and support for the reported aggregate basis of $9,209,159 and reported fair market value of $15,900,000.

8. Every liability assumed, taken subject to, paid, discharged, extinguished, retained, or otherwise affected by the Transaction.

9. The federal and state tax treatment of the Transaction, including analyses, elections, statements, disclosures, and positions under 26 U.S.C. §§ 351, 357, 358, and 362 and Treasury Regulation § 1.351-3.

10. The accounting treatment of the Transaction on the books and records of Maverix LLC and Broadband, including journal entries, intercompany accounts, balance sheets, fixed-asset registers, depreciation schedules, and the reason Broadband reported network infrastructure placed in service before its incorporation as its depreciable property.

11. The preparation, review, execution, and filing of the 2023 federal and state tax returns of Maverix LLC and Broadband, including the information provided to the return preparer and all persons who participated in preparing or approving the § 1.351-3 statements.

12. The bases for the language in Broadband's § 1.351-3(b) statement describing the transferred property as both "stock" and a "Partnership Interest," stating that Maverix LLC owned Broadband's "outstanding partnership interests," and identifying Broadband with an EIN different from the EIN on the Form 1120.

13. The present location, custodian, accessibility, completeness, preservation, loss, deletion, or destruction of Transaction-related Documents and electronically stored information.

14. How the Transaction affects the Debtor's present identification of its assets, liabilities, equity interests, transfers, and financial affairs in this Chapter 11 case, including the Debtor's schedules and statement of financial affairs.

## IV. REQUESTS FOR PRODUCTION

1. All agreements, instruments, assignments, contribution documents, exchange agreements, restructuring documents, transfer documents, closing binders, schedules, signature pages, and other Documents that effected, memorialized, or purported to effect the Transaction.

2. All schedules, lists, analyses, or other Documents identifying the property included in or excluded from the Transaction, including Documents sufficient to identify any network assets, fiber, conduit, customer accounts, accounts receivable, contracts, permits, grant rights,

equipment, vehicles, inventory, intellectual property, records, cash, or intercompany interests transferred or retained.

3. Documents sufficient to establish the legal and beneficial owner of each item or category of property identified in response to Request No. 2 immediately before and immediately after the Transaction.

4. All written consents, minutes, resolutions, approvals, authorizations, notices, and waivers by any member, manager, director, officer, shareholder, or other governing person concerning the Transaction.

5. All stock certificates, membership-interest certificates, subscription agreements, stock ledgers, membership ledgers, capitalization tables, securities registers, and similar Documents reflecting any equity issued, cancelled, transferred, or held in connection with the Transaction.

6. All versions of the organizational documents, operating agreements, shareholder agreements, bylaws, and ownership records of Maverix LLC and Maverix Broadband, Inc. in effect from January 1, 2022 through December 31, 2023, including the Amended and Restated Operating Agreement identified in the Debtor's Corporate Ownership Statement.

7. All appraisals, valuation reports, fairness opinions, financial models, market analyses, projections, or other Documents supporting or relating to the reported fair market value of $15,900,000.

8. All Documents supporting or calculating the reported aggregate basis of $9,209,159, including asset-level tax-basis schedules, acquisition records, carryover-basis schedules, depreciation schedules, and reconciliations.

9. All schedules and Documents identifying liabilities assumed, taken subject to, paid, discharged, extinguished, retained, or otherwise affected by the Transaction.

10. All tax memoranda, analyses, opinions, elections, disclosures, worksheets, and other Documents concerning the application of 26 U.S.C. §§ 351, 357, 358, or 362; Treasury Regulation § 1.351-3; or any related federal or state tax provision to the Transaction.

11. All drafts and final versions of every statement prepared under Treasury Regulation § 1.351-3(a) or (b) concerning the Transaction, including the statement attached to Broadband's 2023 Form 1120 and any corresponding statement attached or intended to be attached to Maverix LLC's return.

12. The complete federal and state income tax returns of Maverix LLC, Broadband, and Holdings for tax years 2022 through 2024, including all schedules, statements, attachments,

amended or superseding returns, Forms 8879, e-file transmission files, and IRS or state acceptance acknowledgments.

