# STATE OF COLORADO
# HCSM GRANT AGREEMENT

## COVER PAGE

| | |
|---|---|
| **State Agency**<br>Governor's Office of Information Technology | **Agreement Number**<br>185624 |
| **Grantee**<br>Maverix Broadband, Inc. | **Agreement Performance Beginning Date**<br>The Effective Date<br>**Agreement Expiration Date**<br>27 months after The Effective Date |
| **Agreement Funds Maximum Amount**<br>Initial Term<br>State Fiscal Years 2023-2025 $2,925,309.07 | **Fund Expenditure End Date**<br>11/3/2025 |
| **Total for All State Fiscal Years** **$2,925,309.07** | **Agreement Authority**<br>Authority to enter into this Grant exists in §C.R.S. 24-37.5-119, C.R.S.; funds have been budgeted, appropriated and otherwise made available, and a sufficient unencumbered balance thereof remains available for payment. Required approvals, clearance and coordination have been accomplished from and with appropriate agencies. |

| | | |
|---|---|---|
| **Matching Funds Amount** | $731,327.27 | **Matching Funds Percentage Required:** 29% |
| **Grant Funds Maximum Amount** | $2,193,981.80 | |
| **Total for All State Fiscal Years** | $2,925,309.07 | |

**Agreement Purpose**

The purpose of this Agreement is to provide funds from the Broadband Account held by the High Cost Support Mechanism third-party contractor to Grantee for deploying broadband infrastructure into unserved areas of Colorado. The purpose of this Agreement is further described in Exhibit A.

**Exhibits and Order of Precedence**

The following Exhibits and attachments are included with this Agreement:

1. Exhibit A, Statement of Work
2. Exhibit B, Budget
3. Exhibit C, Quarterly Reporting Form
4. Exhibit D, Quarterly Payment Request Form
5. Exhibit E, Project Completion Form
6. Exhibit F, Comprehensive Project Summary
7. Exhibit G, Budget Modification Form
8. Exhibit H, Sample Option Letter

In the event of a conflict or inconsistency between this Agreement and any Exhibit or attachment, such conflict or inconsistency shall be resolved by reference to the documents in the following order of priority:

1. Colorado Special Provisions in §18 of the main body of this Agreement.
2. The provisions of the other sections of the main body of this Agreement.
3. Exhibit A, Statement of Work.
4. Exhibit B, Budget.
5. Exhibit C, Quarterly Reporting Form.
6. Exhibit D, Quarterly Payment Request Form.
7. Exhibit E, Project Completion Form.

8. Exhibit F, Comprehensive Project Summary.
9. Exhibit H, Sample Option Letter
10. Exhibit G, Budget Modification Form.

**Principal Representatives**

| For the State: | For Grantee: |
|---|---|
| Brian Martin<br>Director of The Broadband Fund<br>Governor's Office of Information Technology<br>1575 Sherman St.<br>Denver, CO 80203<br>brian.martin@state.co.us | David Lindauer<br>10940 S Parker Rd, Suite 418<br>Parker, CO 80134<br>david@maverixbroadband.com |

## SIGNATURE PAGE

## THE PARTIES HERETO HAVE EXECUTED THIS AGREEMENT

Each person signing this Agreement represents and warrants that the signer is duly authorized to execute this Agreement and to bind the Party authorizing such signature.

| **GRANTEE** | **STATE OF COLORADO** |
|---|---|
| Maverix Broadband, Inc. | Jared S. Polis, Governor<br>Governor's Office of Information Technology<br>Anthony Neal-Graves, Chief Information Officer and Executive Director |
| DocuSigned by:<br>Signed: David Lindhauer<br>E95E41525981453... | DocuSigned by:<br>Signed: Alexis Monts<br>4235987998F1488... |
| Name: David Lindauer | Name: Alex Monts |
| Title: CEO | Title: CFO |
| Date: 8/2/2023 | Date: 8/2/2023 |

In accordance with §24-30-202, C.R.S., this Agreement is not valid until signed and dated below by the State Controller or an authorized delegate.

**STATE CONTROLLER**
**Robert Jaros, CPA, MBA, JD**

DocuSigned by:
Signed: Andi Hardy
5C95832D4F7B486...

Name: Andi Hardy

Title: Controller

Effective Date: 8/2/2023

# TABLE OF CONTENTS


COVER PAGE 1

SIGNATURE PAGE 2

1. 3
2. 3
3. 5
4. 7
5. 7
6. 9
7. 10
8. 11
9. 12
10. 13
11. 15
12. 15
13. 18
14. 18
15. 19
16. 19
17. 19
18. 23


## 1. PARTIES

This Agreement is entered into by and between Grantee named on the Cover Page for this Agreement (the "Grantee"), and the STATE OF COLORADO acting by and through the State agency named on the Cover Page for this Agreement (the "State"). Grantee and the State agree to the terms and conditions in this Agreement.

## 2. TERM AND EFFECTIVE DATE

A. Effective Date

This Agreement shall not be valid or enforceable until the Effective Date as shown on the Signature and Cover Page for this Agreement. The State shall not be bound by any provision of this Agreement before the Effective Date, and shall have no obligation to pay Grantee for any Work performed or expense incurred before the Effective Date, except as described in **§5.D**.

B. Fund Expenditure End Date

Grant Funds shall be expended by the Fund Expenditure End Date shown on the Signature and Cover Page for this Agreement, unless sooner terminated or further extended in accordance with the terms of this Agreement. The State shall have no obligation to pay Grantee for any Work performed or expense incurred after the Fund Expenditure End Date.

The State, at its sole discretion, shall have the option to extend the Fund Expenditure End Date under this Agreement beyond the date as shown on the cover page of this Agreement for a period, or for successive periods, of one year or less at the same rates and under the same terms specified in this Agreement. In order to exercise this option, the State shall

provide written notice to Grantee in a form substantially equivalent to the Sample Option Letter attached to this Agreement.

C. Initial Term

The Parties' respective performances under this Agreement shall commence on the Agreement Performance Beginning Date shown on the Cover Page for this Agreement and shall terminate on the Initial Agreement Expiration Date shown on the Cover Page for this Agreement (the "Initial Term") unless sooner terminated or further extended in accordance with the terms of this Agreement.

D. Extension Terms - State's Option

**[Reserved]**

E. End of Term Extension

If this Agreement approaches the end of its Initial Term, the State, at its discretion, upon written notice to Grantee as provided in **§14,** may unilaterally extend such Initial Term for a period not to exceed two months (an "End of Term Extension"). The provisions of this Agreement in effect when such notice is given shall remain in effect during the End of Term Extension. The End of Term Extension shall automatically terminate upon execution of a replacement Agreement or modification extending the total term of this Agreement.

F. Early Termination in the Public Interest

The State is entering into this Agreement to serve the public interest of the State of Colorado as determined by its Governor, General Assembly, or Courts. If this Agreement ceases to further the public interest of the State, the State, in its discretion, may terminate this Agreement in whole or in part. A determination that this Agreement should be terminated in the public interest shall not be equivalent to a State right to terminate for convenience. This subsection shall not apply to a termination of this Agreement by the State for breach by Grantee, which shall be governed by **§12.A.i.**

i. Method and Content

The State shall notify Grantee of such termination in accordance with **§14.** The notice shall specify the effective date of the termination and whether it affects all or a portion of this Agreement, and shall include, to the extent practicable, the public interest justification for the termination.

ii. Obligations and Rights

Upon receipt of a termination notice for termination in the public interest, Grantee shall be subject to the rights and obligations set forth in **§12.A.i.a.**

iii. Payments

If the State terminates this Agreement in the public interest, the State shall pay Grantee an amount equal to the percentage of the total reimbursement payable under this Agreement that corresponds to the percentage of Work satisfactorily completed and accepted, as determined by the State, less payments previously made. Additionally, if this Agreement is less than 60% completed, as determined by the State, the State may reimburse Grantee for a portion of actual out-of-pocket expenses, not otherwise reimbursed under this Agreement, incurred by Grantee which are directly attributable

to the uncompleted portion of Grantee's obligations, provided that the sum of any and all reimbursement shall not exceed the maximum amount payable to Grantee hereunder.

G. Grantee's Request for Termination

Grantee may request termination of this Grant by sending notice to the State, which includes the reasons for the termination and the effective date of the termination. If this Grant is terminated in this manner, then Grantee shall return any advanced payments made for work that will not be performed prior to the effective date of the termination. Approval of termination shall be at the sole discretion of the State, which may condition approval upon return of some or all of previously reimbursed expenses.

## 3. DEFINITIONS

The following terms shall be construed and interpreted as follows:

A. "**Agreement**" means this agreement, including all attached Exhibits, all documents incorporated by reference, all referenced statutes, rules and cited authorities, and any future modifications thereto.

B. "**Agreement Funds**" means the total of all of the funds contemplated by this Agreement including Grant Funds and Matching Funds.

C. "**Award**" means an award to Grantee funded in whole or in part by the State Broadband Deployment Board. The terms and conditions of the State Broadband Deployment Board Award flow down to any Subcontractor unless the terms and conditions of the State Broadband Deployment Board specifically indicate otherwise.

D. "**Breach of Agreement**" means the failure of a Party to perform any of its obligations in accordance with this Agreement, in whole or in part or in a timely or satisfactory manner. The institution of proceedings under any bankruptcy, insolvency, reorganization or similar law, by or against Grantee, or the appointment of a receiver or similar officer for Grantee or any of its property, which is not vacated or fully stayed within 30 days after the institution of such proceeding, shall also constitute a breach. If Grantee is debarred or suspended under §24-109-105, C.R.S. at any time during the term of this Agreement, then such debarment or suspension shall constitute a breach.

E. "**Budget**" means the budget for the Work described in Exhibit C.

F. "**Business Day**" means any day in which the State is open and conducting business, but shall not include Saturday, Sunday or any day on which the State observes one of the holidays listed in §24-11-101(1), C.R.S.

G. "**CORA**" means the Colorado Open Records Act, §§24-72-200.1, *et seq.*, C.R.S.

H. "**Effective Date**" means the date on which this Agreement is approved and signed by the Colorado State Controller or designee, as shown on the Signature for this Agreement.

I. "**End of Term Extension**" means the time period defined in **§2.E**.

J. "**Exhibits**" means the exhibits and attachments included with this Agreement as shown on the Cover Page for this Agreement.

K. **"Extension Term"** means the time period defined in **§2.D.**

L. **"Fund Expenditure Date"** means the date on which the Grant Funds shall be expended by, as defined in **§2.B**.

M. "**Goods**" means any movable material acquired, produced, or delivered by Grantee as set forth in this Agreement and shall include any movable material acquired, produced, or delivered by Grantee in connection with the Services.

N. "**Grant Funds**" means the funds that have been appropriated, designated, encumbered, or otherwise made available for payment by the State under this Agreement.

O. "**Incident**" means any accidental or deliberate event that results in or constitutes an imminent threat of the unauthorized access, loss, disclosure, modification, disruption, or destruction of any communications or information resources of the State, which are included as part of the Work, as described in §§24-37.5-401, *et seq*. C.R.S. Incidents include, without limitation, (i) successful attempts to gain unauthorized access to a State system or State Records regardless of where such information is located; (ii) unwanted disruption or denial of service; (iii) the unauthorized use of a State system for the processing or storage of data; or (iv) changes to State system hardware, firmware, or software characteristics without the State's knowledge, instruction, or consent.

P. "**Initial Term**" means the time period defined in **§2.C**.

Q. "**Matching Funds**" means the funds provided Grantee as a match required to receive the Grant Funds.

R. "**Party**" means the State or Grantee, and "Parties" means both the State and Grantee.

S. "**Services**" means the services to be performed by Grantee as set forth in this Agreement, and shall include any services to be rendered by Grantee in connection with the Goods.

T. "**State Confidential Information**" means any and all State Records not subject to disclosure under CORA. State Confidential Information shall include, but is not limited to, PII, and State personnel records not subject to disclosure under CORA. State Confidential Information shall not include information or data concerning individuals that is not deemed confidential but nevertheless belongs to the State, which has been communicated, furnished, or disclosed by the State to Grantee which (i) is subject to disclosure pursuant to CORA; (ii) is already known to Grantee without restrictions at the time of its disclosure to Grantee; (iii) is or subsequently becomes publicly available without breach of any obligation owed by Grantee to the State; (iv) is disclosed to Grantee, without confidentiality obligations, by a third party who has the right to disclose such information; or (v) was independently developed without reliance on any State Confidential Information.

U. "**State Fiscal Rules**" means the fiscal rules promulgated by the Colorado State Controller pursuant to §24-30-202(13)(a), C.R.S.

V. "**State Fiscal Year**" means a 12 month period beginning on July 1 of each calendar year and ending on June 30 of the following calendar year. If a single calendar year follows the term, then it means the State Fiscal Year ending in that calendar year.

W. "**State Records**" means any and all State data, information, and records, regardless of physical form, including, but not limited to, information subject to disclosure under CORA.

X. "**Subcontractor**" means third-parties, if any, engaged by Grantee to aid in performance of the Work. "Subcontractor" also includes sub-grantees of Grant Funds.

Y. "**Uniform Guidance**" means the Office of Management and Budget Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards.

Z. "**Work**" means the Goods delivered and Services performed pursuant to this Agreement.

Any other term used in this Agreement that is defined in an Exhibit shall be construed and interpreted as defined in that Exhibit.

## 4. STATEMENT OF WORK

Grantee shall complete the Work as described in this Agreement and in accordance with the provisions of Exhibit A. The State shall have no liability to compensate Grantee for the delivery of any goods or the performance of any services that are not specifically set forth in this Agreement.

## 5. PAYMENTS TO GRANTEE

A. Maximum Amount

Payments to Grantee are limited to the unpaid, obligated balance of the Grant Funds. The State shall have no obligation pay Grantee any amount under this Agreement that exceeds the Agreement Maximum amount shown on the Cover Page of this Agreement.

B. Payment Procedures

i. Invoices and Payment

a. The State shall pay Grantee in the amounts and in accordance with the schedule and other conditions set forth in Exhibit A.

b. Grantee shall initiate payment requests by invoice to the State, in a form and manner approved by the State. Grantee warrants that it will not attempt to invoice the State for any Work, materials, or supplies which are not reimbursable. *See* §3.1, Exhibit A.

c. The State shall pay each invoice within 45 days following the State's receipt of that invoice, so long as the amount invoiced correctly represents sufficient detail for the State to understand the Work Grantee claims to have completed and any materials or supplies utilized in the completion of that Work for which reimbursement is sought during the period that the invoice covers. If the State determines that the amount of any invoice is not correct, then Grantee shall make all changes necessary to correct that invoice.

d. The acceptance of an invoice shall not constitute acceptance of any Work performed or deliverables provided under this Agreement.

ii. Interest

Amounts not paid by the State within 45 days of the State's acceptance of the invoice shall bear interest on the unpaid balance beginning on the 45th day at the rate of 1% per month, as required by §24-30-202(24)(a), C.R.S., until paid in full; provided, however, that interest shall not accrue on unpaid amounts that the State disputes in writing. Grantee shall invoice the State separately for accrued interest on delinquent

amounts, and the invoice shall reference the delinquent payment, the number of day's interest to be paid and the interest rate.

iii. Payment Disputes

If Grantee disputes any calculation, determination or amount of any payment, Grantee shall notify the State in writing of its dispute within 30 days following the earlier to occur of Grantee's receipt of the payment or notification of the determination or calculation of the payment by the State. The State will review the information presented by Grantee and may make changes to its determination based on this review. The calculation, determination or payment amount that results from the State's review shall not be subject to additional dispute under this subsection. No payment subject to a dispute under this subsection shall be due until after the State has concluded its review, and the State shall not pay any interest on any amount during the period it is subject to dispute under this subsection.

iv. Available Funds-Contingency-Termination

The State is prohibited by law from making commitments beyond the term of the current State Fiscal Year. Payment to Grantee beyond the current State Fiscal Year is contingent on the appropriation and continuing availability of Grant Funds in any subsequent year (as provided in the Colorado Special Provisions). If federal funds or funds from any other non-State funds constitute all or some of the Grant Funds, the State's obligation to pay Grantee shall be contingent upon such non-State funding continuing to be made available for payment. Payments to be made pursuant to this Agreement shall be made only from Grant Funds, and the State's liability for such payments shall be limited to the amount remaining of such Grant Funds. If State, federal or other funds are not appropriated, or otherwise become unavailable to fund this Agreement, the State may, upon written notice, terminate this Agreement, in whole or in part, without incurring further liability. The State shall, however, remain obligated to pay for Services and Goods that are delivered and accepted prior to the effective date of notice of termination, and this termination shall otherwise be treated as if this Agreement were terminated in the public interest as described in **§2.F**.

