**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Maverix LLC, | ) | Case No. 26-16423-MER |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

**UNITED STATES TRUSTEE'S OBJECTION TO SECOND AMENDED APPLICATION OF DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF MATTHEW C. CAMPBELL OF THE LAW OFFICES OF MATTHEW C. CAMPBELL LLC AS COUNSEL TO THE DEBTOR**

The United States Trustee ("UST"), through counsel, submits this Objection to the Second Amended Application of Debtor for Entry of an Order Authorizing the Retention and Employment of Matthew C. Campbell of the Law Offices of Matthew C. Campbell LLC as Counsel to the Debtor (Docket No. 82, the "Second Amended Application") and states as follows:

## **Procedural History**

1. Maverix LLC (the "Debtor") filed its voluntary, chapter 11 Petition on August 31, 2026 (the "Petition Date").

2. As of the date of this objection, the Debtor continues to manage its financial affairs as a debtor-in-possession.

3. An official committee of unsecured creditors has not yet been appointed in this case.

4. Under section 307 of title 11 of the United States Code, the UST has standing to be heard on this objection.

Debtor's Application to Employ Proposed Counsel and Amendments thereto:

5. On September 9, 2026, the Debtor filed its original Application seeking to employ Matthew C. Campbell of the Law Offices of Matthew C. Campbell LLC ("Proposed Counsel") as its counsel in this case pursuant to 11 U.S.C. § 327(a) *nunc pro tunc* to the Petition Date.

6. Disclosures accompanying the original Application stated that a $30,000 retainer would be paid to Proposed Counsel by Maverix Enterprise Holding, Inc. ("Enterprise"), which is the sole member of Maverix Broadband, Inc., the sole member of the Debtor.

7. The next day, on September 10, 2026, the UST filed his Objection to that original Application. The UST's objections can be summarized as follows:

a. the application should not be approved *nunc pro tunc* to the Petition Date,

b. because counsel's retainer would be paid by a third party, Enterprise, notice of the application was required by L.B.R. 2014-1(a)(2),

c. transactions between the Debtor and Enterprise should be disclosed to ensure the absence of a conflict, and

d. given language in the form of engagement agreement that is inconsistent with the Bankruptcy Code, any order approving the application should clarify that the Debtor may not pay any fees or expenses until they are approved by the Court pursuant to 11 U.S.C. §§ 330 and 331.

8. On September 15, 2026, the Court entered its Order to File and Supplement, which, in part, directed the Debtor to supplement the Application "to disclose any and all transactions that may give rise to a conflict of interest between the Debtor and Enterprise."

9. The Court also directed the Debtor to give notice of the Application, including any supplement, to the UST and all creditors in compliance with L.B.R. 9013-1(a)(2).

10. On September 22, 2026, the Debtor filed its Amended Application seeking to employ Proposed Counsel.

11. On September 24, 2026, the Court entered its Order for Compliance with Local Bankruptcy Rules, which noted that the Debtor failed to file and serve a L.B.Form 9013-1.1 Notice in connection with the Amended Application.

12. On October 1, 2026, the Debtor filed the Second Amended Application. Disclosures filed with the Second Amended Application continue to provide that a $30,000 retainer would be paid to Proposed Counsel by Enterprise. Also, for the first time, those disclosures show that David Lindauer has guaranteed Proposed Counsel's fees.

<u>Incomplete Disclosures in this Case Thus Far:</u>

13. The Debtor filed its Schedules and Statement of Financial Affairs ("SOFA") on September 29, 2026. However, those documents are not complete. For instance, in connection with SOFA item 1, the Debtor states that its gross revenue during each of 2024, 2025, and 2026 is "Unknown." *See* Docket No. 76, at p. 1.

14. The Court has set a deadline of October 15, 2026, for the Debtor to file amended, detailed schedules. *See* Docket No. 86.

15. Also, the UST was not able to convene a meeting of creditors pursuant to 11 U.S.C. § 341(a) because the UST was advised that the Debtor's manager was ill. The meeting has been continued to October 30, 2026.

## **Objections**

16. The UST incorporates and reasserts herein his Objection filed at Docket No. 36 to the original Application to employ Proposed Counsel. The UST notes, however, that the Second Amended Application no longer requests relief *nunc pro tunc* to the Petition Date. The UST further observes that the Debtor has provided notice of the Second Amended Motion under L.B.R. 9013. *See* Docket Nos. 83 & 85[1].

