**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | Case No. 26-16423-MER |
| | ) | |
| MAVERIX LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

**EMERGENCY UNOPPOSED MOTION FOR RELIEF FROM AUTOMATIC STAY**

CooperReilly Investment Fund, LLC ("**CR**") and Sonoran Capital Advisors (the "**Receiver**," and together with CR, "**Movants**"), the court-appointed receiver over Maverix LLC (the "**Debtor**") and Maverix Broadband, Inc. ("**MXBB**"), by and through undersigned respective counsel, submits this *Emergency Unopposed Motion for Relief from Automatic Stay* (the "**Motion**"), and state as follows:

**INTRODUCTION**

1. The Debtor and/or its non-debtor affiliate provides broadband services to approximately 1,950 customers in Colorado. The assets that run the network are intertwined and were historically owned by the Debtor and MXBB. Prepetition, the Receiver was appointed over all of these assets. And prepetition, the Receiver went to great lengths to compel David R. Lindauer, the principal of the Debtor and MXBB, to turn over complete control over the network, as required under the receivership order. Mr. Lindauer refused to comply, forcing the Receiver to seek a contempt citation against Mr. Lindauer and the turnover of receivership estate property. The Receiver was unable to take complete control over the network prior to the Debtor filing this case.

2. The Debtor filed this case to stop the Receiver from taking control over the network and turning over assets to CR pursuant to a court-approved sale agreement. According to the Debtor, the sale—which occurred three days prior to the bankruptcy case—did not close, and that because the sale did not close, the property subject to the purchase agreement is actually property

of the Debtor's estate. Furthermore, the Debtor claims that its property is so commingled with MXBB's property, that the automatic stay prevents the Receiver from taking any action with respect to the broadband network.

3. Recognizing it would take time to resolve the property-of-the-estate issue, CR sought to address the immediate control issue through a motion to excuse turnover, seeking not just the excusal of turnover, but express authority for the Receiver to take possession and control over the remainder of the Debtor's property, i.e., to put the network "under one roof." Although the Court excused turnover, the Court declined to let the Receiver take control over the portions of the network in the hands of Mr. Lindauer. A precarious status quo ensued. As it stands, the Trustee and Receiver each have some control over the Debtor's property, although questions remain pending as to which property is which.

4. Now that the Court has appointed Jared C. Walters (the "Trustee") as chapter 11 trustee of the Debtor's bankruptcy estate, it is clear that the network infrastructure, including portions that the Debtor asserts are its separate property, must be under one management roof. ***Since last Friday, there have been outages impacting first responders and customers who rely on the network for telephone services***. The Debtor has no business operations or employees, and the estate has no cash to maintain, operate, or otherwise service the network. Because the Trustee lacks the resources to address these emergencies, the Trustee, Receiver, and CR—the only three entities who have any claim to what the Debtor insists is its property—agreed that the Receiver would take lead and send qualified personnel to Mr. Lindauer's residence to resolve the emergencies. But Mr. Lindauer refused, restricting access to the network cabinet on his property, refusing to provide documentation, dictating to Movants how repairs will be done, and ultimately demanding $300 an hour to resolve a problem he will not let Movants address. Prepetition, the

Receiver could run to Judge Kristen Mix, who the state court appointed as a special master to address recurrent issues such as these. But because of the automatic stay, the Receiver has no recourse to address these emergencies. The status quo is no longer tenable. To ensure uninterrupted services, including services to first responders, it is imperative that the network is under one roof, and Movants and the Trustee believe the Receiver is best positioned to house the network. Accordingly, cause exists to grant the Motion.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over the Bankruptcy Case pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G).

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

7. The predicates for the relief requested herein are section 362(d) of title 11 of the United States Code (the "**Bankruptcy Code**"),[1] Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and L.B.R. 4001-1.

## RELEVANT FACTS

8. On January 22, 2026, the District Court for the City and County of Denver, Colorado (the "**State Court**") in the case styled, *CooperReilly Investment Fund, LLC v. Maverix LLC, et al.*, No. 2026CV30150 (Colo. Dist. Ct. Denver Cty. Jan. 13, 2026), appointed the Receiver pursuant to the its *Order Granting Verified Motion for Ex Parte Appointment Receiver* (the "**Receivership Motion**"), granting it "complete and exclusive possession, custody, and control" over the Debtor, MXBB, their ongoing businesses, and all of their assets. Docket No. 49, ¶¶ 11, 49, Ex. 1, ¶ 5.

9. Maverix Broadband provides broadband services to roughly 1,950 customers in

---

[1] Unless otherwise stated, all references to a chapter or section are to the Bankruptcy Code.

Douglas and Elbert Counties, including a local fire station and customers who rely on services for telephone services. *See id.* ¶¶ 14, 20.

