**From:** Tegan Christianson
**To:** David Lindauer; Angie Stearns
**Cc:** Laura Newman; jcwalters7@gmail.com; Laird, David; David Lindauer; Patrick R. Akers; Scott ehlers; Bryan Perkinson; hartlt@ballardspahr.com; john@theminerva.com; Matthew Campbell
**Subject:** RE: Overheating Issue Within NOC Cabinet
**Date:** Wednesday, November 4, 2026 6:46:41 PM
**Attachments:** Outlook-image.png.png
Outlook-Visit our .png
Outlook-Connect on.png
Outlook-Visit us o.png
Outlook-Follow Fen.png

---

David,

We can agree to your proposed emergency rate of $300 per hour for this work. This agreement covers this work only and does not resolve any prior invoices.

That agreement is subject to the following:

1. You will provide daily written updates on your progress, including the work performed and the time spent.
2. The work is capped at 8 hours. Any time beyond that requires our approval in writing before it is performed.
3. As previously requested, you will document the exact issues and their root causes so they can be reviewed by our network engineering team.

Because we are agreeing to pay your emergency rate, we expect the work to begin immediately and a status update to be provided first thing tomorrow.

Best,
Tegan

---

**From:** David Lindauer <david@viath.com>
**Sent:** Wednesday, 04 November 2026 16:56:10
**To:** Angie Stearns <angie@mx-bb.com>
**Cc:** Tegan Christianson <tchristianson@sonorancap.com>; Laura Newman <laura@maverixbroadband.com>; jcwalters7@gmail.com <jcwalters7@gmail.com>; Laird, David <dlaird@fennemorelaw.com>; David Lindauer <otlayi.david@gmail.com>; Patrick R. Akers <pakers@markuswilliams.com>; Scott ehlers <scottehlers@hotmail.com>; Bryan Perkinson <bperkinson@sonorancap.com>; hartlt@ballardspahr.com <hartlt@ballardspahr.com>; john@theminerva.com <john@theminerva.com>; Matthew Campbell <matthew@cswlegal.com>
**Subject:** Re: Overheating Issue Within NOC Cabinet

The last time I "focus[ed] on resolving the issue", I was refused payment for my time that kept the network online and even for the fuel the generator required, despite having gotten approval ahead of time. The receiver's report to the court afterwards was that the receivership handled everything fine on their own, without help, and then I was slandered despite my unpaid contributions. You will have to excuse my concerns and my request for assurances of fair compensation for my time and expertise.

On Wed, Nov 4, 2026 at 4:34 PM Angie Stearns <angie@mx-bb.com> wrote:

> David,
>
> Could we focus on resolving the issue so that our customers can regain access to emergency services as soon as possible? Moving past this back-and-forth would be ideal for everyone involved.
>
> Best regards,
> Angie Stearns
>
> On Wed, Nov 4, 2026 at 4:27 PM David Lindauer <david@viath.com> wrote:
>
>> As you've thoroughly admitted to being non-technical, and no one else on this email chain has any networking, software, hardware, or intricate fiber experience - coupled with the fact that I know and have worked with everyone on your team, I can confidently tell you that your assertions and assumptions are entirely inaccurate. Since you are not an expert in any part of the subject matter, holding yourself out as having a qualified opinion

on topics and custom systems you don't understand, is unbecoming and inappropriate.

You've refused payment for emergency services before and withheld payment longer than you promised in the past. Since the request requires "drop everything and fix it" attention, it qualifies as an emergency. I'm sure if you called an electrician or HVAC specialist right now and said "it's 4pm, I don't want to pay emergency rates but I need you here right now", they would find that rather insulting. The rate for senior network personnel is $300/hr for emergencies. If you'd like to pay our last emergency service call, which **was pre-approved** and we told you in writing to speak to your team who would verify it - including for propane needed for the generator that was easily provable and benefited the estate, then I would go with $250 on this one. If you're still denying paying the previously provided emergency invoices, I must insist this rate is $300/hr as we've documented to you before.

On Wed, Nov 4, 2026 at 4:16 PM Tegan Christianson <tchristianson@sonorancap.com> wrote:

David,

We have been over this multiple times in the past. This is a defined issue, that has been known about for some time, that is being performed within normal business hours. I understand that you want to be paid emergency rates. We have yet to be provided any documentation showing justification for those rates. In the spirit of expediency, let us compromise. We are comfortable paying $250 an hour for your services to remedy these issues promptly.

It also bears mentioning that you have not interacted with, or allowed any kind of insight into the network to allow our personnel to get up to speed. We reject the notion that the receivership does not have personnel capable of handling these issues. The gating factor is, and has been, access that we have not been granted, not the capabilities of the personnel we have enlisted.