13. All tax-preparation workpapers, source Documents, questionnaires, organizers, trial balances, adjusting entries, and other materials supplied to or received from any accountant or tax preparer concerning the Transaction or the returns identified in Request No. 12.

14. All engagement letters, invoices, and nonprivileged Communications with Armanino LLP, or any other accountant, tax preparer, bookkeeper, or financial professional concerning the Transaction, the transferred property, basis, fair market value, consideration, liabilities, ownership, or preparation of the § 1.351-3 statements.

15. All general-ledger entries, journal entries, adjusting entries, closing entries, trial balances, and account reconciliations recording or relating to the Transaction on the books of Maverix LLC or Maverix Broadband, Inc.

16. All fixed-asset registers, depreciation and amortization schedules, inventory records, and property ledgers of Maverix LLC and Maverix Broadband, Inc., as of December 31, 2022; January 1, 2023; and December 31, 2023.

17. All opening, closing, and post-Transaction balance sheets of Maverix LLC and Maverix Broadband, Inc., including any "Balance Sheet by Subsidiary" or comparable report reflecting entity-level ownership of assets and liabilities.

18. All intercompany receivable, payable, contribution, distribution, equity, due-to, due-from, or other intercompany account schedules and reconciliations concerning Maverix LLC, Broadband, or Holdings from January 1, 2022 through the present.

19. All Documents that explain, support, correct, or address the use in Broadband's § 1.351-3(b) statement of the terms "stock," "Partnership Interest," and "outstanding partnership interests," or the use of FEIN 95-1484889 rather than 92-1484889.

20. All Documents submitted to, received from, or exchanged with the Internal Revenue Service or any state taxing authority concerning the Transaction, including examination requests, responses, correspondence, notices, workpapers, proposed adjustments, and closing documents.

21. All Documents concerning the current location, custodian, possession, accessibility, loss, deletion, destruction, or inability to obtain any Document responsive to these requests.

22. Documents sufficient to identify every person with knowledge of the Transaction and every current or former custodian of Transaction-related Documents, including name, title or role, last known business address, telephone number, and e-mail address.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served this 22nd day of September, 2026, via CM/ECF notice and/or U.S. Mail.

| | | |
|---|---|---|
| ***Debtor***<br>**Maverix LLC**<br>2755 Winter Way<br>Parker, CO 80138<br>ELBERT-CO<br>Tax ID / EIN: 85-2283294<br>***aka* Maverix Broadband** | represented by | **Matthew Craig Campbell**<br>Law Offices of Matthew C Campbell LLC<br>170 E 12th St Ste 9<br>Durango, CO 81301<br>970-422-4270<br>Fax : 970-478-0178<br>matthew@cswlegal.com |
| ***U.S. Trustee***<br>**US Trustee**<br>Byron G. Rogers Federal Building<br>1961 Stout St.<br>Ste. 12-200<br>Denver, CO 80294<br>303-312-7230 | represented by | **Alan K. Motes**<br>Byron G. Rogers Federal Building<br>1961 Stout St.<br>Ste. 12-200<br>Denver, CO 80294<br>303-312-7999<br>Alan.Motes@usdoj.gov |
| ***CooperReilly Investment Fund, LLC*** | represented by | **Patrick R. Akers**<br>**Matthew Faga**<br>**Benjamin Wieck**<br>Markus Williams LLC<br>1775 Sherman Street, Ste 1950<br>Denver, Colorado 80203<br>303-830-0800<br>pakers@markuswilliams.com<br>mfaga@markuswilliams.com<br>bwieck@markuswilliams.com |
| ***Pinnacol Assurance*** | represented by | **J. Gregory McAuliffe**<br>McAuliffe Neiman PC<br>10901 West 120th Ave. Ste 130<br>Broomfield, Colorado 80021<br>(303) 996-8602<br>Email: gregg@mnpclaw.com |

*/s/Lisa R. Oliver*