C. Matching Funds

Grantee shall provide Matching Funds as provided in §7.1.1. of Exhibit A. Grantee shall have raised the full amount of Matching Funds prior to the Effective Date and shall report to the State regarding the status of such funds upon request. Grantee's obligation to pay all or any part of any matching funds, whether direct or contingent, only extend to matching those funds which are duly and lawfully appropriated for the purposes of this Agreement by the authorized representatives of Grantee and paid into Grantee's treasury or bank account. Grantee represents to the State that the amount designated "Grantee's Matching Funds" in Exhibit B has been legally appropriated for the purposes of this Agreement by its authorized representatives and paid into its treasury or bank account, is set-aside solely to be used as Matching Funds for Grantee's Work under this Agreement, and is not subject to conditions, restrictions, or encumbrances which could prevent Grantee's use of the Matching Funds. Grantee does not by this Agreement irrevocably pledge present cash reserves for payments in future fiscal years, and this Agreement is not intended to create a multiple-fiscal year debt of Grantee.

D. Reimbursement of Grantee Costs

The State shall reimburse Grantee's allowable costs, as further detailed in Exhibit A, not exceeding the maximum total amount described in Exhibit B and **§5.A** for all allowable costs described in this Grant and shown in the Budget, except that Grantee may adjust the amounts between each line item of the Budget without formal modification to this Agreement as long as Grantee provides notice to the State of the change, the change does not modify the total maximum amount of this Agreement or the maximum amount for any calendar year, and the change does not modify any requirements of the Work. However, any costs incurred by Grantee prior to the Effective Date shall not be reimbursed. Grantee's costs for Work performed after the Fund Expenditure End Date shown on the Signature and Cover Page for this Agreement, or after any phase performance period end date for a respective phase of the Work, shall not be reimbursable. The State shall only reimburse allowable costs described in this Agreement and shown in the Budget if those costs are:

i. Permitted to be reimbursed under the terms of Exhibit A;

ii. Reasonable and necessary to accomplish the Work and for the Goods and Services provided; and

iii. Equal to the actual net cost to Grantee (i.e. the price paid minus any items of value received by Grantee that reduce the cost actually incurred).

E. Close-Out

Grantee shall close out this Award within ninety (90) days after the Fund Expenditure End Date, or upon the two (2) year project completion deadline, whichever is sooner. To complete close-out, Grantee shall submit to the State all deliverables (including documentation) as defined in this Agreement and Grantee's final reimbursement request or invoice. The State may withhold up to 5% of the Grant Award until all final documentation has been submitted and accepted by the State as substantially complete. *See* §4.4. Exhibit A.

**2. REPORTING - NOTIFICATION**

A. Quarterly Reports

In addition to any reports required pursuant to **§16** or pursuant to any other Exhibit, for any Agreement having a term longer than three months, Grantee shall submit, on a quarterly basis, a written report specifying progress made for each specified performance measure and standard in this Agreement. Such progress report shall be in accordance with the procedures developed and prescribed by the State. Progress reports shall be submitted to the State not later than five (5) Business Days following the end of each calendar quarter or at such time as otherwise specified by the State.

B. Litigation Reporting

If Grantee is served with a pleading or other document in connection with an action before a court or other administrative decision making body, and such pleading or document relates to this Agreement or may affect Grantee's ability to perform its obligations under this Agreement, Grantee shall, within ten days after being served, notify the State of such action and deliver copies of such pleading or document to the State's Principal Representative identified on the Cover Page for this Agreement.

C. Performance and Final Status

Grantee shall submit all financial, performance and other reports to the State no later than 90 calendar days after the end of the Initial Term if no Extension Terms are exercised, or the final Extension Term exercised by the State, containing an evaluation and review of Grantee's performance and the final status of Grantee's obligations hereunder.

D. Violations Reporting

Grantee shall disclose, in a timely manner, in writing to the State, all violations of federal or State criminal law involving fraud, bribery, or gratuity violations. The State may impose any penalties for noncompliance allowed under 2 CFR Part 180 and 31 U.S.C. 3321, which may include, without limitation, suspension or debarment.

E. Annual Data Submission

During a period of five (five) years following the date of closeout of the Project by the State, Grantee must provide annual (calendar year) network performance data to the State Broadband Deployment Board (Board) by March 31 of each year. Information submitted to the Board must include: bandwidth or capacity; throughput; delay, latency and jittering; data loss and network errors; and network uptime and availability.

F. Network Outage Notification

During a period of five (5) years following the date of closeout of the Project by the State, Grantee must provide written notification to the Board of any network outage affecting more than 25 percent of service addresses located in the project area and lasting longer than eight (8) hours. The notification must be made within 15 calendar days of the outage beginning.

G. Open/Internet/Network Management Notification

Grantee must provide written notification to the Board within 15 calendar days of a federal agency issuing a final order or entering into a statement or consent decree regarding, or a committee of competent jurisdiction issuing a final judgement against, Grantee that Grantee has blocked lawful internet content, applications, services, or devices unless such blocking is conducted in a manner consistent with reasonable network management practices and disclosed in the grant application; engaged in paid prioritization of internet content; or regulate network traffic by throttling bandwidth or otherwise impair or degraded lawful internet traffic on the basis of intern et content, application, service or use of a non-harmful device unless such impairment or degradation is conducted in a manner consistent with reasonable network management practices or fails or refuses to disclose, subject to reasonable conditions to protect proprietary information, its network management practices.

## 3. GRANTEE RECORDS

A. Maintenance

Grantee shall make, keep, maintain, and allow inspection and monitoring by the State of a complete file of all records, documents, communications, notes and other written materials, electronic media files, and communications (including e-mails) pertaining in any manner to the Work or the delivery of Services (including, but not limited to the operation of programs) or Goods hereunder ("Grantee Records"). Grantee shall maintain such records for a period (the "Record Retention Period") of five years following the date of submission to the State of the final expenditure report, or if this Award is renewed quarterly or annually, from the date of the submission of each quarterly or annual report, respectively. If any litigation, claim, or audit related to this Award starts before expiration of the Record Retention Period, the Record Retention Period shall extend until all litigation, claims, or audit findings have been

resolved and final action taken by the State. A cognizant agency for audit, oversight or indirect costs, and the State, may notify Grantee in writing that the Record Retention Period shall be extended. For records for real property and equipment, the Record Retention Period shall extend three years following final disposition of such property.

B. Inspection

Grantee shall permit the State, the federal government, and any other duly authorized agent of a governmental agency to audit, inspect, examine, excerpt, copy and transcribe Grantee Records during the Record Retention Period. Grantee shall make Grantee Records available during normal business hours at Grantee's office or place of business, or at other mutually agreed upon times or locations, upon no fewer than two Business Days' notice from the State, unless the State determines that a shorter period of notice, or no notice, is necessary to protect the interests of the State. If requested by State, Grantee shall provide an electronic copy of Grantee Records in the form of a memory drive, secure file transfer, or other form of electronic transfer.

C. Monitoring

The State will monitor Grantee's performance of its obligations under this Agreement using procedures as determined by the State. The federal government and any other duly authorized agent of a governmental agency, in its discretion, may monitor Grantee's performance of its obligations under this Agreement using procedures as determined by that governmental entity. The State shall have the right, in its sole discretion, to change its monitoring procedures and requirements at any time during the term of this Agreement. The State shall monitor Grantee's performance in a manner that does not unduly interfere with Grantee's performance of the Work.

D. Final Audit Report

Grantee shall promptly submit to the State a copy of any final audit report of any audit performed on Grantee Records that relates to or affects this Agreement or the Work, whether the audit is conducted by Grantee or a third party.

## 4. CONFIDENTIAL INFORMATION-STATE RECORDS

A. Confidentiality

Grantee shall keep confidential, and cause all Subcontractors to keep confidential, all State Records, unless those State Records are publicly available. Grantee shall not, without prior written approval of the State, use, publish, copy, disclose to any third party, or permit the use by any third party of any State Records, except as otherwise stated in this Agreement, permitted by law or approved in writing by the State. Grantee shall provide for the security of all State Confidential Information in accordance with all policies promulgated by the Colorado Office of Information Security and all applicable laws, rules, policies, publications, and guidelines. Grantee shall immediately forward any request or demand for State Records to the State's Principal Representative.

B. Other Entity Access and Nondisclosure Agreements

Grantee may provide State Records to its agents, employees, assigns and Subcontractors as necessary to perform the Work, but shall restrict access to State Confidential Information to those agents, employees, assigns and Subcontractors who require access to perform their obligations under this Agreement. Grantee shall ensure all such agents, employees, assigns,

and Subcontractors sign agreements containing nondisclosure provisions at least as protective as those in this Agreement, and that the nondisclosure provisions are in force at all times the agent, employee, assign or Subcontractor has access to any State Confidential Information. Grantee shall provide copies of those signed nondisclosure provisions to the State upon execution of the nondisclosure provisions.

C. Use, Security, and Retention

Grantee shall use, hold and maintain State Confidential Information in compliance with any and all applicable laws and regulations in facilities located within the United States, and shall maintain a secure environment that ensures confidentiality of all State Confidential Information wherever located. Grantee shall provide the State with access, subject to Grantee's reasonable security requirements, for purposes of inspecting and monitoring access and use of State Confidential Information and evaluating security control effectiveness. Upon the expiration or termination of this Agreement, Grantee shall return State Records provided to Grantee or destroy such State Records and certify to the State that it has done so, as directed by the State. If Grantee is prevented by law or regulation from returning or destroying State Confidential Information, Grantee warrants it will guarantee the confidentiality of, and cease to use, such State Confidential Information.

D. Incident Notice and Remediation

If Grantee becomes aware of any Incident, it shall notify the State immediately and cooperate with the State regarding recovery, remediation, and the necessity to involve law enforcement, as determined by the State. Unless Grantee can establish that none of Grantee or any of its agents, employees, assigns or Subcontractors are the cause or source of the Incident, Grantee shall be responsible for the cost of notifying each person who may have been impacted by the Incident. After an Incident, Grantee shall take steps to reduce the risk of incurring a similar type of Incident in the future as directed by the State, which may include, but is not limited to, developing and implementing a remediation plan that is approved by the State at no additional cost to the State. The State may adjust or direct modifications to this plan, in its sole discretion and Grantee shall make all modifications as directed by the State. If Grantee cannot produce its analysis and plan within the allotted time, the State, in its sole discretion, may perform such analysis and produce a remediation plan, and Grantee shall reimburse the State for the reasonable costs thereof.

E. Reserved

## 5. CONFLICTS OF INTEREST

A. Actual Conflicts of Interest

Grantee shall not engage in any business or activities, or maintain any relationships that conflict in any way with the full performance of the obligations of Grantee under this Agreement. Such a conflict of interest would arise when a Grantee or Subcontractor's employee, officer or agent were to offer or provide any tangible personal benefit to an employee of the State, or any member of his or her immediate family or his or her partner, related to the award of, entry into or management or oversight of this Agreement.

B. Apparent Conflicts of Interest

Grantee acknowledges that, with respect to this Agreement, even the appearance of a conflict of interest shall be harmful to the State's interests. Absent the State's prior written approval, Grantee shall refrain from any practices, activities or relationships that reasonably appear to be in conflict with the full performance of Grantee's obligations under this Agreement.

C. Disclosure to the State

If a conflict or the appearance of a conflict arises, or if Grantee is uncertain whether a conflict or the appearance of a conflict has arisen, Grantee shall submit to the State a disclosure statement setting forth the relevant details for the State's consideration. Failure to promptly submit a disclosure statement or to follow the State's direction in regard to the actual or apparent conflict constitutes a breach of this Agreement.

D. Grantee acknowledges that all State employees are subject to the ethical principles described in §24-18-105, C.R.S. Grantee further acknowledges that State employees may be subject to the requirements of §24-18-105, C.R.S. with regard to this Agreement.

## 6. INSURANCE

Grantee shall obtain and maintain, and ensure that each Subcontractor shall obtain and maintain, insurance as specified in this section at all times during the term of this Agreement. All insurance policies required by this Agreement that are not provided through self-insurance shall be issued by insurance companies as approved by the State.

A. Workers' Compensation

Workers' compensation insurance as required by state statute, and employers' liability insurance covering all Grantee or Subcontractor employees acting within the course and scope of their employment.

B. General Liability

Commercial general liability insurance covering premises operations, fire damage, independent contractors, products and completed operations, blanket contractual liability, personal injury, and advertising liability with minimum limits as follows:

i. $1,000,000 each occurrence;

ii. $1,000,000 general aggregate;

iii. $1,000,000 products and completed operations aggregate; and

iv. $50,000 any one fire.

C. Automobile Liability

Automobile liability insurance covering any auto (including owned, hired and non-owned autos) with a minimum limit of $1,000,000 each accident combined single limit.

D. Professional Liability including Cyber/Network Security and Privacy Liability, and Pollution Legal Liability Insurance

Liability insurance covering civil, regulatory, and statutory damages, contractual damages, data breach management exposure, and any loss of income or extra expense as a result of actual or alleged breach, violation, or infringement of right to privacy, consumer data protection law, confidentiality or other legal protection for personal information, as well as

State Confidential Information, and unless covered under a separate policy as outlined below in §10(E), this liability insurance must cover pollution liability, with minimum limits as follows:

i. $1,000,000 each claim; and

ii. $1,000,000 general aggregate.

E. Pollution Legal Liability Insurance with minimum limits as follows:

i. $1,000,000 each claim

ii. $1,000,000 annual aggregate

iii. The Governor's Office of Information Technology (OIT) shall be named as an additional insured to the Pollution Legal Liability policy. If the Policy is a component of the Professional Liability Policy, the Additional Insured requirement is waived, and the Policy shall be written on a Claims Made form, with an extended reporting period of at least two year following final acceptance of the work.

F. Additional Insured

The State shall be named as additional insured on all commercial general liability policies (leases and construction contracts require additional insured coverage for completed operations) required of Grantee and Subcontractors.

G. Primacy of Coverage

Coverage required of Grantee and each Subcontractor shall be primary and noncontributory over any insurance or self-insurance program carried by Grantee or the State.

H. Cancellation

All commercial insurance policies shall include provisions preventing cancellation or non-renewal, except for cancellation based on non-payment of premiums, without at least 30 days prior notice to Grantee and Grantee shall forward such notice to the State in accordance with **§14** within seven days of Grantee's receipt of such notice.

I. Subrogation Waiver

All commercial insurance policies secured or maintained by Grantee or its Subcontractors in relation to this Agreement shall include clauses stating that each carrier shall waive all rights of recovery under subrogation or otherwise against Grantee or the State, its agencies, institutions, organizations, officers, agents, employees, and volunteers.

J. Public Entities

If Grantee is a "public entity" within the meaning of the Colorado Governmental Immunity Act, §§24-10-101, *et seq.*, C.R.S. (the "GIA"), Grantee shall maintain, in lieu of the liability insurance requirements stated above, at all times during the term of this Agreement such liability insurance, by commercial policy or self-insurance, as is necessary to meet its liabilities under the GIA. If a Subcontractor is a public entity within the meaning of the GIA, Grantee shall ensure that the Subcontractor maintain at all times during the terms of this Grantee, in lieu of the liability insurance requirements stated above, such liability insurance, by commercial policy or self-insurance, as is necessary to meet the Subcontractor's obligations under the GIA.