17. As discussed above, the Second Amended Application continues to contemplate that Enterprise (the sole member of the Debtor's sole member) would fund Proposed Counsel's retainer of $30,000. The Second Amended Application and documents submitted therewith also provide that David Lindauer will personally guaranty Proposed Counsel's fees. Mr. Lindauer is the CEO of both the Debtor and Enterprise.

18. While courts have developed factors that may be analyzed in considering the payment of a retainer by a third party, the case law generally focuses on transactions between the debtor and payor and ensuring the absence of a conflict. *See, e.g.*, *In re Lotus Properties LP*, 200 B.R. 388, 393 (Bankr. C.D. Cal. 1996) (applying five-part test, including a requirement that proposed counsel sufficiently demonstrate the absence of facts which would create non-disinterestedness, actual conflict, or impermissible potential for a conflict of interest); *see also In re EZ Links Golf, LLC*, 317 B.R. 858, 863 (Bankr. D. Colo. 2004) (adopting *Lotus Properties* test).

19. Consistent therewith, in instances in which a retainer has been paid by a third party, L.B.R. 2014-1(a)(2) requires that the application include a verified statement of the debtor disclosing all transfers by the debtor to the entity providing the retainer and any other circumstances that may create a conflict of interest between the debtor and the payor.

20. As described above, the Court has also directed the Debtor "to disclose any and all transactions that may give rise to a conflict of interest between the Debtor and Enterprise."

21. The Declaration of David Landauer submitted with the Second Amendment Application at Docket No. 82-5 (the "Lindauer Declaration") *does* contain some additional disclosures. For instance, the Lindauer Declaration explains that after June 27, 2024, a bank account in the name of Maverix Broadband, Inc., the Debtor's member, was used for the Debtor's receipts and disbursements. *See* Lindauer Declaration at ¶ 15.

22. The Lindauer Declaration *seems* to indicate that Enterprise is a creditor of this estate in some amount less than $4,010,718.37. *See* id. at ¶ 19 (referring to Enterprise as "MEH"). The Lindauer Declaration also describes certain debts of Maverix Broadband, Inc., as well as a recorded liability of the Debtor per a 2022 balance sheet to Viath, Inc. *See* id. at ¶¶ 20 & 21.

23. However, neither the Second Amended Application nor the Lindauer Declaration adequately describe transactions, or the absence thereof, between the Debtor and Enterprise and

[1] The Certificate of Service filed at Docket No. 85 represents that the Second Amended Application and notice thereof were served on the "attached" mailing matrix, but the matrix was not attached.

Mr. Lindauer, such as the presence or absence of any prepetition transfers by the Debtor to Enterprise or to Mr. Lindauer.

24. The Lindauer Declaration does state: "To the best of my knowledge and belief, there have not been any *direct* payments between the Debtor and [Enterprise] *which did not go through the intermediary* [Maverix Broadband, Inc.]." *See id*. at ¶ 18 (emphasis added). Were there indirect payments? If so, what was the magnitude and what was the purpose? Why did they go through Maverix Broadband, Inc.? Was it because the Debtor's transactions were being routed through Maverix Broadband, Inc.'s account? Were there any transactions, direct or indirect, with Mr. Lindauer?

25. The UST submits that the applicant still has not met its burden of demonstrating the absence of facts which would create non-disinterestedness, actual conflict, or impermissible potential for a conflict of interest.

WHEREFORE, the UST objects to the Second Amended Application for the reasons set forth above and requests such other and further relief as the Court deems appropriate.

Dated: October 15, 2026

GREGORY M. GARVIN
Acting United States Trustee, Region 19

/s/ Alan K. Motes

By: Alan K. Motes, #33997
Trial Attorney for the U.S. Trustee
1961 Stout Street, Suite 12-200
Denver, Colorado 80294
(303) 312-7999 telephone
Alan.Motes@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on October 15, 2026, a copy of the UNITED STATES TRUSTEE'S OBJECTION TO SECOND AMENDED APPLICATION OF DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF MATTHEW C. CAMPBELL OF THE LAW OFFICES OF MATTHEW C. CAMPBELL LLC AS COUNSEL TO THE DEBTOR was served on the following parties in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

- Attorney Matthew Craig Campbell, via CM/ECF

/s/ Alan K. Motes