10. On August 28, 2026, the State Court approved that certain Asset Purchase Agreement (the "**APA**") between CR, the Debtor, and MXBB, and authorized and directed the Receiver to "sell, transfer, and assign the Acquired Assets . . . to Plaintiff CooperReilly Investment Fund, LLC." *Id.* ¶ 97, Ex. 30, ¶ 3.

11. On August 28, 2026, CR and the Receiver closed under the APA. *Id.* ¶ 98.

12. On August 31, 2026, three days after CR and the Receiver closed under the APA, the Debtor filed a voluntary petition for relief under chapter 11. *See id.*; Docket No. 1.

13. Before this bankruptcy case, the Receiver demanded that David R. Lindauer, the Debtor's principal, turnover certain accounts and equipment needed to service the network. *See* Docket No. 49, ¶ 91.

14. On September 18, 2026, CR filed its *Motion to Excuse Receiver's Turnover Pursuant to 11 U.S.C. § 543(d)(1)* [Docket No. 49] (the "**Motion to Excuse Turnover**"), seeking excusal of the Receiver's compliance with section 543(a) and (b), and authorization to continue operating the Debtor and, if necessary, taking possession, custody, and control over the Debtor's property.

15. On October 2, 2026, following a hearing on the Motion to Excuse Turnover, the Court entered its *Order Granting Motion to Excuse Turnover Pursuant to 11 U.S.C. § 543(d)(1)* [Docket No. 87]. Pursuant to that order, the Court authorized the Receiver "to continue holding the Debtor's property ***currently in the Receiver's possession***." Docket No. 87, ¶ 3 (emphasis added). Importantly, that order did not authorize the Receiver to take any action with respect to the Debtor's property in the Debtor's possession. *See id.*

16. In this case, the Debtor has taken the position that (a) the closing did not occur; (b) because the closing did not occur, the Debtor's assets subject to the APA are property of the Debtor's estate; and (c) the assets of the Debtor and MXBB are so commingled that the automatic stay prevents the Receiver from taking any action with respect to those assets. *See* Docket No. 18, ¶¶ 2, 4; Docket No. 49, Ex. 33, ¶¶ 6, 14–19.

17. CR and the Receiver maintain the closing occurred and that, with certain exceptions, all of the property scheduled by the Debtor is not property of the Debtor's estate, but the property of CR.

18. On September 18, 2026, CR initiated the adversary proceeding, *CooperReilly Investment Fund, LLC v. Maverix LLC*, No. 26-01240-MER (Bankr. D. Colo. Sept. 18, 2026) (the "**Adversary Proceeding**"), seeking a declaration that the assets purchased under the APA are not property of the Debtor's estate. *See generally* Docket No. 1, Adversary Proceeding.

19. On October 29, 2026, CR filed its *Motion for Summary Judgment* (the "**Summary Judgment Motion**") in the Adversary Proceeding. *See* Docket No. 10, Adversary Proceeding.

20. On October 22, 2026, the Court approved the appointment of the Trustee as the chapter 11 trustee of the Debtor's estate. *See* Docket No. 117.

21. At this juncture, control over the Debtor's putative assets are ostensibly shared between the Trustee and the Receiver. *See* Docket No. 87.

22. The Debtor has no business operations or employees. *See* Docket No. 49, ¶ 13.

23. The estate has no cash to maintain, operate, or otherwise service the network.

24. On October 29, 2026, Mr. Lindauer informed the Trustee of "an emergency at the core network location," which is located on Mr. Lindauer's residence. Exhibit 1 at 1. Mr. Lindauer asked the Trustee for permission to secure a technician to resolve the emergency. *Id.* at 1–2.

Recognizing that the estate "has no present ability to pay for the repairs," the Trustee included CR and the Receiver in the discussion, and supported the Receiver's plan to send out a technician to address the emergency. *Id.* at 1; Exhibit 2 at 11–12.

25. The Receiver promptly secured a technician to address the emergency. *See* Exhibit 2 at 14. However, Mr. Lindauer ***twice*** refused to let a technician on his property to address the emergency. *See id.* at 7–12. Instead, Mr. Lindauer played games for five days, first requiring the presence of a sheriff, and then later interjecting himself in the process, dictating all aspects of the repair process. *See id.* at 4–6. Mr. Lindauer also refused to allow his own representative access to the cabinet to document the repair and condition of the components, as requested by the Receiver. *Id.* at 3.

26. On November 4, 2026, the Receiver learned of another emergency: that the local fire station lost internet as well as customers relying on internet for telephone services. *Id.* Because Mr. Lindauer refused to provide access to the cabinet on his property, the Receiver was forced to agree to pay Mr. Lindauer $300 an hour to address the emergency, despite wanting to use the Receiver's own network engineering firm, and despite having no insight into what the issue is or what the Receiver is paying for. *Id.* at 1–4.

**LAW AND ARGUMENT**

27. Upon the filing of a voluntary petition, the Bankruptcy Code imposes an automatic stay against "the commencement . . . of a judicial, administrative, or other action or proceeding against the debtor" and "the enforcement, against the debtor or against the property of the estate, of a judgment obtained before the commencement of the case." 11 U.S.C. § 362(a)(1), (2).