Best,

**Tegan Christianson**
**Sonoran Capital Advisors**
385-250-8830
**tchristianson@sonorancap.com**

---

**From:** David Lindauer <david@viath.com>
**Sent:** Wednesday, November 4, 2026 4:08 PM
**To:** Tegan Christianson <tchristianson@sonorancap.com>
**Cc:** Laura Newman <laura@maverixbroadband.com>; jcwalters7@gmail.com <jcwalters7@gmail.com>; Laird, David <dlaird@fennemorelaw.com>; David Lindauer <otlayi.david@gmail.com>; Patrick R. Akers <pakers@markuswilliams.com>; Scott ehlers <scottehlers@hotmail.com>; Bryan Perkinson <bperkinson@sonorancap.com>; hartlt@ballardspahr.com <hartlt@ballardspahr.com>; john@theminerva.com <john@theminerva.com>; Angie Stearns <angie@mx-bb.com>; Matthew Campbell <matthew@cswlegal.com>
**Subject:** Re: Overheating Issue Within NOC Cabinet

Setting aside your obvious bad-faith arguments and mischaracterizations, the emergency services rate for a senior network engineer is and has always been $300 an hour. I'm happy to put in the time, right now, but these are industry-standard rates and require both physical and software changes, potentially running to the fire station, and perhaps installing a secondary SFP in LACP configuration and helping them and our side reconfigure things. These are not tasks you have any personnel qualified or capable of doing, regardless of how many times you phrase it as such, but we can discuss your misunderstanding of what's involved and the technical resources later.

Please confirm you will pay the industry standard, drop-everything emergency rates for our time and I will immediately work on this restoration. Thanks

On Wed, Nov 4, 2026 at 3:49 PM Tegan Christianson <tchristianson@sonorancap.com> wrote:

David,

Despite our attempt to reach a middle-ground arrangement, you rejected our request and inserted yourself into the repair after we required that you not do so. Not only that, you denied Laura Newman access to the NOC cabinet to document the repair and the condition of the components, which we stated was necessary so that the documentation could be provided to all parties in this thread.

We have now been informed that the local fire station is offline as a result of this issue, an issue you have prevented us from remedying despite your obligation to allow our personnel onto the premises. I don't think I need to remind you again that the Receivership Order remains in effect, and you have now violated it numerous times over the course of this emergency.

We have arrived at another uncomfortable crossroads. Because you have refused to give our personnel the passwords and credentials necessary to remedy this on our own, we must once again work together to address it. We cannot have VoIP customers offline. We cannot have the local fire station offline.

We are now requesting that you work to remedy whatever is causing the fire station to be taken offline. We agree to pay you the rates the Receiver has previously proposed for you to perform this work. We also request that you document the exact issues and their root causes so they can be examined after the fact by our own network engineering team.

Finally, we have just received notice that additional repair personnel will be on-site imminently to look at the malfunctioning unit. We reaffirm our request that you not interact with Laura Newman or the repair personnel while they are performing their work, and we reaffirm our insistence that you not be present while Laura is documenting and observing the repair.

We will continue to coordinate with Ms. Newman to remedy this issue. The Receiver reserves all rights with respect to your prior refusals of access, including its right to seek relief from the Court.

Best,

**Tegan Christianson**
**Sonoran Capital Advisors**
**385-250-8830**
**tchristianson@sonorancap.com**

---

**From:** Laura Newman <laura@maverixbroadband.com>
**Sent:** Wednesday, November 4, 2026 1:27 PM
**To:** Tegan Christianson <tchristianson@sonorancap.com>
**Cc:** David Lindauer <david@viath.com>; jcwalters7@gmail.com <jcwalters7@gmail.com>; Laird, David <dlaird@fennemorelaw.com>; David Lindauer <otlayi.david@gmail.com>; Patrick R. Akers <pakers@markuswilliams.com>; Scott ehlers <scottehlers@hotmail.com>; Bryan Perkinson <bperkinson@sonorancap.com>; hartlt@ballardspahr.com <hartlt@ballardspahr.com>; john@theminerva.com <john@theminerva.com>; Angie Stearns <angie@mx-bb.com>; Matthew Campbell <matthew@cswlegal.com>
**Subject:** Re: Overheating Issue Within NOC Cabinet

Hello All,

I have received the email and am attempting to contact David and Kate, the property owners.

On Wed, Nov 4, 2026 at 1:09 PM Tegan Christianson <tchristianson@sonorancap.com> wrote:

David,

Let's see if we can get this remedied today, immediately. We can have the electrician there between 2:00 and 2:30 today. Here is what we require to get this done.

First, the delay in this repair is the direct result of your refusal to allow the Receiver's personnel access to your property, despite the Receivership Order requiring you to do so. As previously noted, paragraphs 10, 11, and 20–22 of the Receivership Order require you to provide access to the network and not interfere with the Receiver's duties. Your refusal is a breach of the Order.

Second, whatever the merits of your objections, the Receiver's priority is the customers being affected by this outage, particularly those relying on VoIP service. To get this resolved, the Receiver is willing to move forward with a middle-ground solution now and set aside the issue of your interference for later.