K. Certificates

For each commercial insurance plan provided by Grantee under this Agreement, upon the request of the State, Grantee shall provide to the State certificates evidencing Grantee's insurance coverage required in this Agreement within seven Business Days following the Effective Date. Grantee shall provide to the State certificates evidencing Subcontractor insurance coverage required under this Agreement within seven Business Days following the Effective Date, except that, if Grantee's subcontract is not in effect as of the Effective Date, Grantee shall provide to the State certificates showing Subcontractor insurance coverage required under this Agreement within seven Business Days following Grantee's execution of the subcontract. No later than 15 days before the expiration date of Grantee's or any Subcontractor's coverage, Grantee shall deliver to the State certificates of insurance evidencing renewals of coverage. At any other time during the term of this Agreement, upon request by the State, Grantee shall, within seven Business Days following the request by the State, supply to the State evidence satisfactory to the State of compliance with the provisions of this section.

## 7. BREACH OF AGREEMENT

In the event of a Breach of Agreement, the aggrieved Party shall give written notice of Breach of Agreement to the other Party. If the notified Party does not cure the breach, at its sole expense, within 30 days after the delivery of written notice, the Party may exercise any of the remedies as described in **§12** for that Party. Notwithstanding any provision of this Agreement to the contrary, the State, in its discretion, need not provide notice or a cure period and may immediately terminate this Agreement in whole or in part or institute any other remedy in this Agreement in order to protect the public interest of the State; or if Grantee is debarred or suspended under §24-109-105, C.R.S., the State, in its discretion, need not provide notice or cure period and may terminate this Agreement in whole or in part or institute any other remedy in this Agreement as of the date that the debarment or suspension takes effect.

## 8. REMEDIES

A. State's Remedies

If Grantee is in breach under any provision of this Agreement and fails to cure such breach, the State, following the notice and cure period set forth in **§11,** shall have all of the remedies listed in this section in addition to all other remedies set forth in this Agreement or at law. The State may exercise any or all of the remedies available to it, in its discretion, concurrently or consecutively.

i. Termination for Breach

In the event of Grantee's uncured breach, the State may terminate this entire Agreement or any part of this Agreement. Grantee shall continue performance of this Agreement to the extent not terminated, if any.

a. Obligations and Rights

To the extent specified in any termination notice, Grantee shall not incur further obligations or render further performance past the effective date of such notice, and shall terminate outstanding orders and subcontracts with third parties. However, Grantee shall complete and deliver to the State all Work not cancelled by the termination notice, and may incur obligations as necessary to do so within

this Agreement's terms. At the request of the State, Grantee shall assign to the State all of Grantee's rights, title, and interest in and to such terminated orders or subcontracts. Upon termination, Grantee shall take timely, reasonable and necessary action to protect and preserve property in the possession of Grantee but in which the State has an interest. At the State's request, Grantee shall return materials owned by the State in Grantee's possession at the time of any termination. Grantee shall deliver all completed Work Product and all Work Product that was in the process of completion to the State at the State's request.

b. Payments

Notwithstanding anything to the contrary, the State shall only pay Grantee for properly invoiced Work as of the date of termination. If, after termination by the State, the State agrees that Grantee was not in breach or that Grantee's action or inaction was excusable, such termination shall be treated as a as a termination in the public interest, and the rights and obligations of the Parties shall be as if this Agreement had been terminated in the public interest under **§2.F**.

c. Damages and Withholding

Notwithstanding any other remedial action by the State, Grantee shall remain liable to the State for any damages sustained by the State in connection with any breach by Grantee, and the State may withhold payment to Grantee for the purpose of mitigating the State's damages until such time as the exact amount of damages due to the State from Grantee is determined. The State may withhold any amount that may be due Grantee as the State deems necessary to protect the State against loss including, without limitation, loss as a result of outstanding liens and excess costs incurred by the State in procuring from third parties replacement Work as cover.

ii. Remedies Not Involving Termination

The State, in its discretion, may exercise one or more of the following additional remedies:

a. Suspend Performance

Suspend Grantee's performance with respect to all or any portion of the Work pending corrective action as specified by the State without entitling Grantee to an adjustment in price or cost or an adjustment in the performance schedule. Grantee shall promptly cease performing Work and incurring costs in accordance with the State's directive, and the State shall not be liable for costs incurred by Grantee after the suspension of performance.

b. Withhold Payment

Withhold payment to Grantee until Grantee corrects its Work.

c. Deny Payment

Deny payment for Work not performed, or that due to Grantee's actions or inactions, cannot be performed or if they were performed are reasonably of no value to the state; provided, that any denial of payment shall be equal to the value of the obligations not performed.

d. Removal

Demand immediate removal of any of Grantee's employees, agents, or Subcontractors from the Work whom the State deems incompetent, careless, insubordinate, unsuitable, or otherwise unacceptable or whose continued relation to this Agreement is deemed by the State to be contrary to the public interest or the State's best interest.

Reserved

iii. Remedy – Clawback of Grant Funds

a. By this Agreement, Grantee is agreeing to produce the Project defined in Exhibit A, and that, upon completion, the Project will meet the Project Completion Standards set forth in Exhibit A, **§3.1.3**, and to comply with the Project Closeout requirements contained in Exhibit A, **§4.4, §4.5,** and **§4.6.** Grantee agrees that the provisions detailed in the aforementioned paragraph are material, that Grantee's adherence to these terms is critical to the State's ability to assess Grantee's performance of the grant conditions contained herein, and that the State needs this information to ensure taxpayer funds are utilized properly. Accordingly, in the event of Grantee's uncured breach, Grantee agrees the State shall be entitled to the return of all Award Funds that Grantee received from the State by and through this Agreement, and that the State, in addition to its exercise of any of the Remedies described elsewhere in this Agreement, may pursue the return of all Grant Funds.

B. Grantee's Remedies

If the State is in breach of any provision of this Agreement and does not cure such breach, Grantee, following the notice and cure period in **§11** and the dispute resolution process in **§13** shall have the following remedies:

a. Reinstatement of Agreement

If this Agreement was wrongfully terminated or suspended, the Parties agree a court may re-instate this Agreement and, in doing so, require that the State agree to adjustment of dates and extension of the Term as needed to complete the Work and as the court deems just and proper.

b. Payment of Grant Award Funds

If a court finds any portion of the Grant Funds was wrongfully withheld or denied, or if suspension of this Agreement was wrongfully made by the State, Grantee shall be entitled to such portion of Grant Funds that were wrongfully withheld or denied, or such portion of the Grant Funds which were not reimbursed due to the State's wrongful suspension, plus interest on such wrongfully withheld, denied, or unreimbursed funds accruing at the rate and pursuant to the terms set forth in §5(b)(ii) above.

c. Specific Performance

Grantee may be afforded such specific performance as may be ordered by a court of competent jurisdiction, as allowed in law and equity.

d. Funding Limitation

The remedies set forth in subsections "a", "b", and "c" immediately above are subject to this subsection "d". Grantee agrees that this Grant Award is only an award of funds out of the money allocated to the Board pursuant to high cost support mechanism, as detailed in §24-37.5-119(3) and (9), C.R.S. Grantee agrees that, as described elsewhere in this Agreement, State law limits the availability of public funds. There is a risk that (i) money that remains unused will revert to other uses, (ii) the functions, duties, or authority of the Board may materially change, or its existence may cease altogether, (iii) the high cost support mechanism fund may cease to exist or contain no funds, or (iv) the law may change such that, for whatever reason, due to some operation of law, the money will no longer be available. Grantee accepts the risk of this occurring. The Parties agree that, in the event funding is temporarily unavailable, a court may direct the Board to allocate funding during its next fiscal year to address the remedies contained in sections "a" through "c" above.

This Section 12(B) sets forth the exclusive remedies for Grantee. No other remedies are permitted. Grantee is on notice that any entitlement to the Grant Award by Grantee is subject to the limitations described in this Section 12.

## 9. DISPUTE RESOLUTION

A. Initial Resolution

Except as herein specifically provided otherwise, disputes concerning the performance of this Agreement which cannot be resolved by the designated Agreement representatives shall be referred in writing to a senior departmental management staff member designated by the State and a senior manager designated by Grantee for resolution.

B. Resolution of Controversies

If the initial resolution described in **§13.A** fails to resolve the dispute within ten Business Days, Grantee shall submit any alleged breach of this Agreement by the State to the Procurement Official of the State Agency named on the Cover Page of this Agreement as described in §24-101-301(30), C.R.S. for resolution following the same resolution of controversies process as described in §§24-106-109, and 24-109-101.1 through 24-109-505, C.R.S. (the "Resolution Statutes"), except that if Grantee wishes to challenge any decision rendered by the Procurement Official, Grantee's challenge shall be an appeal to the executive director of the Department of Personnel and Administration, or their delegate, in the same manner as described in the Resolution Statutes before Grantee pursues any further action. Except as otherwise stated in this Section, all requirements of the Resolution Statutes shall apply including, without limitation, time limitations regardless of whether the Colorado Procurement Code applies to this Agreement.

## 10. NOTICES AND REPRESENTATIVES

Each individual identified as a Principal Representative on the Cover Page for this Agreement shall be the principal representative of the designating Party. All notices required or permitted to be given under this Agreement shall be in writing, and shall be delivered **(A)** by hand with receipt required, **(B)** by certified or registered mail to such Party's principal representative at the address set forth on the Cover Page, or **(C)** as an email with read receipt requested to the principal representative at the email address, if any, set forth on the Cover Page for this Agreement. If a Party delivers a notice to another through email and the email is undeliverable, then, unless the

Party has been provided with an alternate email contact, the Party delivering the notice shall deliver the notice by hand with receipt required or by certified or registered mail to such Party's principal representative at the address set forth on the Cover Page for this Agreement. Either Party may change its principal representative or principal representative contact information, or may designate specific other individuals to receive certain types of notices in addition to or in lieu of a principal representative, by notice submitted in accordance with this section without a formal amendment to this Agreement. Unless otherwise provided in this Agreement, notices shall be effective upon delivery of the written notice.

## 11. RIGHTS IN WORK PRODUCT AND OTHER INFORMATION

A. Exclusive Property of the State

Except to the extent specifically provided elsewhere in this Agreement, any pre-existing State Records, State software, research, reports, studies, photographs, negatives or other documents, drawings, models, materials, data and information shall be the exclusive property of the State (collectively, "State Materials"). Grantee shall not use, willingly allow, cause or permit Work Product or State Materials to be used for any purpose other than the performance of Grantee's obligations in this Agreement without the prior written consent of the State. Upon termination of this Agreement for any reason, Grantee shall provide all Work Product and State Materials to the State in a form and manner as directed by the State.

B. Exclusive Property of Grantee

Grantee retains the exclusive rights, title, and ownership to any and all pre-existing materials owned or licensed to Grantee including, but not limited to, all pre-existing software, licensed products, associated source code, machine code, text images, audio and/or video, and third-party materials, delivered by Grantee under this Agreement, whether incorporated in a Deliverable or necessary to use a Deliverable (collectively, "Grantee Property"). Grantee Property shall be licensed to the State as set forth in this Agreement or a State approved license agreement: (i) entered into as exhibits to this Agreement, (ii) obtained by the State from the applicable third-party vendor, or (iii) in the case of open source software, the license terms set forth in the applicable open source license agreement.

## 12. STATEWIDE CONTRACT MANAGEMENT SYSTEM

If the maximum amount payable to Grantee under this Agreement is $100,000 or greater, either on the Effective Date or at any time thereafter, this section shall apply. Grantee agrees to be governed by and comply with the provisions of §§24-106-103, 24-102-206, 24-106-106, and 24-106-107, C.R.S. regarding the monitoring of vendor performance and the reporting of Agreement performance information in the State's Agreement management system ("Contract Management System" or "CMS"). Grantee's performance shall be subject to evaluation and review in accordance with the terms and conditions of this Agreement, Colorado statutes governing CMS, and State Fiscal Rules and State Controller policies.

## 13. GENERAL PROVISIONS

A. Assignment

Grantee's rights and obligations under this Agreement are personal and may not be transferred or assigned without the prior, written consent of the State. Any attempt at assignment or transfer without such consent shall be void. Any assignment or transfer of

Grantee's rights and obligations approved by the State shall be subject to the provisions of this Agreement.

B. Subcontracts

Grantee shall not enter into any subcontract in connection with its obligations under this Agreement without providing notice to the State. The State may reject any such Subcontractor, and Grantee shall terminate any subcontract that is rejected by the State and shall not allow any Subcontractor to perform any work after that Subcontractor's subcontract has been rejected by the State. Grantee shall submit to the State a copy of each such subgrant or subcontract upon request by the State. All subgrants and subcontracts entered into by Grantee in connection with this Agreement shall comply with all applicable federal and state laws and regulations, shall provide that they are governed by the laws of the State of Colorado, and shall be subject to all provisions of this Agreement.

C. Binding Effect

Except as otherwise provided in **§17.A**, all provisions of this Agreement, including the benefits and burdens, shall extend to and be binding upon the Parties' respective successors and assigns.

D. Authority

Each Party represents and warrants to the other that the execution and delivery of this Agreement and the performance of such Party's obligations have been duly authorized.

E. Captions and References

The captions and headings in this Agreement are for convenience of reference only, and shall not be used to interpret, define, or limit its provisions. All references in this Agreement to sections (whether spelled out or using the § symbol), subsections, exhibits or other attachments, are references to sections, subsections, exhibits or other attachments contained herein or incorporated as a part hereof, unless otherwise noted.

F. Counterparts

This Agreement may be executed in multiple, identical, original counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same agreement.

G. Entire Understanding

This Agreement represents the complete integration of all understandings between the Parties related to the Work, and all prior representations and understandings related to the Work, oral or written, are merged into this Agreement. Prior or contemporaneous additions, deletions, or other changes to this Agreement shall not have any force or effect whatsoever, unless embodied herein.

H. Digital Signatures

If any signatory signs this agreement using a digital signature in accordance with the Colorado State Controller Contract, Grant and Purchase Order Policies regarding the use of digital signatures issued under the State Fiscal Rules, then any agreement or consent to use digital signatures within the electronic system through which that signatory signed shall be incorporated into this Agreement by reference.

I. Modification

Except as otherwise provided in this Agreement, any modification to this Agreement shall only be effective if agreed to in a formal amendment to this Agreement, properly executed and approved in accordance with applicable Colorado State law and State Fiscal Rules. Modifications permitted under this Agreement, other than Agreement amendments, shall conform to the policies issued by the Colorado State Controller.

J. Statutes, Regulations, Fiscal Rules, and Other Authority

Any reference in this Agreement to a statute, regulation, State Fiscal Rule, fiscal policy or other authority shall be interpreted to refer to such authority then current, as may have been changed or amended since the Effective Date of this Agreement.

K. External Terms and Conditions

Notwithstanding anything to the contrary herein, the State shall not be subject to any provision included in any terms, conditions, or agreements appearing on Grantee's or a Subcontractor's website or any provision incorporated into any click-through or online agreements related to the Work unless that provision is specifically referenced in this Agreement.

L. Severability

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect, provided that the Parties can continue to perform their obligations under this Agreement in accordance with the intent of this Agreement.

M. Survival of Certain Agreement Terms

Any provision of this Agreement that imposes an obligation on a Party after termination or expiration of this Agreement shall survive the termination or expiration of this Agreement and shall be enforceable by the other Party.

N. Taxes

The State is exempt from federal excise taxes under I.R.C. Chapter 32 (26 U.S.C., Subtitle D, Ch. 32) (Federal Excise Tax Exemption Certificate of Registry No. 84-730123K) and from State and local government sales and use taxes under §§39-26-704(1), *et seq.,* C.R.S. (Colorado Sales Tax Exemption Identification Number 98-02565). The State shall not be liable for the payment of any excise, sales, or use taxes, regardless of whether any political subdivision of the state imposes such taxes on Grantee. Grantee shall be solely responsible for any exemptions from the collection of excise, sales or use taxes that Grantee may wish to have in place in connection with this Agreement.