28. Under section 362(d)(1), "the court shall grant relief from the [automatic] stay . . . for cause." "'Cause' is an intentionally broad and flexible concept which must be determined on a

case-by-case basis." *In re Project Orange Assocs., LLC*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010) (citation omitted); *see also Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir. 1987).

29. Here, cause exists to grant the Motion. Prepetition, the Receiver did not have complete control over the network that provides broadband services. *See* Docket No. 49, ¶ 91. Instead, the network was controlled by the Receiver and Mr. Lindauer, who refused to relinquish control in violation of the Receivership Order. *See id.* As it stands, control of the network is shared between the Trustee and the Receiver. *See* Docket No. 87, 117.

30. The Trustee does not have the resources needed to maintain, operate, or otherwise service what the Debtor and Mr. Lindauer assert are the bankruptcy estate's portion of the network. The Debtor has no business operations or employees, and the estate has no available cash. *See* Docket No. 49, ¶ 13. To maintain the entire network and provide streamlined and uninterrupted services to customers, Movants believe the Receiver is best positioned to continue maintaining, operating, and otherwise servicing the entire network until the Court rules on the Summary Judgment Motion.[2] The Receiver has maintained all of these assets since January 22, 2026. Additionally, the Receiver is already authorized to control some of the Debtor's property and all of MXBB's property. ***The Trustee does not oppose the Receiver's control and operation of the entire network, including any property that may belong to the Debtor separately, and supports the relief requested by Movants***.

31. The network is currently suffering critical outages which are impacting first responders and customers who rely on the network for telephone services (e.g., customers who may have no other source of telephone services). Despite the Trustee and CR agreeing to CR's

[2] If the Court determines that the assets subject to the APA are not property of the Debtor's estate, then CR and the Receiver can address network issues outside the purview of the Court.

proposed corrective actions, and the receivership order mandating Mr. Lindauer's compliance, Mr. Lindauer has repeatedly refused to allow the Receiver to address the emergency. This is not the first time this has happened. Mr. Lindauer previously demanded $10,000 to address alleged cabinet overheating, which proved overblown and nothing more than an attempt to extort the Receiver:

> FUCK—and as I was about to hit send, we just got a **second notification of a cabinet overheating**. When I say[,] "actual flames," it's far from an exaggeration, there are actual emergencies happening and I think the entirety of the receivership and CR has no idea what actually takes place day to day operationally and is unqualified to pretend to maintain it. Please, please, please, just tell me, "we'll send the minimum $10,000 you requested, right now, we desperately need your help, please go have your teams put out the fires and ensure the network is running for customers."

Docket No. 49, ¶¶ 81–82, Ex. 24. As a result of Mr. Lindauer's previous actions, the State Court appointed Judge Kristen Mix as a court appointed neutral to address these emergent issues. However, because of the alleged commingling and the Debtor's assets being in both the bankruptcy and receivership estate, Judge Mix is unable to resolve these issues. *See* Docket No. 49, Ex. 36. By granting the Motion, the Court will allow the Receiver and Judge Mix to resolve any issues related to the entirety of the network in an expedited and streamlined fashion.

32. The Receiver does not need the following property to operate the network: (a) the real property commonly known as 3144 County Road 186, Parker, CO 80138 identified at line 55.4 on Docket No. 98 at 12; (b) the vehicles identified at lines 47.1 to 47.1 on Docket No. 98 at 10; and (c) the causes of action and claims identified at line 74.1 to 74.4 and 75.1 to 75.8 on Docket No. 98 at 14–15. This property will remain under the possession and control of the Trustee.

33. Movants requests that the Court waive the fourteen-day stay requirement pursuant to Bankruptcy Rule 4001(a)(3), which will allow the Receiver to take complete and immediate control over the network and resolve any emergencies.

WHEREFORE, Movants respectfully requests that the Court grant the Motion, authorize the Receiver to take possession and control of the Debtor's property, and grant any other relief as the Court deems just and proper.

Respectfully submitted,

Dated: November 6, 2026

*/s/ Patrick R. Akers*

Matthew T. Faga (41132)
Patrick R. Akers (54803)
Benjamin Wieck (59208)
MARKUS WILLIAMS LLC
1775 Sherman Street, Suite 1950
Denver, Colorado 80203
(303) 830-0800
(303) 830-0809 (facsimile)
mfaga@markuswilliams.com
pakers@markuswilliams.com
bwieck@markuswilliams.com

*Counsel for CR*

*/s/ David A. Laird*

David A. Laird (31067)
FENNEMORE CRAIG, P.C.
3615 Delgany Street, Suite 1100
Denver, Colorado 80216
(303) 291-3200
(303) 291-3201 (facsimile)
dlaird@fennemorelaw.com

*Counsel for the Receiver*