Third, the Receiver will allow Laura Newman to accompany the electrician as the Receiver's representative, on the following basis:

1. Ms. Newman will be the only person to accompany the electrician into the room where the cabinet is located.
2. Neither you nor any representative of yours will be present while Ms. Newman and the electrician are there.
3. Ms. Newman will document the repair, as well as the condition of the cabinet components you claim are degrading as a result of this issue, and that documentation will be provided to all parties.

Fourth, this will be a continuing arrangement. The diagnosis and remedy will very likely require two separate appointments. The requirements above will apply to that visit and to every future occasion on which the Receiver requires access to the property.

Please confirm today that you agree to these terms so that the electrician can be scheduled. The Receiver reserves all rights with respect to your prior refusals of access, including its right to seek relief from the Court.

Best,

**Tegan Christianson**
**Sonoran Capital Advisors**
**385-250-8830**
**tchristianson@sonorancap.com**

---

**From:** David Lindauer <david@viath.com>
**Sent:** Tuesday, November 3, 2026 7:30 PM
**To:** jcwalters7@gmail.com <jcwalters7@gmail.com>
**Cc:** Laird, David <dlaird@fennemorelaw.com>; David Lindauer <otlayi.david@gmail.com>; Laura Newman <laura@maverixbroadband.com>; Patrick R. Akers <pakers@markuswilliams.com>; Scott ehlers <scottehlers@hotmail.com>; Bryan Perkinson <bperkinson@sonorancap.com>; hartlt@ballardspahr.com <hartlt@ballardspahr.com>; john@theminerva.com <john@theminerva.com>; Angie Stearns <angie@mx-bb.com>; Matthew Campbell <matthew@cswlegal.com>; Tegan Christianson <tchristianson@sonorancap.com>
**Subject:** Re: Overheating Issue Within NOC Cabinet

Mr. Walters,

Thank you for clarifying. I agree with you: law enforcement should not be necessary when everyone wants the same thing.

There is a simple way to finish this today. Ms. Newman is a receivership manager, both parties trust her, she lives next door, and she has standing permission to be at the NOC at any hour. She was here yesterday, ready to meet the electrician, and the Receiver sent the electrician away. If the Receiver sends the electrician back with Ms. Newman as its representative, no escort is needed, the sheriff does not need to be involved, and I do not need to be present. A call from her when the electrician is on the way is all it

takes.

Mr. Laird's proposal replaces Ms. Newman with a different representative. There is no operational reason for that. The only change it makes is to bring someone else to my family's home instead of the manager who is already next door and authorized.

The delay has a real cost. This is now the fifth day. Customers are writing in about their service and say they are not getting answers. As a stopgap I asked for approval to be reimbursed for a portable AC unit, about $500, which would likely have prevented most of this. The attached screenshot shows the last three hours of traffic (red is degraded).

I would ask the Receiver to confirm tonight that Ms. Newman will meet the electrician. A receivership manager who is on site and available is the fastest path to the repair. If the Receiver still insists on someone else, or on law enforcement, that choice is not about the repair.



On Tue, Nov 3, 2026 at 6:17 PM <jcwalters7@gmail.com> wrote:

> David Lindauer is correct that our discussion yesterday assumed the presence of law enforcement, a representative of the receiver and a representative of David/Viath, similar to a civil assist that occurs in evictions. Apologies for leaving out that crucial element during my discussion with you earlier today, David Laird. It likely slipped my mind because I'm struggling to understand why law enforcement is necessary when everyone involved wants the same thing – a repair.
>
> Jared
>
> ---
>
> **From:** David Lindauer <david@viath.com>
> **Sent:** Tuesday, November 3, 2026 1:54 PM
> **To:** Laird, David <dlaird@fennemorelaw.com>
> **Cc:** David Lindauer <otlayi.david@gmail.com>; Laura Newman <laura@maverixbroadband.com>; Jared Walters <jcwalters7@gmail.com>; Patrick R. Akers <pakers@markuswilliams.com>; Scott ehlers <scottehlers@hotmail.com>; Bryan Perkinson <bperkinson@sonorancap.com>; hartlt@ballardspahr.com; john@theminerva.com; Angie Stearns <angie@mx-bb.com>; Matthew Campbell <matthew@cswlegal.com>; Tegan Christianson <tchristianson@sonorancap.com>
> **Subject:** Re: Overheating Issue Within NOC Cabinet
>
> No, that's not remotely consistent with what Mr. Walters and I discussed.
>
> Through Ms Newman, the receiver indicated they would provide the sheriff as a neutral party and we

agreed with Mr Walters there would be a path forward to allow this, if it was necessary.

What you're now stating is what was already in place yesterday and you refused and sent everyone home: the receivership with a representative onsite (Ms Newman, a manager who is a neutral party). Ms Newman may still have 24/7 access to the property on behalf of the receivership. If that is your preferred path, we will await a phone call from her when she is on her way over with the electrician in route.