O. Third Party Beneficiaries

Except for the Parties' respective successors and assigns described in **§17.A,** this Agreement does not and is not intended to confer any rights or remedies upon any person or entity other than the Parties. Enforcement of this Agreement and all rights and obligations hereunder are reserved solely to the Parties. Any services or benefits which third parties receive as a result of this Agreement are incidental to this Agreement, and do not create any rights for such third parties.

P. Waiver

A Party's failure or delay in exercising any right, power, or privilege under this Agreement, whether explicit or by lack of enforcement, shall not operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege preclude any other or further exercise of such right, power, or privilege.

Q. CORA Disclosure

To the extent not prohibited by federal law, this Agreement and the performance measures and standards required under §24-106-107, C.R.S., if any, are subject to public release through the CORA.

R. Standard and Manner of Performance

Grantee shall perform its obligations under this Agreement in accordance with the highest standards of care, skill and diligence in Grantee's industry, trade, or profession.

S. Licenses, Certifications, Permits, and Other Authorizations

Grantee shall secure, prior to the Effective Date, and maintain at all times during the term of this Agreement, at its sole expense, all licenses, certifications, permits, and other authorizations required to perform its obligations under this Agreement, and shall ensure that all employees, agents and Subcontractors secure and maintain at all times during the term of their employment, agency or Subcontractor status, all licenses, certifications, permits and other authorizations required to perform their obligations under this Agreement.

T. Indemnification

i. General Indemnification

Grantee shall indemnify, save, and hold harmless the State, its employees, agents and assignees (the "Indemnified Parties"), against any and all costs, expenses, claims, damages, liabilities, court awards and other amounts (including attorneys' fees and related costs) incurred by any of the Indemnified Parties in relation to any act or omission by Grantee, or its employees, agents, Subcontractors, or assignees in connection with this Agreement.

ii. Confidential Information Indemnification

Disclosure or use of State Confidential Information by Grantee in violation of **§8** may be cause for legal action by third parties against Grantee, the State, or their respective agents. Grantee shall indemnify, save, and hold harmless the Indemnified Parties, against any and all claims, damages, liabilities, losses, costs, expenses (including attorneys' fees and costs) incurred by the State in relation to any act or omission by Grantee, or its employees, agents, assigns, or Subcontractors in violation of **§8**.

iii. Intellectual Property Indemnification

Grantee shall indemnify, save, and hold harmless the Indemnified Parties, against any and all costs, expenses, claims, damages, liabilities, and other amounts (including attorneys' fees and costs) incurred by the Indemnified Parties in relation to any claim that any Work infringes a patent, copyright, trademark, trade secret, or any other intellectual property right.

iv. Accessibility Indemnification

Grantee shall indemnify, save, and hold harmless the Indemnified Parties against any and all costs, expenses, claims, damages, liabilities, court awards and other amounts (including attorneys' fees and related costs) incurred by any of the Indemnified Parties in relation to Grantee's failure to comply with §§24-85-101, et seq., C.R.S., or the Accessibility Standards for Individuals with a Disability as established by OIT pursuant to Section §24-85-103 (2.5), C.R.S.

U. Compliance with State and Federal Law, Regulations, and Executive Orders

Grantee shall comply with all State and Federal law, regulations, executive orders, State policies, procedures, directives, and reporting requirements at all times during the term of this Grant.

V. Accessibility

i. Grantee shall comply with and the Work Product provided under this Agreement shall be in compliance with all applicable provisions of §§24-85-101, et seq., C.R.S., and the Accessibility Standards for Individuals with a Disability, as established by the OIT, pursuant to Section §24-85-103 (2.5), C.R.S. Grantee shall also comply with all State of Colorado technology standards related to technology accessibility and with Level AA of the most current version of the Web Content Accessibility Guidelines (WCAG), incorporated in the State of Colorado technology standards.

ii. The State may require Grantee's compliance to the State's Accessibility Standards to be determined by a third party selected by the State to attest to Grantee's Work Product and software is in compliance with §§24-85-101, et seq., C.R.S., and the Accessibility Standards for Individuals with a Disability as established by OIT pursuant to Section §24-85-103 (2.5), C.R.S.

**14. COLORADO SPECIAL PROVISIONS (COLORADO FISCAL RULE 3-3)**

These Special Provisions apply to all agreements except where noted in italics.

A. **STATUTORY APPROVAL. §24-30-202(1), C.R.S.**

This Agreement shall not be valid until it has been approved by the Colorado State Controller or designee. If this Agreement is for a Major Information Technology Project, as defined in §24-37.5-102(2.6), C.R.S., then this Agreement shall not be valid until it has been approved by the State's Chief Information Officer or designee.

B. **FUND AVAILABILITY. §24-30-202(5.5), C.R.S.**

Financial obligations of the State payable after the current State Fiscal Year are contingent upon funds for that purpose being appropriated, budgeted, and otherwise made available.

C. **GOVERNMENTAL IMMUNITY.**

Liability for claims for injuries to persons or property arising from the negligence of the State, its departments, boards, commissions committees, bureaus, offices, employees and officials shall be controlled and limited by the provisions of the Colorado Governmental Immunity Act, §24-10-101, et seq., C.R.S.; the Federal Tort Claims Act, 28 U.S.C. Pt. VI, Ch. 171 and 28 U.S.C. 1346(b), and the State's risk management statutes, §§24-30-1501, et seq. C.R.S. No term or condition of this Agreement shall be construed or interpreted as a waiver, express

or implied, of any of the immunities, rights, benefits, protections, or other provisions, contained in these statutes.

D. **INDEPENDENT CONTRACTOR.**

Grantee shall perform its duties hereunder as an independent contractor and not as an employee. Neither Grantee nor any agent or employee of Grantee shall be deemed to be an agent or employee of the State. Grantee shall not have authorization, express or implied, to bind the State to any agreement, liability or understanding, except as expressly set forth herein. Grantee and its employees and agents are not entitled to unemployment insurance or workers compensation benefits through the State and the State shall not pay for or otherwise provide such coverage for Grantee or any of its agents or employees. Grantee shall pay when due all applicable employment taxes and income taxes and local head taxes incurred pursuant to this Agreement. Grantee shall (i) provide and keep in force workers' compensation and unemployment compensation insurance in the amounts required by law, (ii) provide proof thereof when requested by the State, and (iii) be solely responsible for its acts and those of its employees and agents.

E. **COMPLIANCE WITH LAW.**

Grantee shall comply with all applicable federal and State laws, rules, and regulations in effect or hereafter established, including, without limitation, laws applicable to discrimination and unfair employment practices.

F. **CHOICE OF LAW, JURISDICTION, AND VENUE.**

Colorado law, and rules and regulations issued pursuant thereto, shall be applied in the interpretation, execution, and enforcement of this Agreement. Any provision included or incorporated herein by reference which conflicts with said laws, rules, and regulations shall be null and void. All suits or actions related to this Agreement shall be filed and proceedings held in the State of Colorado and exclusive venue shall be in the City and County of Denver.

G. **PROHIBITED TERMS.**

Any term included in this Agreement that requires the State to indemnify or hold Grantee harmless; requires the State to agree to binding arbitration; limits Grantee's liability for damages resulting from death, bodily injury, or damage to tangible property; or that conflicts with this provision in any way shall be void ab initio. Nothing in this Agreement shall be construed as a waiver of any provision of §24-106-109 C.R.S.

H. **SOFTWARE PIRACY PROHIBITION.**

State or other public funds payable under this Agreement shall not be used for the acquisition, operation, or maintenance of computer software in violation of federal copyright laws or applicable licensing restrictions. Grantee hereby certifies and warrants that, during the term of this Agreement and any extensions, Grantee has and shall maintain in place appropriate systems and controls to prevent such improper use of public funds. If the State determines that Grantee is in violation of this provision, the State may exercise any remedy available at law or in equity or under this Agreement, including, without limitation, immediate termination of this Agreement and any remedy consistent with federal copyright laws or applicable licensing restrictions.

I. **EMPLOYEE FINANCIAL INTEREST/CONFLICT OF INTEREST. §§24-18-201 and 24-50-507, C.R.S.**

The signatories aver that to their knowledge, no employee of the State has any personal or beneficial interest whatsoever in the service or property described in this Agreement. Grantee has no interest and shall not acquire any interest, direct or indirect, that would conflict in any manner or degree with the performance of Grantee's services and Grantee shall not employ any person having such known interests.

J. **VENDOR OFFSET AND ERRONEOUS PAYMENTS. §§24-30-202(1) and 24-30-202.4, C.R.S.**

**[*Not applicable to intergovernmental agreements*]** Subject to §24-30-202.4(3.5), C.R.S., the State Controller may withhold payment under the State's vendor offset intercept system for debts owed to State agencies for: **(i)** unpaid child support debts or child support arrearages; **(ii)** unpaid balances of tax, accrued interest, or other charges specified in §§39-21-101, *et seq.*, C.R.S.; **(iii)** unpaid loans due to the Student Loan Division of the Department of Higher Education; **(iv)** amounts required to be paid to the Unemployment Compensation Fund; and **(v)** other unpaid debts owing to the State as a result of final agency determination or judicial action. The State may also recover, at the State's discretion, payments made to Grantee in error for any reason, including, but not limited to, overpayments or improper payments, and unexpended or excess funds received by Grantee by deduction from subsequent payments under this Agreement, deduction from any payment due under any other contracts, grants or agreements between the State and Grantee, or by any other appropriate method for collecting debts owed to the State.

# EXHIBIT A, STATEMENT OF WORK

## 1. INTRODUCTION

Grantee will construct a fiber optic Broadband Network to the rural community of Livermore, CO located within Larimer County. The Broadband Network will be capable of data speeds of at least 1 gigabit per second upload and download to all addresses listed in Appendix 2. The network will be constructed with industry-standard redundancy at all stages with the exception of long-haul uplink services, but will have multiple connections to the uplink services.

## 2. DEFINITIONS

2.1. "Broadband Network" is as defined in Section 40-15-102(3.7), C.R.S.

2.2. "Cost Savings" means the Project Budget amount less the amount expended to complete the Work. Cost Savings are determined at the time the Work is completed and the final payment request is submitted by Grantee to the State. Cost Savings do not result in payment by the State to Grantee above actual expenditures beyond the required ratio, but deobligates unexpended Grant Funds and reduces Grantee's matching funds requirement. State shall provide written notice to Grantee verifying any Cost Savings.

2.3. "Cumulative Budgetary Line Item Changes" means a cumulative or increasing accumulation of additional expenses within a specific line item as listed in Exhibit C.

2.4. "Equipment" means the cable, fiber, materials, components, and supplies used to construct, maintain, or operate a Broadband Network.

2.5. "Grant Application" means the completed application form promulgated by the Broadband Deployment Board and all attachments, documentation and communications provided in support of the application.

2.6. "Facilities" means a place or building used to construct, maintain, or operate a Broadband Network.

2.7. "Infrastructure" means the Facilities or Equipment used in the deployment of broadband service.

2.8. "Project" means the Broadband Network project to be completed by Grantee pursuant to this Agreement, as further described in the "Project Description" and "Work Description" subsections below.

2.9. "Project Closeout" means the final confirmation from the State that the Project meets all Project Completion Standards and that Grantee otherwise met the Project Closeout conditions.

2.10. "Reimbursable Expenditures" comprise those Infrastructure expenditures specified in Section 3 above that qualify for reimbursement.

2.11. "Service Area" means the area designated by Grantee in which Grantee will construct a Broadband Network to provide reliable broadband to residents and businesses. For purposes of this Agreement, the Service Area is depicted in the map contained at Appendix 1 of this Exhibit A.

## 3. DESCRIPTION OF THE PROJECT AND WORK

3.1. **Project Description**.

3.1.1. Grantee must, within two (2) years from the Effective Date, create a fully-functioning, commercially-serviceable Broadband Network within the Service Area that meets all of the Project Completion Standards.

3.1.2. Grantee is charged with installing and deploying a Broadband Network. Creation of the Broadband Network will require that Grantee do each of the following:

3.1.2.1. Acquire such Equipment as is necessary to install, create, and maintain the Broadband Network, and to construct and install its related Facilities.

3.1.2.2. Design, install, construct, test, maintain, and operate its Broadband Network; and

3.1.2.3. Acquire all necessary real property interests or access rights to real property for the purpose of installing its transmission lines.

3.1.3. **Project Completion Standards.** Grantee agrees and warrants that, upon completion, the Broadband Network will have all of the following characteristics:

3.1.3.1. **Service Area:** The network will provide broadband to the entirety of the area depicted in Appendix 1.

3.1.3.2. **Addresses Served:** The network will service each of the residential and business addresses attached hereto as Appendix 2. Grantee agrees that, upon completion, the network will serve no less than 150 distinct addresses (whether residential or business) located within the service area at the service speeds specified below.

3.1.3.3. **Service Speeds:** Each of the addresses served (see immediately above) will be able to purchase reliable broadband internet at speeds that are at least 25 Mbps download, and 3 Mbps upload.

3.1.3.4. **Low Income:** Grantee agrees to provide discounted broadband service to low-income households.

3.1.4. **Outcome**

3.1.4.1. Grantee shall ensure that the final outcome of this Grant will be increased access to high-speed Broadband service which will result in improved broadband infrastructure.

3.2. **Work Description**

Fiber optic cabling will be buried underground in conduit at all times when possible and economically viable, but may utilize aerial cabling when necessary in order to meet budgetary and time constraints. Construction will at all times be done to industry standard practices and will ensure satisfaction of local permitting agencies.

Grantee agrees that, by accepting this Grant Award and entering into this Grant Agreement, Grantee is responsible for providing all Infrastructure in the Service Area. Although Grantee does not warrant that all upstream transmission lines into which Grantee connects remain in service, Grantee agrees that it is responsible for all Equipment, Facilities, services, and work necessary to achieve Grantee's responsibility to ensure transmission to any equipment.

3.3. **Reimbursable Expenditures**

3.3.1. Grant Award proceeds may only be used for Reimbursable Expenditures. Grantee agrees:

3.3.1.1. To qualify as a "Reimbursable Expenditure" an expenditure must be: (1) an Infrastructure expenditure; and (2) an expense that is actually incurred to complete the Work and for the Project Service Area. Examples of "Reimbursable Expenditures" include, but are not necessarily limited to, costs to: (a) design a system; (b) test a system; (c) purchase materials or equipment used in a system; (d) obtain permits; (e) pay wages to employees or subcontractors for their work in installing and constructing the Infrastructure in the Project Service Area; and (f) connect with other lines. "Reimbursable Expenditures" does not include operational expenditures, such as, by way of example and not limitation, employee salary and wages, insurance expenditures, real property acquisition expenditures, attorney, accounting, bookkeeping, actuarial, tax report / compliance, network design or planning work, or any other professional services fees which are not utilized exclusively in the deployment of Infrastructure to the Service Area.

3.3.2. Grantee agrees and warrants that it will not seek reimbursement for any expenditure which does not qualify as a "Reimbursable Expenditure."

3.3.3. Grantee agrees that, in addition to the record-keeping requirements found in the main body of this Agreement, Grantee has a specific obligation to preserve all records evidencing any Reimbursable Expenditure, including any receipts and invoices concerning an Reimbursable Expenditure, and any records showing the ultimate uses for any Equipment or Facilities purchased with an Reimbursable Expenditure. Grantee agrees to promptly furnish any such records to the State upon the State's written request. **Grantee agrees that its compliance with the terms of this 3.3.4 are critical to the State's ability to monitor Grantee's performance, oversee Grantee's use of the Grant Funds, and, generally, ensure that the State is serving as a good steward of taxpayer money. Accordingly, Grantee agrees that any failure to preserve or destruction of records evidencing the uses of Reimbursable Expenditures shall constitute a material breach of this Agreement.**

3.3.4. Grantee shall obtain approval from the State for all budgets prior to beginning work. The approval of any budget is not confirmation by the State that specific expenditures by Grantee qualify as "Reimbursable Expenditures." The State reserves the right to

examine or refuse to remit payment on expenditures which do not qualify as "Reimbursable Expenditures."