On Tue, Nov 3, 2026 at 1:08 PM Laird, David <dlaird@fennemorelaw.com> wrote:

> Mr. Lindauer: I spoke with the Chapter 11 Trustee and his counsel this morning. I understand that Mr. Walters discussed with you the following and that you seemed amenable:
>
> The electrician (and any other vendor necessary to complete the repair) may enter your residential property to make the repair(s), with a Receiver's representative. Likewise, you may have a representative present to observe and document. Is this agreeable to you? The Receiver's representative would likely be Angie Stearns.
>
> Today, please advise of your position. If this proposal is not agreeable we will file a motion to bring this matter to the attention of the state court and seek the appropriate relief.
>
> Please advise.
>
> Thank you,
>
> David Laird
>
> David A. Laird
> Director
>
> FENNEMORE.
>
> 3615 Delgany St, Suite 1100, Denver, CO 80216-3997
> T: 303.813.3836
> dlaird@fennemorelaw.com | View Bio

**CONFIDENTIALITY NOTICE:** The information contained in this message may be protected by the attorney-client privilege. If you believe that it has been sent to you in error, do not read it. Please immediately reply to the sender that you have received the message in error. Then delete it. Thank you.

---

**From:** Matthew Campbell <matthew@cswlegal.com>
**Sent:** Monday, November 2, 2026 12:03 PM
**To:** Tegan Christianson <tchristianson@sonorancap.com>
**Cc:** Laura Newman <laura@maverixbroadband.com>; David Lindauer <david@viath.com>; Jared Walters <jcwalters7@gmail.com>; Patrick R. Akers <pakers@markuswilliams.com>; Scott ehlers <scottehlers@hotmail.com>; Bryan Perkinson <bperkinson@sonorancap.com>; Laird, David <dlaird@fennemorelaw.com>; hartlt@ballardspahr.com; john@theminerva.com; Angie Stearns <angie@mx-bb.com>
**Subject:** Re: Overheating Issue Within NOC Cabinet

I was just letting you know that he was waiting for the electrician along with Ms. Newman, apparently before these problems started.

Also, I don't represent Mr. Lindauer personally, so negotiations regarding entry to his personal home are outside the scope of my representation. My guess is that the scope of the easement, which I assume Mr. Lindauer granted, would control that question, though I haven't seen it (nor do I really know if there was an easement - I am just assuming there must be.)

Matthew Campbell

On Mon, Nov 2, 2026 at 10:24 AM Tegan Christianson <tchristianson@sonorancap.com> wrote:

> David,
>
> Receivership personnel have once again been turned away from your property. They are currently sitting with the electrician waiting to get on-site. We are reaching out to local law enforcement to have them accompany our personnel into the room where the cabinet it housed. This is amounting to an enormous waste of resources for a simple breaker/AC fix. If law enforcement personnel are unable to come out promptly, we will reschedule the visit when they are available.
>
> This is an issue that you claimed needed an emergency response. We have made it abundantly clear what our requirements were to take control of these repairs and ensure that they are paid for. Your refusal to comply with the receivership order is now resulting in an extended delay, and significant additional cost to have this coordinated.
>
> We will continue to attempt to coordinate a repair with law enforcement and will keep all parties in this chain informed as we continue to work to address these issues.
>
> Per Mr. Campbell's most recent note, it is irrelevant to the requests that the receiver has put forward to Mr. Lindauer. He does not get to coopt receivership employees and determine who is

or is not onsite or present.

---

**From:** Tegan Christianson <tchristianson@sonorancap.com>
**Sent:** Monday, November 2, 2026 9:32 AM
**To:** Laura Newman <laura@maverixbroadband.com>
**Cc:** David Lindauer <david@viath.com>; Jared Walters <jcwalters7@gmail.com>; Patrick R. Akers <pakers@markuswilliams.com>; Scott ehlers <scottehlers@hotmail.com>; Bryan Perkinson <bperkinson@sonorancap.com>; Laird, David <dlaird@fennemorelaw.com>; hartlt@ballardspahr.com <hartlt@ballardspahr.com>; john@theminerva.com <john@theminerva.com>; Matthew Campbell <matthew@cswlegal.com>; Angie Stearns <angie@mx-bb.com>
**Subject:** Re: Overheating Issue Within NOC Cabinet

Laura, All,

We have an electrician scheduled to come between 10:00 and 10:30 today. We will have two receivership personnel on-site to accompany the electrician to the repair and oversee the tech. Please ensure the dogs are inside and that our personnel are allowed on-site.

As a reminder, the receivership order permits our personnel access, and it will be a breach of the order to restrict their access to the detached garage on your property. We expect them to be with the electrician the entire time the repair is taking place. We look forward to hearing that this issue has been remedied.