3.3.5. Grantee may request to modify previously approved budgets to meet project needs, by submitting the modified budget to the State for approval. Grantee shall use Exhibit I to request a budget modification. Grantee shall not move forward with any modification to the project or budget until the new budget has been approved by the State.

3.4. Contingency. The Grant Award identified on the Cover Page includes budgeted funds that are designed to be used on a contingency basis. The amount of these funds is 0. In the event Grantee needs or desires to make use of these Contingency Funds, Grantee shall submit a Budget Modification Form and obtain the approval of such modification by the State Broadband Deployment Board (Board). Grantee understands and agrees that use of such contingency funds is still limited to Reimbursable Expenditures.

3.5. **Board Notification**

3.5.1. The Board shall be notified in the event that a Grantee does not complete the project in accordance with the requirements listed in this Agreement by the Agreement Expiration Date.

3.5.2. The Board will also be notified of all modifications to projects and budgets in order to ensure accountability.

3.5.3. Grantee's failure to complete the project by the Agreement Expiration Date may affect Grantee's ability to gain additional funding/contracts in the future.

3.6. **Grantee Responsibilities.**

3.6.1. Grantee shall be responsible for the completion of the Work and to provide required documentation to the State as specified in this Exhibit A, Statement of Work.

3.6.2. If Grantee sells, assigns, encumbers or otherwise changes ownership (the "Sale") of the Infrastructure or Equipment within five (5) years after Project Closeout, Grantee shall pay to the State, on the State's demand, the fair market value of the Infrastructure and Equipment as of the date of the Sale, less the amount of the value attributable to non-Grant or Matching Funds that paid for acquisition of or improvements to the Infrastructure and Equipment. This section survives the term of the Grant until five (5) years and one day following Project Closeout.

3.6.3. During a period of five (5) years following the date of Project Closeout, Grantee may not change the ownership of the infrastructure and all related equipment described in this Exhibit A or the grant application. If Grantee decides to change the ownership of the equipment to an entity which the State determines does not qualify in meeting the original intent of the Project, Grantee must reimburse to the State an amount equal to the current fair market value of the equipment, less any portion of the value attributable to expenditures of non-Grant or Matching funds for acquisition of and improvements to, the equipment. At the end of the five (5) year period following the date of

completion and thereafter, no State restrictions on ownership of the equipment shall be in effect.

3.6.4. Grantee warrants and agrees that it will provide discounted broadband service to low-income households in accordance with the Project Completion Standards. Grantee warrants and agrees that it will provide such discounted broadband service for a period of no less than ten (10) years from the date of Agreement execution.

## 4. MILESTONES AND DELIVERABLES

### 4.1. Project Plan

4.1.1. Grantee shall perform the work as described in the Project Plan below that was submitted with their Grant Application.

4.1.1.1. Grantee shall be responsible for managing the Project Timeline, including major milestones to be achieved timely during the project and performance milestones.

4.1.1.1.1. Grantee shall ensure that milestones accurately capture each significant phase in the project timeline, include completion percentages based on the overall project.

4.1.1.1.2. Grantee's is responsible for achieving and documenting reasonable progress on the Project Plan to demonstrate timely progress to the Board on the project's completion.

| **Project Plan** | |
|---|---|
| **Anticipated Start Date**: 7/24/2023<br>**Anticipated Completion Date**: 6/30/2025 | **Name of Applicant:** Maverix Broadband, Inc.<br><br>**Name of Project:** Maverix Livermore FTTH |
| **DESCRIPTION OF PROJECT:** | The Project consists of the creation of fiber optic service within Larimer County. |
| | |
| **PROJECT MILESTONES – include all planning, procurement, construction, installation, testing and turn-up milestones (provide at least a 2-3 sentence description on each milestone)** | **By: estimated completion date)** |
| Notification of Grant Award and State Grant Agreement signed. | 12/01/2022 |
| | |
| | |
| | |
| | |

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

4.2. **Quarterly Status Report and Reimbursement Request**

4.2.1. Grantee shall submit Quarterly Status Report to the State using Exhibit E. This report shall include, but not be limited to, the following:

4.2.1.1. Percentage of overall project that has been completed to date.

4.2.1.2. A spending summary that details how Grantee's spending during the quarter aligned with its expected expenditures.

4.2.1.3. Any challenges Grantee encountered during the quarter or that Grantee anticipates encountering in the next quarter.

4.2.1.4. Number of households to be served, if this has changed during the last quarter.

4.2.2. Grantee shall submit a Quarterly Reimbursement Request as detailed in Exhibit E.

4.2.2.1. Grantee shall submit all receipts with its Quarterly Reimbursement Request. The sum of all receipts shall equal the amount being requested on the Quarterly Payment Request. The State may reject any Payment Requests submitted without all receipts and no payment will be made until all required documentation is submitted and approved by the State.

4.2.3. Grantee shall submit its Quarterly Status Report and Reimbursement Request to the State within thirty (30) calendar days following the end of each calendar quarter.

4.3. **Annual Report**

4.3.1. Grantee shall submit, on an annual basis, until the grant money has been fully expended, the following:

4.3.1.1. The number of homes and businesses that Grantee's grant-supported Broadband Network serves.

4.3.1.2. The number of additional homes and businesses that Grantee expects to serve through the grant-supported broadband network within the following year.

4.3.1.3. The speed tiers, advertised rates, and services that Grantee offers to customers through the grant-supported broadband network, including speed tiers, rates, and other services that Grantee offers to low-income households.

4.3.2. Grantee shall submit the Annual Report no later than June 30th of each year.

4.4. **Final Pay Request and Status Report**

4.4.1. Within ninety (90) days after the completion of the Project, Grantee shall submit the final Pay Request and Status Report to the State in the form provided in Exhibit F to this Agreement.

4.4.2. In addition to submitting Exhibit F, Grantee shall submit the following to the State:

4.4.2.1. Exhibit G, Comprehensive Project Summary.

4.4.2.2. Testimonials from subscribers impacted by the project to further demonstrate the success of the project.

4.4.2.3. Photos of the project site and all completed work.

4.4.3. At the completion of the project, Grantee shall schedule an onsite or remote monitoring visit with the State, and with the third-party performance-testing certifier. The State will make both Reports available for public view after their completion and review by Board staff and counsel.

4.4.4. If the State finds that the project was not completed in accordance with this Agreement by determining that (a) Grantee is unable to serve the addresses listed in this agreement, (b) has not demonstrated significant progress in their final report and monitoring visit, and (c) it was determined by the third-party performance-testing certifier that the that the project meets the original design of, and provides the measurable speeds, rates, and services set forth in, Grantees original application then Grantee shall be found to be non-compliant and this shall be reported to the Board and may impact Grantee's ability to obtain additional grant funding in the future.

4.5. **Final Testing Certification Report**

4.5.1. Within ninety (90) days after the grant money has been fully expended, Grantee shall provide third-party performance-testing certification, based FCC-approved performance-testing protocols, that the project meets the original design of, and provides the measurable speeds, rates, and services set forth in, Grantees original application.

4.6. **Project Closeout**

4.6.1. Upon Grantee's submission of its Final Pay Request and Status Report, submission of its Final Testing Certification Report, and Grantee's proof, to the satisfaction of the State, that Grantee has met all Project Completion Standards, the State will issue to Grantee a Project Closeout Letter. The Project Closeout will appear in writing, on Colorado Broadband Office letterhead, and with date affixed thereto. Unless this Agreement is terminated earlier pursuant to the provisions herein or by law or order of a court, the issuance of the Project Closeout Letter shall terminate Grantee's obligations under this Agreement except for those obligations which by their terms or by their nature continue in force and effect following termination.

**5. BUDGET ADJUSTMENTS**

5.1. Budget Modifications

5.1.1. For all budget modifications under 10% (ten percent) of the Budget, Grantee may modify previously approved budgets to meet project needs, by providing notice of the modified budget to the State for approval. Notice shall be in written format, which may include email. Grantee shall not move forward with any modification to the project or budget until it has been reviewed and approved by the State.

5.1.2. For all budget modifications over 10% (ten percent) of the Budget, Grantee shall use Exhibit H, Budget Modification Request Form to document all budget modifications and request approval from the State. Grantee shall not move forward with any modification to the project or budget until it has been reviewed and approved by the State.

5.1.3. In the event that any budget modification changes the Work described in Exhibit A, Statement of Work, or the Project Plan, Grantee shall not move forward with any modification to the project or budget until a formal Grant Agreement Amendment has been executed.

**6. PERSONNEL**

6.1. Key Personnel. Grantee's personnel, as listed below, are considered essential to the completion of the Work described in this Exhibit A.

6.1.1. Responsible Administrator. Grantee's performance hereunder shall be under the direct supervision of (David Lindauer) or agent of Grantee, who is hereby designated as the responsible administrator of this Project. Such administrator shall be updated through the approval process in this Section 5. If this person is an agent of Grantee, such person must have signature authority to bind Grantee and must provide evidence of such authority.

6.2. Replacement. Grantee shall immediately notify the State if any key personnel specified above cease to provide services under this Grant. Grantee may replace key personnel only after obtaining the State's prior approval, which shall be at the State 's sole discretion, as the State executed this Grant in part reliance on Grantee's representations regarding key personnel. Grantee's request for such approval shall specify why the change is necessary, who the proposed replacement is, what their qualifications are, and when the change will

take effect. Any time key personnel cease to provide services under this Agreement, the State, in its sole discretion, may direct Grantee to suspend Work until such time as replacements are approved. All notices sent under this subsection shall be sent in accordance with §14 of this Agreement.

## 7. FUNDING

7.1. The State provided funds shall be limited to the amount specified on the Cover Page.

7.1.1. Matching Funds. Grantee shall provide a required minimum Matching Funds amount of 25% or greater of the total project cost. This amount is listed in the "Matching Funds" column of Exhibit C during the term of this Project.

## 8. PAYMENT

8.1. Payments shall be made in accordance with provisions set forth in §5 of this Agreement, in this section, and as detailed in Exhibit B. Payments are made on a reimbursement basis only. Grantee shall return excess funds to the State.

8.2. In addition to other remedies set forth in this Agreement, and for avoidance of doubt, the State may withhold payment(s) if the State determines such payments are not an Authorized Expenditure, if any reports, described in Section 4, are not submitted timely, or if Grantee does not provide record evidencing the incurrence of expenditures or the uses of funds arising out of expenditures.

8.3. **Cost Savings.** Cost Savings derived while completing the Project shall be split on a pro-rata basis between the State and Grantee. In the event that Grantee realizes cost savings or determines that not all funds will be expended, Grantee shall notify the State in writing.

8.4. **Subcontracted/Subgranted Work Payment Schedule**. If Work is subcontracted or subgranted and such Subcontractors and/or Subgrantees are not previously paid, Grantee shall disburse Grant Funds received from the State to such Subcontractor or Subgrantee within fifteen days after receipt.

8.5. **Remittance Address.** If mailed, payments shall be remitted to the following address unless changed in accordance with §14 of this Agreement:

Maverix Broadband, Inc.

10940 S Parker Rd, Suite 418

Parker, CO 80134

## 9. ADMINISTRATIVE REQUIREMENTS

9.1. **Monitoring**

9.1.1. The State shall monitor this Work on an as-needed basis. The State may choose to audit the records for activities performed under this Grant. Grantee shall maintain a complete file of all records, documents, communications, notes and other written materials or electronic media, files or communications, which pertain in any manner to the

operation of activities undertaken pursuant to an executed Grant. Such books and records shall contain documentation of Grantee's pertinent activity under this Grant in accordance with Generally Accepted Accounting Principles. During the project implementation and for a period of five years following project completion, Grantee must allow the State access to inspect project locations and equipment upon request. The State shall provide Grantee reasonable notice of inspections.

9.1.2. **Subgrantee/Subcontractor**

9.1.2.1. Grantee shall monitor its Subgrantees and/or Subcontractors, if any, during the term of this Grant. Results of such monitoring shall be documented by Grantee and maintained on file.

**10.** CONSTRUCTION/RENOVATION. The following subsections shall apply to construction and/or renovation related projects/activities:

10.1. **Plans & Specifications**

10.1.1. Construction plans and specifications shall be drawn up by a qualified engineer or architect licensed in the State of Colorado, or pre-engineered in accordance with Colorado law, and hired by Grantee through a competitive selection process.

10.2. **Standards**

10.2.1. Grantee, Subgrantees and Subcontractors shall comply with all applicable statutory design and construction standards and procedures that may be required and shall provide the State with documentation of such compliance.

# APPENDIX 1


Critically Unserved Livermore
Backbone Longhaul
Red Feather Lakes
Buckeye
Wellington
Rustic
Ted's Place
Bellvue
Laporte
Arapaho & Roosevelt National Forest...
287
14
1
25

# APPENDIX 2

| Number | Street Name | City | State | Zip | |
|---|---|---|---|---|---|
| 370 | ANDREWS PARK RD | livermore | CO | 80536-8911 | |
| 370 | ANDREWS PARK RD | livermore | CO | 80536-8911 | |
| 1411 | ANDREWS PARK RD | livermore | CO | 80536-8919 | |
| 270 | BEAR TRAIL WAY | livermore | CO | 80536 | |
| 444 | BEAR TRAIL WAY | livermore | CO | 80536 | |
| 7049 | BLACK DIAMOND RD | timnath-wellington | CO | 80536 | |
| 7097 | BLACK DIAMOND RD | timnath-wellington | CO | 80536 | |
| 135 | BLACKTAIL RD | livermore | CO | 80536-9206 | |
| 344 | BLACKTAIL RD | livermore | CO | 80536-7625 | |
| 350 | BLACKTAIL RD | livermore | CO | 80536 | |
| 827 | BLACKTAIL RD | livermore | CO | 80536 | |
| 1215 | BLACKTAIL RD | livermore | CO | 80536 | |
| 1589 | BLACKTAIL RD | livermore | CO | 80536 | |
| 222 | BOXER RANCH RD | livermore | CO | 80536-9526 | |
| 320 | BOXER RANCH RD | livermore | CO | 80536-9526 | |
| 535 | BOXER RANCH RD | livermore | CO | 80536 | |
| 846 | BOXER RANCH RD | livermore | CO | 80536-9526 | |
| 95 | BREWSTER LN | livermore | CO | 80536 | |
| 307 | BREWSTER LN | livermore | CO | 80536 | |
| 395 | BREWSTER LN | livermore | CO | 80536 | |
| 471 | BREWSTER LN | livermore | CO | 80536 | |
| 511 | BREWSTER LN | livermore | CO | 80536-7616 | |
| 591 | BROWN BEAR WAY | livermore | CO | 80536-9159 | |
| 894 | BROWN BEAR WAY | livermore | CO | 80536-9159 | |

| | | | | | |
|---|---|---|---|---|---|
| 1188 | BROWN BEAR WAY | livermore | CO | 80536-9158 | |
| 1332 | BROWN BEAR WAY | livermore | CO | 80536-9158 | |
| 183 | BULL RUN WAY | livermore | CO | 80536 | |
| 225 | BULL RUN WAY | livermore | CO | 80536 | |
| 14 | CALLIOPE LN | livermore | CO | 80536-7607 | |
| 150 | CALLIOPE LN | livermore | CO | 80536-9238 | |
| 362 | CALLIOPE LN | livermore | CO | 80536-9238 | |
| 548 | CALLIOPE LN | livermore | CO | 80536-9238 | |
| 427 | CALLOWAY HILL RD | livermore | CO | 80536-9255 | |
| 643 | CALLOWAY HILL RD | livermore | CO | 80536-9255 | |
| 431 | CHEROKEE HILLS DR | livermore | CO | 80536 | |
| 200 | CHEROKEE MEADOWS RD | livermore | CO | 80536-6601 | |
| 415 | CHEROKEE MEADOWS RD | livermore | CO | 80536-7691 | |
| 425 | CHEROKEE MEADOWS RD | livermore | CO | 80536-7691 | |
| 559 | CHEROKEE MEADOWS RD | livermore | CO | 80536-7691 | |
| 610 | CHEROKEE MEADOWS RD | livermore | CO | 80536-7691 | |
| 748 | CHEROKEE MEADOWS RD | livermore | CO | 80536-7691 | |
| 1000 | CHEROKEE MEADOWS RD | livermore | CO | 80536-7718 | |
| 1445 | CHEROKEE MEADOWS RD | livermore | CO | 80536-7707 | |
| 1549 | CHEROKEE MEADOWS RD | livermore | CO | 80536-7703 | |
| 1756 | CHEROKEE MEADOWS RD | livermore | CO | 80536-7693 | |
| 1806 | CHEROKEE MEADOWS RD | livermore | CO | 80536-7610 | |
| 1818 | CHEROKEE MEADOWS RD | livermore | CO | 80536 | |
| 1974 | CHEROKEE MEADOWS RD | livermore | CO | 80536-7716 | |
| 2007 | CHEROKEE MEADOWS RD | livermore | CO | 80536-7694 | |
| 2162 | CHEROKEE MEADOWS RD | livermore | CO | 80536 | |