Thank you

Get Outlook for iOS

---

**From:** Tegan Christianson <tchristianson@sonorancap.com>
**Sent:** Saturday, 31 October 2026 13:59:30
**To:** Laura Newman <laura@maverixbroadband.com>
**Cc:** David Lindauer <david@viath.com>; Jared Walters <jcwalters7@gmail.com>; Patrick R. Akers <pakers@markuswilliams.com>; Scott ehlers <scottehlers@hotmail.com>; Bryan Perkinson <bperkinson@sonorancap.com>; Laird, David <dlaird@fennemorelaw.com>; hartlt@ballardspahr.com <hartlt@ballardspahr.com>; john@theminerva.com <john@theminerva.com>; Matthew Campbell <matthew@cswlegal.com>; Angie Stearns <angie@mx-bb.com>
**Subject:** Re: Overheating Issue Within NOC Cabinet

Laura,

Thanks for following up.

We'll let you know as soon as we are able to secure someone to come out. The notice may be short if we can secure someone on a holiday weekend so please be ready to pass our messages

along if any of the groups we have contacted get back to us.

Get Outlook for iOS

---

**From:** Laura Newman <laura@maverixbroadband.com>
**Sent:** Saturday, 31 October 2026 11:26:36
**To:** Tegan Christianson <tchristianson@sonorancap.com>
**Cc:** David Lindauer <david@viath.com>; Jared Walters <jcwalters7@gmail.com>; Patrick R. Akers <pakers@markuswilliams.com>; Scott ehlers <scottehlers@hotmail.com>; Bryan Perkinson <bperkinson@sonorancap.com>; Laird, David <dlaird@fennemorelaw.com>; hartlt@ballardspahr.com <hartlt@ballardspahr.com>; john@theminerva.com <john@theminerva.com>; Matthew Campbell <matthew@cswlegal.com>; Angie Stearns <angie@mx-bb.com>
**Subject:** Re: Overheating Issue Within NOC Cabinet

Hello All,

Do we have an update on the electrician situation?

On Fri, Oct 30, 2026 at 6:05 PM Tegan Christianson <tchristianson@sonorancap.com> wrote:

> David,
>
> It appears we may be talking past each other, so I'll keep this brief.
>
> 1. We reject any suggestion that our personnel acted inappropriately or unprofessionally while attempting to oversee the HVAC technician's work. Before they arrived, Laura Newman told us that you and your wife did not want our personnel on the property and that they would not be allowed on-site. No reason was given.
> 2. You told us this was an emergency that needed immediate attention. We told you we were working to schedule emergency repairs on short notice. You then left your residence and put yourself where no one could reach you.
> 3. Our personnel spoke with the technician who was on-site today. He explained that the root cause of the AC not functioning is electrical (the condenser breaker is tripped and will not reset) and is not something he can remedy on his own. He recommended we bring in an electrician, and we are working to schedule one now. Any refrigerant issue will be addressed once the unit has power again.
> 4. We are happy to keep scheduling through Laura. We will let her know when an appointment is set, and she can pass it along to you. We do insist, however, that our personnel be on-site to oversee any repairs. Your preference on this point is noted, but it is not your determination to make. Whether the receivership or the Chapter 11 trustee is ultimately responsible for these assets, neither needs your permission as to who accompanies the repair personnel. By way of reminder paragraphs 10, 11, and 20-22 of the receivership order require you to provide access to the network and not to interfere with the receiver's duties. If our personnel are denied access when the electrician arrives, we will request a law enforcement civil standby to keep the peace while they accompany the repair personnel and, if necessary, seek another contempt citation.
> 5. IP ArchiTechs has a presence south of Denver and is well versed in both the physical and logical layout of fiber networks. If this is a hardware issue, they are more than capable of examining it and recommending what needs to be done. We will not pay for exploratory work on assets we are not allowed to access or view without our designated personnel present. If our personnel are present and can confirm the necessary fixes, we are willing to pay the rates the Receiver has previously proposed as fair market value for you and

your employees.

Best,

**Tegan Christianson**

**Sonoran Capital Advisors**

**385-250-8830**

**tchristianson@sonorancap.com**

---

**From:** Laura Newman <laura@maverixbroadband.com>
**Sent:** Friday, October 30, 2026 3:45 PM
**To:** David Lindauer <david@viath.com>
**Cc:** Jared Walters <jcwalters7@gmail.com>; Tegan Christianson <tchristianson@sonorancap.com>; Patrick R. Akers <pakers@markuswilliams.com>; Scott ehlers <scottehlers@hotmail.com>; Bryan Perkinson <bperkinson@sonorancap.com>; Laird, David <dlaird@fennemorelaw.com>; hartlt@ballardspahr.com <hartlt@ballardspahr.com>; john@theminerva.com <john@theminerva.com>; Matthew Campbell <matthew@cswlegal.com>; Angie Stearns <angie@mx-bb.com>
**Subject:** Re: Overheating Issue Within NOC Cabinet

I am, as always, happy to help where I can.