| | | | | | |
|---|---|---|---|---|---|
| 2318 | CHEROKEE MEADOWS RD | livermore | CO | 80536-7704 | |
| 2628 | CHEROKEE MEADOWS RD | livermore | CO | 80536-7611 | |
| 2750 | CHEROKEE MEADOWS RD | livermore | CO | 80536-7611 | |
| 3001 | CHEROKEE MEADOWS RD | livermore | CO | 80536 | |
| 3075 | CHEROKEE MEADOWS RD | livermore | CO | 80536 | |
| 3676 | CHEROKEE MEADOWS RD | livermore | CO | 80536-7609 | |
| 3880 | CHEROKEE MEADOWS RD | livermore | CO | 80536 | |
| 2030 | CHEROKEE PARK RD | livermore | CO | 80536 | |
| 12051 | CHEROKEE PARK RD | livermore | CO | 80536 | |
| 156 | CHEROKEE TRAIL RD | livermore | CO | 80536-7622 | |
| 816 | CHEROKEE TRAIL RD | livermore | CO | 80536 | |
| 816 | CHEROKEE TRAIL RD | livermore | CO | 80536 | |
| 816 | CHEROKEE TRAIL RD | livermore | CO | 80536 | |
| 972 | CHEROKEE TRAIL RD | livermore | CO | 80536 | |
| 1176 | CHEROKEE TRAIL RD | livermore | CO | 80536 | |
| 9878 | COUNTY ROAD 67J RD | livermore | CO | 80545 | |
| 9890 | COUNTY ROAD 67J RD | livermore | CO | 80545 | |
| 11002 | COUNTY ROAD 67J RD | livermore | CO | 80536 | |
| 11741 | COUNTY ROAD 67J RD | livermore | CO | 80536 | |
| 11970 | COUNTY ROAD 67J RD | livermore | CO | 80536 | |
| 12710 | COUNTY ROAD 67J RD | livermore | CO | 80536 | |
| 13015 | COUNTY ROAD 67J RD | livermore | CO | 80536 | |
| 13118 | COUNTY ROAD 67J RD | livermore | CO | 80536 | |
| 13217 | COUNTY ROAD 67J RD | livermore | CO | 80536 | |
| 14901 | COUNTY ROAD 67J RD | livermore | CO | 80536 | |
| 14999 | COUNTY ROAD 67J RD | livermore | CO | 80536 | |

| | | | | | |
|---|---|---|---|---|---|
| 851 | COUNTY ROAD 76H | livermore | CO | 80536-9233 | |
| 910 | COUNTY ROAD 76H | livermore | CO | 80536-9232 | |
| 1690 | COUNTY ROAD 76H | livermore | CO | 80536-9207 | |
| 777 | COUNTY ROAD 76H RD | livermore | CO | 80536 | |
| 260 | COYOTE HOLLER WAY | livermore | CO | 80536 | |
| 567 | COYOTE HOLLER WAY | livermore | CO | 80536-7629 | |
| 180 | DEEP CUT RD | livermore | CO | 80536-8797 | |
| 185 | DEEP CUT RD | livermore | CO | 80536-8797 | |
| 190 | DEEP CUT RD | livermore | CO | 80536 | |
| 543 | DEER MEADOW WAY | livermore | CO | 80536-9505 | |
| 679 | DEER MEADOW WAY | livermore | CO | 80536-9505 | |
| 815 | DEER MEADOW WAY | livermore | CO | 80536-9505 | |
| 961 | DEER MEADOW WAY | livermore | CO | 80536-9505 | |
| 981 | DEER MEADOW WAY | livermore | CO | 80536-9505 | |
| 986 | DEER MEADOW WAY | livermore | CO | 80536-9505 | |
| 989 | DEER MEADOW WAY | livermore | CO | 80536-9505 | |
| 995 | DEER MEADOW WAY | livermore | CO | 80536-9505 | |
| 996 | DEER MEADOW WAY | livermore | CO | 80536-9505 | |
| 998 | DEER MEADOW WAY | livermore | CO | 80536-9505 | |
| 1000 | DEER MEADOW WAY | livermore | CO | 80536-9505 | |
| 1004 | DEER MEADOW WAY | livermore | CO | 80536-9505 | |
| 1005 | DEER MEADOW WAY | livermore | CO | 80536-9505 | |
| 1166 | DEER MEADOW WAY | livermore | CO | 80536-9505 | |
| 1228 | DEER MEADOW WAY | livermore | CO | 80536-9520 | |

| | | | | | |
|---|---|---|---|---|---|
| 60 | DEER MOUNTAIN CT | livermore | CO | 80536-9314 | |
| 255 | ELK PARK RD | livermore | CO | 80536 | |
| 296 | ELK PARK RD | livermore | CO | 80536 | |
| 500 | ELK PARK RD | livermore | CO | 80536 | |
| 546 | ELK PARK RD | livermore | CO | 80536 | |
| 611 | ELK PARK RD | livermore | CO | 80536 | |
| 99 | ELKHORN HOUSE RD | livermore | CO | 80536-7705 | |
| 155 | ELKHORN HOUSE RD | livermore | CO | 80536-7668 | |
| 537 | GOBBLERS KNOB CT | livermore | CO | 80536-9539 | |
| 549 | GOBBLERS KNOB CT | livermore | CO | 80536-9539 | |
| 114 | GORDON CREEK LN | livermore | CO | 80536-9533 | |
| 235 | GORDON CREEK LN | livermore | CO | 80536-9533 | |
| 785 | GORDON CREEK LN | livermore | CO | 80536-9533 | |
| 785 | GORDON CREEK LN | livermore | CO | 80536-9533 | |
| 785 | GORDON CREEK LN | livermore | CO | 80536-9533 | |
| 1111 | GORDON CREEK LN | livermore | CO | 80536-9534 | |
| 1348 | GORDON CREEK LN | livermore | CO | 80536-9534 | |
| 1550 | GORDON CREEK LN | livermore | CO | 80536 | |
| 1750 | GREAT TWINS RD | livermore | CO | 80536-8993 | |
| 146 | GUNFLINT RD | livermore | CO | 80536-6600 | |
| 731 | GUNFLINT RD | livermore | CO | 80536-7688 | |
| 39 | GUNSLINGER RD | livermore | CO | 80536-7624 | |
| 247 | GUNSLINGER RD | livermore | CO | 80536-7624 | |
| 353 | GUNSLINGER RD | livermore | CO | 80536-7624 | |
| 390 | GUNSLINGER RD | livermore | CO | 80536 | |
| 1015 | HAPPY JACK RD | livermore | CO | 80536-9532 | |

| | | | | | |
|---|---|---|---|---|---|
| 1223 | HAPPY JACK RD | livermore | CO | 80536-9538 | |
| 1985 | HAPPY JACK RD | livermore | CO | 80536 | |
| 17 | HARDROCK RD | livermore | CO | 80536-7697 | |
| 209 | HARDROCK RD | livermore | CO | 80536-9160 | |
| 386 | HAYSTACK GULCH WAY | livermore | CO | 80536 | |
| 508 | HAYSTACK GULCH WAY | livermore | CO | 80536-7613 | |
| 650 | HAYSTACK GULCH WAY | livermore | CO | 80536 | |
| 680 | HAYSTACK GULCH WAY | livermore | CO | 80536-7720 | |
| 1208 | HAYSTACK GULCH WAY | livermore | CO | 80536 | |
| 140 | HEWLETT GULCH RD | livermore | CO | 80536-9513 | |
| 280 | HEWLETT GULCH RD | livermore | CO | 80536-9513 | |
| 288 | HEWLETT GULCH RD | livermore | CO | 80536-9513 | |
| 923 | HEWLETT GULCH RD | livermore | CO | 80536 | |
| 1049 | HEWLETT GULCH RD | livermore | CO | 80536-9511 | |
| 1413 | HEWLETT GULCH RD | livermore | CO | 80536 | |
| 1675 | HEWLETT GULCH RD | livermore | CO | 80536-9511 | |
| 2133 | HEWLETT GULCH RD | livermore | CO | 80536 | |
| 2511 | HEWLETT GULCH RD | livermore | CO | 80536-9501 | |
| 2608 | HEWLETT GULCH RD | livermore | CO | 80536-9501 | |
| 3000 | HEWLETT GULCH RD | livermore | CO | 80536-9503 | |
| 3019 | HEWLETT GULCH RD | livermore | CO | 80536-9503 | |
| 3020 | HEWLETT GULCH RD | livermore | CO | 80536-9503 | |
| 3033 | HEWLETT GULCH RD | livermore | CO | 80536-9503 | |
| 3038 | HEWLETT GULCH RD | livermore | CO | 80536-9503 | |
| 3039 | HEWLETT GULCH RD | livermore | CO | 80536-9503 | |
| 153 | HIDDEN CANYON DR | livermore | CO | 80536-8686 | |

| | | | | | |
|---|---|---|---|---|---|
| 721 | HIGH FIVE RD | livermore | CO | 80536 | |
| 894 | HIGH FIVE RD | livermore | CO | 80536 | |
| 505 | HIGH RIDGE DR | livermore | CO | 80536 | |
| 31 | JACKELOPE LN | livermore | CO | 80536-7636 | |
| 31 | JACKELOPE LN | livermore | CO | 80536-7636 | |
| 181 | JACKELOPE LN | livermore | CO | 80536 | |
| 374 | JACKELOPE LN | livermore | CO | 80536-9239 | |
| 524 | JACKELOPE LN | livermore | CO | 80536-9239 | |
| 550 | JACKSON PARK | livermore | CO | 80536-9157 | |
| 143 | JACKSON PARK RD | livermore | CO | 80536 | |
| 501 | JACKSON PARK RD | livermore | CO | 80536 | |
| 1470 | JACKSON PARK RD | livermore | CO | 80536 | |
| 1614 | JACKSON PARK RD | livermore | CO | 80536 | |
| 232 | KESTREL LN | livermore | CO | 80536-9240 | |
| 232 | KESTREL LN | livermore | CO | 80536-9240 | |
| 16055 | LEGEND WAY | timnath-wellington | CO | 80536 | |
| 414 | LEWIS PARK RD | livermore | CO | 80536 | |
| 358 | MEADOW CREEK RD | livermore | CO | 80536 | |
| 432 | MEADOW CREEK RD | livermore | CO | 80536 | |
| 684 | MEADOW CREEK RD | livermore | CO | 80536 | |
| 950 | MEADOW CREEK RD | livermore | CO | 80536 | |
| 1045 | MEADOW CREEK RD | livermore | CO | 80536-7615 | |
| 703 | MOSS ROCK RIDGE RD | livermore | CO | 80536 | |
| 849 | MOSS ROCK RIDGE RD | livermore | CO | 80536 | |
| 754 | MOUNT MAHOGANY | livermore | CO | 80536-9536 | |
| 765 | MOUNT MAHOGANY | livermore | CO | 80536-9537 | |

| | | | | | |
|---|---|---|---|---|---|
| 77 | MOUNT TILESTON CT | livermore | CO | 80536-8676 | |
| 137 | MOUNT TILESTON CT | livermore | CO | 80536-8676 | |
| 79 | MOUNTAIN SHADOW DR | livermore | CO | 80536 | |
| 304 | MOUNTAIN SHADOW DR | livermore | CO | 80536 | |
| 1401 | N COUNTY ROAD 37 | livermore | CO | 80536-9212 | |
| 2030 | N COUNTY ROAD 37 | livermore | CO | 80536-7612 | |
| 1800 | N COUNTY ROAD 37 RD | livermore | CO | 80536 | |
| 2290 | N GREYROCK RD | livermore | CO | 80535-9746 | |
| 17685 | N HIGHWAY 287 | livermore | CO | 80536-8915 | |
| 17685 | N HIGHWAY 287 | livermore | CO | 80536-8915 | |
| 18223 | N HIGHWAY 287 | livermore | CO | 80536-8914 | |
| 18223 | N HIGHWAY 287 | livermore | CO | 80536-8914 | |
| 19074 | N HIGHWAY 287 | livermore | CO | 80536-8913 | |
| 19074 | N HIGHWAY 287 | livermore | CO | 80536-8913 | |
| 19074 | N HIGHWAY 287 | livermore | CO | 80536-8913 | |
| 19074 | N HIGHWAY 287 | timnath-wellington | CO | 80536-8913 | |
| 19074 | N HIGHWAY 287 | timnath-wellington | CO | 80536-8913 | |
| 19750 | N HIGHWAY 287 | timnath-wellington | CO | 80536-8913 | |
| 19900 | N HIGHWAY 287 | timnath-wellington | CO | 80536-8913 | |
| 20601 | N HIGHWAY 287 | livermore | CO | 80536-8912 | |
| 20615 | N HIGHWAY 287 | livermore | CO | 80536-8912 | |
| 18223 | N HIGHWAY 287 2 HWY | livermore | CO | 80536 | |
| 11201 | N HIGHWAY 287 HWY | timnath-wellington | CO | 80536 | |
| 17749 | N HIGHWAY 287 HWY | livermore | CO | 80536 | |
| 18341 | N HIGHWAY 287 HWY | livermore | CO | 80536 | |
| 18341 | N HIGHWAY 287 HWY | timnath-wellington | CO | 80536 | |

| | | | | | |
|---|---|---|---|---|---|
| 25849 | N HIGHWAY 287 HWY | livermore | CO | 80536 | |
| 315 | N RIM RD | livermore | CO | 80536-8704 | |
| 349 | N RIM RD | livermore | CO | 80536-8704 | |
| 368 | N RIM RD | livermore | CO | 80536-8704 | |
| 375 | N RIM RD | livermore | CO | 80536-8704 | |
| 3663 | N RIM RD | livermore | CO | 80536 | |
| 3663 | N RIM RD | livermore | CO | 80536 | |
| 3715 | N RIM RD | livermore | CO | 80536-8508 | |
| 3715 | N RIM RD | livermore | CO | 80536-8508 | |
| 3748 | N RIM RD | livermore | CO | 80536-8501 | |
| 228 | NUTHATCH LN | livermore | CO | 80536-9241 | |
| 454 | NUTHATCH LN | livermore | CO | 80536-9241 | |
| 743 | NUTHATCH LN | livermore | CO | 80536-7684 | |
| 886 | NUTHATCH LN | livermore | CO | 80536-9241 | |
| 490 | PANTHER CREEK RD | livermore | CO | 80536 | |
| 155 | PONDEROSA PINE RD | livermore | CO | 80536 | |
| 211 | PONDEROSA PINE RD | livermore | CO | 80536-7639 | |
| 866 | RAINBOWS END | livermore | CO | 80536-9535 | |
| 887 | RAINBOWS END | livermore | CO | 80536-9535 | |
| 1424 | RANCHO REPOSO DR | livermore | CO | 80536 | |
| 1710 | RANCHO REPOSO DR | livermore | CO | 80536 | |
| 1000 | RATTLESNAKE RD | livermore | CO | 80536 | |
| 28 | RED TAIL TRL | livermore | CO | 80536-9514 | |
| 333 | RED TAIL TRL | livermore | CO | 80536-9509 | |
| 400 | RED TAIL TRL | livermore | CO | 80536-9509 | |
| 526 | RED TAIL TRL | livermore | CO | 80536-9509 | |