On Fri, Oct 30, 2026 at 3:50 PM David Lindauer <david@viath.com> wrote:

> Tegan,
>
> Laura, as a manager, is welcome to come onto the property and supervise any repair, any time it is needed. That has been my standing offer throughout the receivership, and it was the offer on the table today. No one has denied access. Your account of this afternoon is wrong on nearly every point, and I will not let it stand on a thread the Trustee is now reading.
>
> Your 11:46 email said the appointment was Tuesday and that something sooner might come on short notice. I replied at 12:15, named Laura as the point of contact, and asked about payment and a portable AC unit. I then left the house. At 12:40 you announced a technician "within the next two hours," without answering any of those questions. I did not have email access at that time and you had not set any expectations of an immediate access need.
>
> Laura did exactly what she should have. Before anyone arrived, she told your team in writing that my wife would not allow the personnel you had named onto the property, and she offered to come over and supervise herself. My wife accepted that immediately. Your team declined Laura and said it would send two men instead. Before they came out, my wife said not to send them: one cannot communicate with her at all, because he speaks only Spanish and she does not, and the other has a history of hostility toward my family. Your team sent them anyway, against her express wishes. That is not "zero reason." The reason and an alternative were given before anyone was dispatched.
>
> My wife was a woman home alone, on a large country property with no view of neighbors, with the dogs put away as you asked. The technician arrived, and one minute later the two men your team sent pulled in behind him. She told them in person that they would not be allowed on the property. One insisted they would be coming in anyway and yelled at her while she was trying to speak with the technician. Neither has HVAC or electrical experience. After the technician left, the two men were waiting down the street and tried again to come onto the property before the gate closed. She was frightened, and she does not feel safe having either of them here again. Any homeowner may ask that particular people

not be sent to her home.

You also blame me that the technician left. At 1:20 you wrote: "Please inform the repair person that he needs to leave unless our people will also be allowed into the cabinet." I was still out, without my cell phone and having seen none of your messages. He completed his evaluation anyway. His invoice (L&L Heating & Air Conditioning, No. 75146103026) says the system "seems to have a refrigerant leak," and separately that the breaker for the outside condenser "is tripped and will not turn on" and needs a licensed electrician. So "not an AC leak" is wrong. It is both. And the leak is not new. L&L's own notes show refrigerant added in February and again in April, and on April 8 L&L recommended having the installer "verify where system is leak," noting that parts and possible labor "should be under warranty." That was six months ago, during the receivership, and nothing was done.

On IP ArchiTechs: what we are dealing with now is a hardware problem, not a network problem. The servers in that room, some owned by Viath and all maintained by Viath without any payment from the receivership, run the systems the CSRs use every day to see and manage customer service. They run custom configurations IP ArchiTechs has never seen and has no access to, and IP ArchiTechs has never once contacted us. Anyone new would need our people to walk them through it, which costs the estate more than letting us spend a couple of hours diagnosing the problem and telling you what needs repair or replacement. We are ready to do that, at our prior emergency rates. The SMx server in the same room has been down since the August 2 power event. We and your own staff have asked repeatedly to bring it back, and nothing happened until the Trustee joined this thread, nearly 3 months later.

Jared, this was never about the Receiver entering my residence. I am not objecting to the repair, and access is open with Laura supervising. The objection is to the Receiver forcing personnel onto the property who are not qualified for this work and who have made threats against, intimidated and been hostile to my family and our team. The receivership does not have one person capable of working on the fiber, the equipment, the electrical or the HVAC at this location, so sending its staff does nothing for the repair, and the real question is why they were sent. Qualified professionals, and management staff who have not threatened our team, have never been refused and never will be. On moving the equipment: more than 1,200 fibers from multiple directions are spliced into this building, which has a redundant power feed and a generator. It cannot be moved overnight, relocation has been quoted at months of work, and prospective buyers have told us they would handle it after a closing, so it should not be billed to the estate.

Tegan, keeping this equipment running has been the Receiver's responsibility since January. Please stop rewriting what happened, and schedule the electrician through Laura with reasonable notice. My offer to go purchase and be reimbursed for a portable AC unit or additional fans also stands.

David Lindauer

On Fri, Oct 30, 2026 at 2:51 PM Jared Walters <jcwalters7@gmail.com> wrote:

> There need not be any coordination. As chapter 11 trustee, I have no objection to what the receiver is proposing to do here.
>
> David, if you are objecting to the receiver entering your residence to perform repairs or maintenance on an asset that you are now asserting belongs to the bankruptcy estate (and I don't know if you are making that assertion), then from my perspective, and without remarking in any way on the ownership question, all that equipment should immediately be moved to a location outside your personal space. That will solve this access problem for everyone.
>
> Jared

On Friday, October 30, 2026, Tegan Christianson <tchristianson@sonorancap.com> wrote:

David,

It has been reported to us that the repair tech has left.

First, our personnel were not allowed on-site to oversee the repair technician while he examined the issue. That is unacceptable. If the receivership estate is going to assume the payments to remedy this problem on your property, then it needs to be handled on our terms. We gave proper notice through the channel you requested, and you provided zero reason for refusing our personnel access.