| | | | | | |
|---|---|---|---|---|---|
| 719 | RED TAIL TRL | livermore | CO | 80536-9509 | |
| 719 | RED TAIL TRL | livermore | CO | 80536-9509 | |
| 719 | RED TAIL TRL | livermore | CO | 80536-9509 | |
| 685 | ROBERTS RANCH RD | livermore | CO | 80536 | |
| 785 | ROBERTS RANCH RD | livermore | CO | 80536-7721 | |
| 785 | ROBERTS RANCH RD | livermore | CO | 80536-7721 | |
| 785 | ROBERTS RANCH RD | livermore | CO | 80536-7721 | |
| 785 | ROBERTS RANCH RD | livermore | CO | 80536-7721 | |
| 785 | ROBERTS RANCH RD | livermore | CO | 80536-7721 | |
| 785 | ROBERTS RANCH RD | livermore | CO | 80536-7721 | |
| 785 | ROBERTS RANCH RD | livermore | CO | 80536-7721 | |
| 785 | ROBERTS RANCH RD | livermore | CO | 80536-7721 | |
| 1110 | ROBERTS RANCH RD | livermore | CO | 80536 | |
| 585 | ROCKY MEADOW WAY | livermore | CO | 80536-7692 | |
| 590 | ROCKY MEADOW WAY | livermore | CO | 80536-7692 | |
| 118 | RUNNING DEER RD | livermore | CO | 80536-7687 | |
| 118 | RUNNING DEER RD | livermore | CO | 80536-7687 | |
| 175 | RUNNING DEER RD | livermore | CO | 80536-7687 | |
| 181 | RUNNING DEER RD | livermore | CO | 80536-7687 | |
| 198 | RUNNING DEER RD | livermore | CO | 80536-7687 | |
| 162 | SARA LN | livermore | CO | 80536-9527 | |
| 98 | SKY PRAIRIE RD | livermore | CO | 80536-8801 | |
| 15 | SLOAN RD | livermore | CO | 80536-7623 | |
| 35 | SLOAN RD | livermore | CO | 80536 | |
| 45 | SLOAN RD | livermore | CO | 80536-7623 | |
| 87 | SLOAN RD | livermore | CO | 80536-7623 | |

| | | | | | |
|---|---|---|---|---|---|
| 247 | SLOAN RD | livermore | CO | 80536-7623 | |
| 569 | SLOAN RD | livermore | CO | 80536-7661 | |
| 168 | SNOWCLIFF RD | livermore | CO | 80536 | |
| 200 | SNOWCLIFF RD | livermore | CO | 80536-9512 | |
| 468 | SPIRIT RANCH RD | livermore | CO | 80536-9242 | |
| 672 | SPIRIT RANCH RD | livermore | CO | 80536-9242 | |
| 834 | SPIRIT RANCH RD | livermore | CO | 80536-9242 | |
| 921 | SPIRIT RANCH RD | livermore | CO | 80536-9242 | |
| 442 | THIEM DR | livermore | CO | 80536-9243 | |
| 626 | THIEM DR | livermore | CO | 80536-9243 | |
| 626 | THIEM DR | livermore | CO | 80536-9243 | |
| 90 | W COUNTY ROAD 74E | livermore | CO | 80536-9724 | |
| 115 | W COUNTY ROAD 74E | livermore | CO | 80536-9707 | |
| 284 | W COUNTY ROAD 74E | livermore | CO | 80536-9724 | |
| 310 | W COUNTY ROAD 74E | livermore | CO | 80536-9708 | |
| 360 | W COUNTY ROAD 74E | livermore | CO | 80536-9708 | |
| 400 | W COUNTY ROAD 74E | livermore | CO | 80536-9700 | |
| 400 | W COUNTY ROAD 74E | livermore | CO | 80536-9700 | |
| 409 | W COUNTY ROAD 74E | livermore | CO | 80536-9716 | |
| 455 | W COUNTY ROAD 74E | livermore | CO | 80536-9716 | |
| 600 | W COUNTY ROAD 74E | livermore | CO | 80536-9722 | |
| 720 | W COUNTY ROAD 74E | livermore | CO | 80536-9722 | |
| 871 | W COUNTY ROAD 74E | livermore | CO | 80536-9716 | |
| 882 | W COUNTY ROAD 74E | livermore | CO | 80536-9722 | |
| 1853 | W COUNTY ROAD 74E | livermore | CO | 80536-9702 | |
| 2160 | W COUNTY ROAD 74E | livermore | CO | 80536-9725 | |

| | | | | | |
|---|---|---|---|---|---|
| 2160 | W COUNTY ROAD 74E | livermore | CO | 80536-9725 | |
| 2660 | W COUNTY ROAD 74E | livermore | CO | 80536-9704 | |
| 2660 | W COUNTY ROAD 74E | livermore | CO | 80536-9704 | |
| 2895 | W COUNTY ROAD 74E | livermore | CO | 80536-9705 | |
| 3232 | W COUNTY ROAD 74E | livermore | CO | 80536-9703 | |
| 3250 | W COUNTY ROAD 74E | livermore | CO | 80536-9703 | |
| 3250 | W COUNTY ROAD 74E | livermore | CO | 80536-9703 | |
| 4000 | W COUNTY ROAD 74E | livermore | CO | 80536-9710 | |
| 4554 | W COUNTY ROAD 74E | livermore | CO | 80536-9710 | |
| 16278 | W COUNTY ROAD 74E | livermore | CO | 80536-9613 | |
| 16278 | W COUNTY ROAD 74E | livermore | CO | 80536-9613 | |
| 16278 | W COUNTY ROAD 74E | livermore | CO | 80536-9613 | |
| 55 | W COUNTY ROAD 74E RD | livermore | CO | 80536 | |
| 124 | W COUNTY ROAD 74E RD | livermore | CO | 80536 | |
| 220 | W COUNTY ROAD 74E RD | livermore | CO | 80536 | |
| 311 | W COUNTY ROAD 74E RD | livermore | CO | 80536 | |
| 360 | W COUNTY ROAD 74E RD | livermore | CO | 80536 | |
| 2044 | W COUNTY ROAD 74E RD | livermore | CO | 80536 | |
| 2300 | W COUNTY ROAD 74E RD | livermore | CO | 80536 | |
| 3301 | W COUNTY ROAD 74E RD | livermore | CO | 80536 | |
| 16080 | W COUNTY ROAD 74E RD | livermore | CO | 80536 | |
| 16420 | W COUNTY ROAD 74E RD | livermore | CO | 80536 | |
| 6400 | W COUNTY ROAD 80 RD | timnath-wellington | CO | 80536 | |
| 7911 | W COUNTY ROAD 80 RD | timnath-wellington | CO | 80536 | |
| 15333 | W COUNTY ROAD 80 RD | timnath-wellington | CO | 80536 | |
| 15335 | W COUNTY ROAD 80 RD | timnath-wellington | CO | 80536 | |

| | | | | | |
|---|---|---|---|---|---|
| 15389 | W COUNTY ROAD 80 RD | timnath-wellington | CO | 80536 | |
| 805 | W COUNTY ROAD 80C | livermore | CO | 80536-9219 | |
| 1235 | W COUNTY ROAD 80C | livermore | CO | 80536-9203 | |
| 1235 | W COUNTY ROAD 80C | livermore | CO | 80536-9203 | |
| 1551 | W COUNTY ROAD 80C | livermore | CO | 80536-9203 | |
| 1941 | W COUNTY ROAD 80C | livermore | CO | 80536-9203 | |
| 4001 | W COUNTY ROAD 80C | livermore | CO | 80536-9254 | |
| 4415 | W COUNTY ROAD 80C | livermore | CO | 80536-9235 | |
| 4601 | W COUNTY ROAD 80C | livermore | CO | 80536-9230 | |
| 5641 | W COUNTY ROAD 80C | livermore | CO | 80536-9202 | |
| 5641 | W COUNTY ROAD 80C | livermore | CO | 80536-9202 | |
| 6078 | W COUNTY ROAD 80C | livermore | CO | 80536-9216 | |
| 6101 | W COUNTY ROAD 80C | livermore | CO | 80536-9225 | |
| 6492 | W COUNTY ROAD 80C | livermore | CO | 80536-9216 | |
| 6750 | W COUNTY ROAD 80C | livermore | CO | 80536-9216 | |
| 6901 | W COUNTY ROAD 80C | livermore | CO | 80536-9215 | |
| 7289 | W COUNTY ROAD 80C | livermore | CO | 80536-9201 | |
| 7850 | W COUNTY ROAD 80C | livermore | CO | 80536-9210 | |
| 7850 | W COUNTY ROAD 80C | livermore | CO | 80536-9210 | |
| 7855 | W COUNTY ROAD 80C | livermore | CO | 80536-9201 | |
| 8050 | W COUNTY ROAD 80C | timnath-wellington | CO | 80536-9228 | |
| 8175 | W COUNTY ROAD 80C | livermore | CO | 80536-9223 | |
| 8383 | W COUNTY ROAD 80C | livermore | CO | 80536-9226 | |
| 9425 | W COUNTY ROAD 80C | livermore | CO | 80536-9112 | |
| 10301 | W COUNTY ROAD 80C | livermore | CO | 80536-9110 | |
| 10307 | W COUNTY ROAD 80C | livermore | CO | 80536-9110 | |

| | | | | | |
|---|---|---|---|---|---|
| 10511 | W COUNTY ROAD 80C | livermore | CO | 80536-9110 | |
| 12019 | W COUNTY ROAD 80C | livermore | CO | 80536-9126 | |
| 13509 | W COUNTY ROAD 80C | livermore | CO | 80536-9108 | |
| 4105 | W COUNTY ROAD 80C RD | livermore | CO | 80536 | |
| 4413 | W COUNTY ROAD 80C RD | livermore | CO | 80536 | |
| 8017 | W COUNTY ROAD 80C RD | livermore | CO | 80536 | |
| 12909 | W COUNTY ROAD 80C RD | livermore | CO | 80536 | |
| 12927 | W COUNTY ROAD 80C RD | livermore | CO | 80536 | |
| 15590 | W COUNTY ROAD 80C RD | livermore | CO | 80536 | |
| 261 | W COUNTY ROAD 82E | livermore | CO | 80536-9249 | |
| 321 | W COUNTY ROAD 82E | livermore | CO | 80536-9249 | |
| 628 | W COUNTY ROAD 82E | livermore | CO | 80536-9249 | |
| 752 | W COUNTY ROAD 82E | livermore | CO | 80536-9249 | |
| 801 | W COUNTY ROAD 82E | livermore | CO | 80536-9213 | |
| 815 | W COUNTY ROAD 82E | livermore | CO | 80536-9213 | |
| 821 | W COUNTY ROAD 82E | livermore | CO | 80536-9213 | |
| 1149 | W COUNTY ROAD 82E | livermore | CO | 80536-9213 | |
| 1150 | W COUNTY ROAD 82E | livermore | CO | 80536-9213 | |
| 1150 | W COUNTY ROAD 82E | livermore | CO | 80536-9213 | |
| 1559 | W COUNTY ROAD 82E | livermore | CO | 80536-9213 | |
| 1720 | W COUNTY ROAD 82E | livermore | CO | 80536-9213 | |
| 1891 | W COUNTY ROAD 82E | livermore | CO | 80536-9213 | |
| 1898 | W COUNTY ROAD 82E | livermore | CO | 80536-9213 | |
| 1910 | W COUNTY ROAD 82E | livermore | CO | 80536-9213 | |
| 1910 | W COUNTY ROAD 82E | livermore | CO | 80536-9213 | |
| 2015 | W COUNTY ROAD 82E | livermore | CO | 80536-9244 | |

| | | | | | |
|---|---|---|---|---|---|
| 2051 | W COUNTY ROAD 82E | livermore | CO | 80536-9244 | |
| 2315 | W COUNTY ROAD 82E | livermore | CO | 80536-9204 | |
| 2440 | W COUNTY ROAD 82E | livermore | CO | 80536-9204 | |
| 2440 | W COUNTY ROAD 82E | livermore | CO | 80536-9204 | |
| 2927 | W COUNTY ROAD 82E | livermore | CO | 80536-9204 | |
| 2935 | W COUNTY ROAD 82E | livermore | CO | 80536-9204 | |
| 3042 | W COUNTY ROAD 82E | livermore | CO | 80536-9214 | |
| 3050 | W COUNTY ROAD 82E | livermore | CO | 80536-9214 | |
| 3617 | W COUNTY ROAD 82E | livermore | CO | 80536-9214 | |
| 3876 | W COUNTY ROAD 82E | livermore | CO | 80536-9214 | |
| 4510 | W COUNTY ROAD 82E | livermore | CO | 80536-9214 | |
| 4525 | W COUNTY ROAD 82E | livermore | CO | 80536-9214 | |
| 5834 | W COUNTY ROAD 82E | livermore | CO | 80536-9231 | |
| 6449 | W COUNTY ROAD 82E | livermore | CO | 80536-9251 | |
| 100 | W COUNTY ROAD 82E RD | livermore | CO | 80536 | |
| 1924 | W COUNTY ROAD 82E RD | livermore | CO | 80536 | |
| 1952 | W COUNTY ROAD 82E RD | livermore | CO | 80536 | |
| 2302 | W COUNTY ROAD 82E RD | livermore | CO | 80536 | |
| 2400 | W COUNTY ROAD 82E RD | livermore | CO | 80536 | |
| 3700 | W COUNTY ROAD 82E RD | livermore | CO | 80536 | |
| 5657 | W COUNTY ROAD 82E RD | livermore | CO | 80536 | |
| 6101 | W COUNTY ROAD 82E RD | livermore | CO | 80536 | |
| 6101 | W COUNTY ROAD 82E RD | livermore | CO | 80536 | |
| 6119 | W COUNTY ROAD 82E RD | livermore | CO | 80536 | |
| 6318 | W COUNTY ROAD 82E RD | livermore | CO | 80536 | |
| 6371 | W COUNTY ROAD 82E RD | livermore | CO | 80536 | |

| | | | | | |
|---|---|---|---|---|---|
| 7070 | W COUNTY ROAD 82E RD | livermore | CO | 80536 | |
| 7104 | W COUNTY ROAD 82E RD | livermore | CO | 80536 | |
| 24 | WEAVERBIRD WAY | livermore | CO | 80536-9530 | |
| 633 | WEAVERBIRD WAY | livermore | CO | 80536-9530 | |
| 721 | WEAVERBIRD WAY | livermore | CO | 80536-9530 | |
| 1199 | WHITE EAGLE WAY | livermore | CO | 80545 | |
| 200 | WILD MOUNTAIN LN | livermore | CO | 80536-9540 | |
| 205 | WILD MOUNTAIN LN | livermore | CO | 80536 | |
| 379 | WILD PONY WAY | livermore | CO | 80536-9163 | |
| 467 | WILD PONY WAY | livermore | CO | 80536-9163 | |
| 800 | WILD PONY WAY | livermore | CO | 80536-9162 | |
| 172 | WIND DANCER WAY | livermore | CO | 80536 | |
| 180 | WIND DANCER WAY | livermore | CO | 80536 | |
| 265 | WIND DANCER WAY | livermore | CO | 80536 | |
| 286 | WIND DANCER WAY | livermore | CO | 80536-7628 | |

# EXHIBIT B, BUDGET

| Budget Line Item(s) | Total Cost | Grant Funds | Matching Funds | Matching Funds Source |
|---|---|---|---|---|
| Materials (conduit, fiber, handholes, etc) | $844,840.00 | $633,630.00 | $211,210.00 | investor funds |
| Make Ready (permits) | $24,300.00 | $18,225.00 | $6,075.00 | investor funds |
| Core Network Electronics | $100,670.06 | $75,502.55 | $25,167.51 | investor funds |
| Underground work (plowing) | $1,038,000.00 | $778,500.00 | $259,500.00 | investor funds |
| Underground work (boring - rural) | $160,000.00 | $120,000.00 | $40,000.00 | investor funds |
| Fiber (splicing, blowing, handhole build, etc) | $447,350.00 | $335,512.50 | $111,837.50 | investor funds |
| Drops (plowing, locates, CPE, install | $238,800.00 | $179,100.00 | $59,700.00 | investor funds |
| Project Management (2.5%) | $71,349.00 | $53,511.75 | $17,837.25 | investor funds |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **Total** | **$2,925,309.06** | **$2,193,981.80** | **$731,327.26** | |