Second, the issue is not an AC unit leak, as was reported. We are currently reaching out to electricians who will be better equipped to handle the issue. We will handle the scheduling the same as was handled today through the personnel you have indicated.

So that we are clear: the Trustee and CooperReilly, parties on opposite sides of the ownership dispute over these assets, both cleared the plan we proposed. You did not hold up your end by allowing our personnel on-site to handle this issue. When we are able to schedule an electrician, we will notify you of the time they will be available. We require that our personnel be on-site to oversee the repairs. If that is not going to be allowed, then we will not be scheduling the repairs or fronting their costs.

We suggest that you coordinate with the Chapter 11 Trustee to explain why our personnel were not allowed on-site and to develop a stance moving forward to ensure this doesn't happen again.

Best,
**Tegan Christianson**
**Sonoran Capital Advisors**
**385-250-8830**
**tchristianson@sonorancap.com**

---

**From:** Tegan Christianson <tchristianson@sonorancap.com>
**Sent:** Friday, October 30, 2026 12:20 PM
**To:** David Lindauer <david@viath.com>; jcwalters7@gmail.com <jcwalters7@gmail.com>; Laura Newman <laura@maverixbroadband.com>
**Cc:** Patrick R. Akers <pakers@markuswilliams.com>; Scott ehlers <scottehlers@hotmail.com>; Bryan Perkinson <bperkinson@sonorancap.com>; Laird, David <dlaird@fennemorelaw.com>; hartlt@ballardspahr.com <hartlt@ballardspahr.com>; john@theminerva.com <john@theminerva.com>; Matthew Campbell <matthew@cswlegal.com>; Angie Stearns <angie@mx-bb.com>
**Subject:** Re: Overheating Issue Within NOC Cabinet

David,

We have heard that our personnel are not being allowed on-site with the repair person. We are not going to allow the repair to take place without our personnel being allowed access. Please inform the repair person that he needs to leave unless our people will also be allowed into the cabinet.

Get Outlook for iOS

---

**From:** Tegan Christianson <tchristianson@sonorancap.com>
**Sent:** Friday, 30 October 2026 11:40:27
**To:** David Lindauer <david@viath.com>; jcwalters7@gmail.com <jcwalters7@gmail.com>; Laura Newman <laura@maverixbroadband.com>
**Cc:** Patrick R. Akers <pakers@markuswilliams.com>; Scott ehlers <scottehlers@hotmail.com>; Bryan Perkinson <bperkinson@sonorancap.com>; Laird, David <dlaird@fennemorelaw.com>; hartlt@ballardspahr.com <hartlt@ballardspahr.com>; john@theminerva.com <john@theminerva.com>; Matthew Campbell <matthew@cswlegal.com>; Angie Stearns <angie@mx-bb.com>
**Subject:** Re: Overheating Issue Within NOC Cabinet

David,

We have been able to schedule a technician. They plan to be on-site today within the next two hours. We will have receivership personnel to accompany the technician. They will coordinate with Laura and you to provide exact timing when everyone plans to be on-site. Please ensure that your dogs are inside and that the technician and receivership personnel are allowed complete access to all areas that will be necessary to do the repairs.

As has consistently been the Receiver's position, all work that needs to be done must be pre-approved and defined before any payment can be agreed to. If any technical networking or back-end work needs to be done to repair the network, we will ask that it be handled hand-in-hand with the network engineering firm that we have brought in, IP ArchiTechs. They will work to verify and provide recommendations on any issues that are arising out of the problems at the cabinet. Once the problems have been defined and identified with our network engineers, we will be happy to confirm any payment amounts to remedy whatever problems are discovered, at the rates that the receiver has previously proposed.

Best,

**Tegan Christianson**
**Sonoran Capital Advisors**
**385-250-8830**
**tchristianson@sonorancap.com**

---

**From:** David Lindauer <david@viath.com>
**Sent:** Friday, October 30, 2026 11:15 AM
**To:** jcwalters7@gmail.com <jcwalters7@gmail.com>; Laura Newman <laura@maverixbroadband.com>
**Cc:** Patrick R. Akers <pakers@markuswilliams.com>; Tegan Christianson <tchristianson@sonorancap.com>; Scott ehlers <scottehlers@hotmail.com>; Bryan Perkinson <bperkinson@sonorancap.com>; Laird, David <dlaird@fennemorelaw.com>; hartlt@ballardspahr.com <hartlt@ballardspahr.com>; john@theminerva.com <john@theminerva.com>; Matthew Campbell <matthew@cswlegal.com>; Angie Stearns <angie@mx-bb.com>
**Subject:** Re: Overheating Issue Within NOC Cabinet

I have added Laura Newman, the CSR Manager who interfaces with customers, is on the front lines with these problems, and lives at the adjacent property who can help coordinate matters.

I will of course work with any HVAC technician that is able to come on site and I would request that you provide any new information through Ms Newman so I can try to facilitate and ensure access in the event I am not presently available. Getting this resolved is a top concern and not hearing back in over 24 hours for such a critical matter that effects much of the footprint has been a bit worrisome. We now suspect the delay in response has further degraded the equipment and may have created additional problems.