DocuSign Envelope ID: 6C96E174-1924-4A2E-A75E-9E804920108B

# EXHIBIT C, QUARTERLY REPORTING FORM

Quarterly Narrative of Project Activities Form

**Reporting-Notification, Subsection A, Quarterly Reports, between the State of Colorado, Governor's Office of Information Technology (State), and Grantee hereby submits its quarterly narrative of project activities including the following write-ups:**

**Project Description**
(Narrative)

**Progress Updates on Project and Milestones (including narrative with details on milestone progress and completion dates)**
(Narrative)

| PROJECT PLAN | |
|---|---|
| **Start Date**:<br><br>**Anticipated Completion Date**: | **Name of Grantee:**<br><br>**Name of Project:** |
| **PROJECT MILESTONES – include all planning, procurement, construction, installation, testing and turn-up milestones** | **By: (completion date)** |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

DocuSign Envelope ID: 6C96E174-1924-4A2E-A75E-9E804920108B

| | |
|---|---|
| | |
| | |
| | |

**<u>Explanation of why any project targets have not been met and steps taken to obtain project completion date.</u>**
<u>(Narrative)</u>

| Items | Purchased/Not Purchased | Reasoning |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

Grantee Name:

_______________________________Name and Title of Signatory

_______________________________By: Signature

DocuSign Envelope ID: 6C96E174-1924-4A2E-A75E-9E804920108B

# EXHIBIT D, QUARTERLY PAYMENT REQUEST FORM

**In accordance with Grant Agreement _________, Exhibit A, Statement of Work, Section 8, Administrative Requirements, Subsection 8.1 Reporting, Paragraph 8.1.1. Quarterly Pay Request and Status Reports, between the State of Colorado, Governor's Office of Information Technology (State) and ______ (Grantee), Grantee hereby submits its quarterly payment request for ______ project activities.**

**Receipts**
Attach all receipts for costs Grantee is requesting reimbursement for to this form.

**Payment Request Description**
Provide a detailed description of the amounts and types of reimbursable expenses.

**Line Item Reimbursement Request** (Grantee must complete the table below and provide an electronic copy of the excel spreadsheet supplied by the State.)

| Line Item(s) | Budgeted Cost | Cumulative Actual Cost | Cumulative Grant Reimbursement | Cumulative Match | Current Quarter's Actual Cost | Current Quarter's Grant Reimbursement Request | Current Quarter's Match Amount |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| **Total** | | | | | | | |

**Total current reimbursement request: __________________**
**Total of all reimbursement requests to date (not including this request): __________________**
**Remaining available Grant Funds (after this request): __________________**

DocuSign Envelope ID: 6C96E174-1924-4A2E-A75E-9E804920108B

Grantee Name:

______________________________

Name and Title of Signatory

______________________________

Signature

# EXHIBIT E, PROJECT COMPLETION FORM

| | |
|---|---|
| Grantee Name | |
| Agreement Number | |
| Agreement End Date | |

In accordance with Grant Agreement _______, Section 6, Reporting-Notification, Subsection C, Performance and Final Status between the State of Colorado, Governor's Office of Information Technology (State), and ___________ (Grantee), Grantee hereby submits its Project Completion Form and its final Grant Reimbursement Request for costs incurred.

For this final Grant Reimbursement Request, Grantee must not have any unresolved errors on previous Grant Reimbursement Requests. This final Grant Reimbursement Request constitutes the final financial reconciliation for the Grant Award and any remaining funds that remain unexpended shall not be available to Grantee after submission of this form.

An agreement closure letter will be sent to Grantee after a comprehensive project summary has been submitted, and an onsite or remote monitoring visit has been conducted.

| | |
|---|---|
| Project Name | |
| Grant Award Amount | |
| Total Project Cost | |

| | |
|---|---|
| Final Invoice Payment Amount | |
| Final Invoice Payment Date | |

| | |
|---|---|
| Total Amount Reimbursed | |

| | |
|---|---|
| Funds Remaining | |

**Check List**

- Comprehensive report summary submitted ______
- Final Reimbursements were submitted {date} ______
- Onsite or remote monitoring visit scheduled {date} ______
- Project photos have been submitted (optional) ______
- Third Party Speed Test Certification has been completed (required) _____

**Grantee Signature:** **Date:**

______________________________ ______________________

# EXHIBIT F, COMPREHENSIVE PROJECT SUMMARY

To complete the Comprehensive Project Summary, please use this form to explain and examine the completed project.

Executive Summary:

Overall Project Description:

Work and Funds Summary: (List all activities that were completed and all funds spent during the project period.)

Milestones Summary: (Provide an account of all project milestones, as detailed in the Project Plan, and their final status.)

Modification Summary: (Provide a summary of all modifications made during the project and the overall impact the project will have on the area.)

Retrospective: (Provide lessons learned and key takeaways from the project.)

Final Thoughts:

# EXHIBIT G, BUDGET MODIFICATION FORM

**In accordance with Agreement Exhibit A, Paragraph 3.4.1, contract (Agreement) routing number _____________, between the State of Colorado, Governor's Office of Information Technology**, Colorado **(State)** and ______ (Grantee), hereby submits this written budget modification request.

**Instructions**:
1. Double click inside the box to activate the Excel spreadsheet
2. In the first column list your line items from your approved budget
3. Enter your approved budget amounts
4. In the middle requested amended amount column use *(-minus)* to deduct the amount from the line item, add the same dollar amount to the line item you wish to increase. The amount will be adjusted automatically in the far right column.

| Line Item | Approved Budget | | Requested Amended Amounts | | Recommended Amended Budget | |
|---|---|---|---|---|---|---|
| | Amount | Total | Amount +/- | Total | Amount | Total |
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

Total Funds being re-allocated: ___________________

**Justification:** (Explain in detail the reasons for the budget modifications and how the change will impact the scope of work, project plan, and project deliverables)

Request Date:
Grantee Name:

_________________________________
Name and Title of Signatory

_________________________________
Signature

For State Use Only

Request _______Approved or __Rejected

_________________________________
Name and Title of Signatory

_________________________________
Signature

Date

# EXHIBIT H, SAMPLE OPTION LETTER

| | |
|---|---|
| **State Agency**<br>Insert Department's or IHE's Full Legal Name | **Option Letter Number**<br>Insert the Option Number (e.g. "1" for the first option) |
| **Grantee**<br>Insert Grantee's Full Legal Name, including "Inc.", "LLC", etc... | **Original Agreement Number**<br>Insert CMS number or Other Agreement Number of the Original Contract |
| **Current Agreement Maximum Amount**<br>Initial Term<br>State Fiscal Year 20xx $0.00<br>Extension Terms<br>State Fiscal Year 20xx $0.00<br>State Fiscal Year 20xx $0.00<br><br>Total for All State Fiscal Years $0.00 | **Option Agreement Number**<br>Insert CMS number or Other Agreement Number of this Option<br><br>**Agreement Performance Beginning Date**<br>Month Day, Year<br><br>**Current Agreement Expiration Date**<br>Month Day, Year |

1. **OPTIONS:**
   A. Option to extend for an Extension Term
   B. Option to change the quantity of Goods under the Agreement
   C. Option to change the quantity of Services under the Agreement
   D. Option to modify Agreement rates
   E. Option to initiate next phase of the Agreement
   F. Option to extend the Fund Expenditure End Date
2. **REQUIRED PROVISIONS:**

A. **For use with Option 1(A):** In accordance with Section(s) Number of the Original Agreement referenced above, the State hereby exercises its option for an additional term, beginning Insert start date and ending on the current Agreement expiration date shown above, at the rates stated in the Original Agreement, as amended.

B. **For use with Options 1(B and C):** In accordance with Section(s) Number of the Original Agreement referenced above, the State hereby exercises its option to Increase/Decrease the quantity of the Goods/Services or both at the rates stated in the Original Agreement, as amended.

C. **For use with Option 1(D):** In accordance with Section(s) Number of the Original Agreement referenced above, the State hereby exercises its option to modify the Agreement rates specified in Exhibit/Section Number/Letter. The Agreement rates attached to this Option Letter replace the rates in the Original Agreement as of the Option Effective Date of this Option Letter.

D. **For use with Option 1(E):** In accordance with Section(s) Number of the Original Agreement referenced above, the State hereby exercises its option to initiate Phase indicate which Phase: 2, 3, 4, etc, which shall begin on Insert start date and end on Insert ending date at the cost/price specified in Section Number.

E. **For use with all Options that modify the Agreement Maximum Amount:** The Agreement Maximum Amount table on the Agreement's Signature and Cover Page is hereby deleted and replaced with the Current Agreement Maximum Amount table shown above.

F. **For use with Option F:** In accordance with Section(s) Number of the Original Agreement referenced above, the State hereby exercises its option to extend the Fund Expenditure End Date, beginning Insert start date and ending on the current Fund Expenditure End Date date shown above, at the rates stated in the Original Agreement, as amended.

3. **OPTION EFFECTIVE DATE:**

G. The effective date of this Option Letter is upon approval of the State Controller or , whichever is later.

| | |
|---|---|
| **STATE OF COLORADO**<br>Jared S. Polis, Governor<br>INSERT-Name of Agency or IHE<br>INSERT-Name & Title of Head of Agency or IHE<br><br>______________________________<br>By: Name & Title of Person Signing for Agency or IHE<br><br>Date: ________________ | In accordance with §24-30-202, C.R.S., this Option is not valid until signed and dated below by the State Controller or an authorized delegate.<br>**STATE CONTROLLER**<br>**Robert Jaros, CPA, MBA, JD**<br>By:____________________________<br>Name of Agency or IHE Delegate-Please delete if agreement will be routed to OSC for approval<br>Option Effective Date:________________ |

# State of Colorado HCSM Grant Agreement Modification
# Grant Agreement Amendment 1
# COVER PAGE

**State Agency**
Governor's Office of Information Technology
**Grantee**
Maverix Broadband, Inc.
**Original Agreement Number**
185624
**Amendment Agreement Number**
197001
**Agreement Performance Beginning Date**
August 2, 2023
**Matching Funds Amount**
$731,327.27
**Grant Funds Maximum Amount**
$2,193,981.80
**Matching Funds Percentage Required:** 29%

**Current Agreement Expiration Date**
June 30, 2026
**Fund Expenditure End Date**
June 30, 2026
**Agreement Authority**
Authority to enter into this Grant exists in §C.R.S. 24-37.5-119, C.R.S.; funds have been budgeted, appropriated and otherwise made available, and a sufficient unencumbered balance thereof remains available for payment. Required approvals, clearance and coordination have been accomplished from and with appropriate agencies.
**Agreement Maximum Amount**
$2,193,981.80

**Initial Term**
State Fiscal Year 2024: $2,193,981.80
**Extension Terms**
State Fiscal Year 2025: Any unused funds from previous State Fiscal Year
State Fiscal Year 2026: Any unused funds from previous State Fiscal Years

**Total for all State Fiscal Years:**
$2,193,981.80

**Agreement Purpose**
The purpose of this Agreement is to provide funds from the Broadband Account held by the High Cost Support Mechanism third-party contractor to Grantee for deploying broadband infrastructure into unserved areas of Colorado. The purpose of this Agreement is further described in Exhibit A.

**Exhibits and Order of Precedence**
The following Exhibits and attachments are included with this Agreement:

1. Exhibit A, Statement of Work
2. Exhibit B, Budget
3. Exhibit C, Quarterly Reporting Form
4. Exhibit D, Quarterly Payment Request Form
5. Exhibit E, Project Completion Form
6. Exhibit F, Comprehensive Project Summary
7. Exhibit G, Budget Modification Form

8. Exhibit H, Sample Option Letter

In the event of a conflict of inconsistency between this Agreement and any Exhibit or attachment, such conflict or inconsistency shall be resolved by reference to the documents in the following order of priority:

1. Colorado Special Provisions in §18 of the main body of this Agreement.
2. The provisions of the other sections of the main body of this Agreement.
3. Exhibit A, Statement of Work.
4. Exhibit B, Budget.
5. Exhibit C, Quarterly Reporting Form.
6. Exhibit D, Quarterly Payment Request Form.
7. Exhibit E, Project Completion Form.
8. Exhibit F, Comprehensive Project Summary.
9. Exhibit H, Sample Option Letter
10. Exhibit G, Budget Modification Form.

**Principal Representatives**

For the State:
Brian Martin
Director of The Broadband Fund
Governor's Office of Information Technology
1575 Sherman St.
Denver, CO 80203
brian.martin@state.co.us

For Grantee:
David Lindauer
10940 S Parker Rd, Suite 418
Parker, CO 80134
david@maverixbroadband.com

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

## SIGNATURE PAGE

The Parties hereto have executed this agreement
Each person signing this Amendment represents and warrants that the signer is duly authorized to execute this Amendment and to bind the Party authorizing such signature.

**Grantee**
Maverix Broadband, Inc.

By: Signed by: David Lindauer E95E41525981453...

Name: David Lindauer

Title: CEO

Date: 4/18/2025

**STATE OF COLORADO**
Jared S. Polis, Governor
Governor's Office of Information Technology
David Edinger, Chief Information Officer and Executive Director

By: DocuSigned by: Alex Monts 4235987998F1488...

Name: Alex Monts

Title: CFO

Date: 4/18/2025

**STATE CONTROLLER**
Robert Jaros, CPA, MBA, JD

By: DocuSigned by: Andi Hardy 5C95832D4F7B486...

Name: Andi Hardy

Title: Controller

Amendment Effective Date: 4/21/2025

In accordance with §24-30-202, C.R.S., this Agreement is not valid until signed and dated below by the State Controller or an authorized delegate.

**1. Parties**
This Amendment (the "Amendment") to the Original Agreement shown on the Signature and Cover Page for this Amendment (The "Agreement") is entered into by and between the Grantee, and the State.

**2. Terminology**
Except as specifically modified by the Amendment, all terms used in this Amendment shown on the Signature and Cover Page for this Amendment (the "Agreement") is entered into by and between the Grantee, and the State

**3. Amendment Effective Date and Term**

A. Amendment Effective Date
This Amendment shall not be valid or enforceable until the Amendment Effective Date shown on the Signature and Cover Page for this Amendment. The State shall not be bound by any provision of this Amendment before that Amendment Effective Date, and shall have no obligation to pay Grantee for any Work performed or expense incurred under this Amendment either before or after of the Amendment term shown in **§3.B** of this Amendment.

B. Amendment Term
The Parties' respective performances under this Amendment and the changes to the Agreement contained herein shall commence on the Amendment Effective Date shown on the Signature and Cover Page for this Amendment and shall terminate on the termination of the Agreement.

**4. Purpose**
This Amendment corrects errors on the original cover page of the Agreement, and extends the Agreement for and extension term.

**5. Modification**
The Agreement and all prior amendments thereto, if any, are modified as follows:

A. The Agreement initial Agreement Expiration Date on the Agreement's Signature and Cover Page is hereby deleted and replaced with the Current Agreement Expiration Date shown on the Signature and Cover Page for this Amendment.

B. The Agreement initial Cover Page is hereby deleted and replaced with the Cover Page shown on this Amendment.

**6. Limits of Effect and Order of Precedence**
This Amendment is incorporated by reference into the Agreement, and the Agreement and all prior amendments or other modifications to the Agreement, if any, remain in full force and effect except as specifically modified in this Amendment Except for the Special Provisions contained in the Agreement, in the event of any conflict, inconsistency, variance, or contradiction between the provisions of this Amendment and any of the provisions of the Agreement or any prior modification to the Agreement, the provisions of this Amendment shall in all respects supersede, govern, and control. The provisions of this Amendment shall only supersede, govern, and control over the Special Provisions contained in the Agreement to the extent that this Amendment specifically modifies those Special Provisions.