Since previous emergency services in these situations have often been ignored or gone unpaid, I request confirmation that any time I or the entities and staffing I maintain that are involved in this repair are properly compensated at the previous emergency services rates and paid in a timely manner. We also now have grave concerns that the servers, some of which are owned by Viath, have now become damaged, potentially causing data corruption or hard drive failure, as critical services such as UISP for managing customer equipment are offline. These issues will all take resources, from multiple entities, to evaluate, mitigate, restore, and possibly rapidly replace any drives that may have failed in order to restore services and functionality.

However, I do not have a series of fans or anything that can provide proper ventilation—only the bare minimum. This is why I made the request to purchase and be immediately reimbursed, or have the receiver purchase and allow me to collect and install a portable AC unit. I can optionally purchase a series of fans, but blowing out the hot air into an enclosed space is not the same as blowing in cold air. I do not believe the fans at my disposal will be enough to sufficiently mitigate the problem.

Once we have proper assurances and a path forward, we can immediately work to address the situation as rapidly and as best as possible. Thank you

On Fri, Oct 30, 2026 at 12:06 PM <jcwalters7@gmail.com> wrote:

> I support that plan as chapter 11 trustee. I added Matthew Campbell, debtor’s bankruptcy counsel, to the email chain for good measure.

**From:** Patrick R. Akers <pakers@markuswilliams.com>
**Sent:** Friday, October 30, 2026 11:50 AM
**To:** Tegan Christianson <tchristianson@sonorancap.com>; Scott ehlers <scottehlers@hotmail.com>; Bryan Perkinson <bperkinson@sonorancap.com>; Laird, David <dlaird@fennemorelaw.com>; Jared Walters <jcwalters7@gmail.com>; hartlt@ballardspahr.com; 'john@theminerva.com' <john@theminerva.com>; David Lindauer <david@viath.com>
**Cc:** Angie Stearns <angie@mx-bb.com>
**Subject:** RE: Overheating Issue Within NOC Cabinet

All, CooperReilly supports this path forward.

Pat

Patrick R. Akers

Markus Williams LLC

1775 Sherman Street, Suite 1950

Denver, CO 80203-4540

303-301-3151

www.markuswilliams.com

**CONFIDENTIAL ATTORNEY-CLIENT OR OTHERWISE PRIVILEGED COMMUNICATION DO NOT FORWARD WITHOUT PERMISSION**

CONFIDENTIAL COMMUNICATION *E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof.*

**From:** Tegan Christianson <tchristianson@sonorancap.com>
**Sent:** Friday, October 30, 2026 11:46 AM
**To:** Scott ehlers <scottehlers@hotmail.com>; Bryan Perkinson <bperkinson@sonorancap.com>; Patrick R. Akers <pakers@markuswilliams.com>; Laird, David <dlaird@fennemorelaw.com>; Jared Walters <jcwalters7@gmail.com>;

hartlt@ballardspahr.com; 'john@theminerva.com' <john@theminerva.com>; David Lindauer <david@viath.com>
**Cc:** Angie Stearns <angie@mx-bb.com>
**Subject:** Re: Overheating Issue Within NOC Cabinet

All,

We are working to secure an HVAC technician to come out and fix the problem at the cabinet. To do that, we will need Mr. Lindauer to keep his dogs inside and allow receivership estate personnel and the technician access to the cabinet so the repair can be made. We currently have an appointment scheduled for this coming Tuesday, but we are actively looking for alternatives that may be able to come out sooner. That means there may be short notice today or tomorrow if a technician is able to come out. We trust that Mr. Lindauer will comply and allow access to fix the issue if that is the case. Relevant personnel will reach out to schedule when concrete dates/times are solidified.

We recognize that ownership of these assets is disputed. That said, the Receiver views the situation this way: our priority is keeping customers online and preventing outages, regardless of the claims against the transfer of these assets. To handle this in an efficient and speedy manner, we will schedule the technicians, pay the invoices, and have them billed to Maverix Broadband Inc. The ownership disputes can then be handled where they belong, in the adversary proceeding in the Bankruptcy Court.

Finally, in the meantime, we trust that we can count on Mr. Lindauer to take some minimal steps to keep the temperature within normal bounds, such as opening the door or setting a fan in the room where the components are housed.

Best,

**Tegan Christianson**
**Sonoran Capital Advisors**
**385-250-8830**
**tchristianson@sonorancap.com**

--

Respectfully,

**Laura Newman**

Customer Service Manager

720.470.0888

laura@maverixbroadband.com

maverixbroadband.com

--

Respectfully,

**Laura Newman**

Customer Service Manager

720.470.0888

laura@maverixbroadband.com

maverixbroadband.com

--

Respectfully,

**Laura Newman**

Customer Service Manager

720.470.0888

laura@maverixbroadband.com

maverixbroadband.com