**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MAVERIX LLC, | ) | Case No. 26-16423-MER |
| | ) | |
| Debtor. | ) | Chapter 11 |

**DEBTOR'S OBJECTION TO EMERGENCY UNOPPOSED MOTION FOR RELIEF FROM AUTOMATIC STAY (DKT. 133)**

Maverix LLC (the Debtor), through undersigned counsel, objects to the Emergency Unopposed Motion for Relief from Automatic Stay filed by CooperReilly Investment Fund, LLC (CR) and Sonoran Capital Advisors (the Receiver, and together, Movants). The Debtor requests denial of the proposed expansion of control or, alternatively, relief limited to identified operational needs, subject to express protections for the estate and continued oversight by this Court. The Debtor submits this objection pursuant to its right to appear and be heard under 11 U.S.C. § 1109(b). This objection does not purport to speak for the Chapter 11 Trustee or the bankruptcy estate, exercise the Trustee's authority to administer estate property, or prosecute, settle, or control estate claims. The Debtor requests only that the Court deny or appropriately limit the relief sought in Dkt. 133.

**1. THE REQUESTED CONTROL EXCEEDS THE DEMONSTRATED NEED**

The Court previously authorized the Receiver to continue holding the Debtor's property already in its possession, while reserving ownership of disputed property. Dkt. 87 ¶¶ 3–4. Movants now seek possession and control of nearly all remaining estate property, except specified real property, vehicles, and claims. Dkt. 133 ¶ 32; Dkt. 133-3. A dispute concerning repairs at one network location does not, without more, establish the need for that estate-wide expansion.

Reliable service to customers, including first responders, requires prompt repairs and workable access. The Debtor seeks an arrangement that accomplishes those objectives while preserving disputed property, identifying who may act, allocating costs, and keeping the Receiver accountable to the trustee and this Court. The pending adversary proceeding can determine ownership without making operational control unlimited in the meantime.

The proposed order prohibits disposition. Dkt. 133-3. But it contains no express expiration date, identifies the affected property principally through exceptions, and does not specify the permitted operational changes, spending authority, reporting requirements, or limits on relocation and credential transfers. Those omissions matter even if ownership remains reserved.

Movants should identify the additional property sought and explain the operational reason control of each item is necessary. The request for virtually all remaining LLC property, coupled with acknowledged uncertainty over which entity owns which property, does not supply that asset-specific showing. Dkt. 133 ¶¶ 3, 32.

**2. CAUSE REQUIRES A CURRENT, SUPPORTED SHOWING**

Section 362(d)(1) provides relief for cause. The moving party must first establish cause; the burden then shifts to the opponent to show why the stay should remain. The Debtor addresses the asserted operational grounds under that allocation of burdens. § 362(g). *See*, *In re Rankin*, No. 25-17369 MER (Bankr. D. Colo. May 13, 2026); 11 U.S.C. § 362(d)(1), (g).

Movants rely on service disruptions, divided control, the estate's lack of presently available cash, and the Receiver's claimed comparative ability to operate the network. Dkt. 133 ¶¶ 29–31. Resolving one outage does not dispose of every asserted ground for cause. Movants

must still connect the remaining problem to the authority they seek. A repair dispute alone does not justify control of virtually the entire estate.

## 3. THE REPAIR RECORD SUPPORTS LIMITED RELIEF, NOT CONTROL OF THE ESTATE

The repair correspondence establishes that the trustee supported addressing the reported problem while reserving ownership and advising that the estate lacked the present ability to pay. Dkt. 133-1 at 1. The subsequent exchanges show disagreement over which representatives would attend, alongside offers to permit qualified repair personnel to enter with Laura Newman supervising. Dkt. 133-2 at 4–6, 10–11. By November 4, the Receiver agreed that Newman could serve as its representative. Id. at 4. The record supports a practical access arrangement that identifies the attending persons, the work to be performed, and how it will be documented.

A repair and a continuing right of access are different things. The Receiver's November 4 proposal applied its attendance conditions not only to that repair but to every future occasion on which it required access. Id. The Debtor requests that any continuing authority come from a defined order, with express safeguards, rather than from conditions imposed during an emergency exchange.

The Receiver had also proposed how to pay for the repair. The Receiver proposed to schedule technicians, pay their invoices, and have them billed to MXBB while the ownership dispute proceeded in this Court. Dkt. 133-2 at 16. That proposal addresses the work without first transferring control of the rest of the estate. Any broader request should identify the additional tasks, personnel, systems, and funding that make expanded control necessary.

The November 5 correspondence reports that the fire station was back online as of 7:00 p.m. the preceding evening and that the problem was not a networking issue after all.

Christianson email, Nov. 5, 2026, 2:00 p.m. The Motion nevertheless alleged current critical outages affecting first responders when filed November 6. Dkt. 133 ¶ 31. On November 9, Stearns reported that the fire department was again online and the situation was no longer a crisis. Stearns email, Nov. 9, 2026, 10:23 a.m. Other operational concerns may remain. Those communications warrant scrutiny of the claimed need for immediate estate-wide control and waiver of the fourteen-day stay.

The Debtor disputes that the cooling failure establishes the Receiver's comparative ability to operate the network. The October 30 HVAC evaluation documents recurring cooling problems and an earlier recommendation to locate a refrigerant leak, but also reports a tripped breaker and recommends a licensed electrician. L&L Heating & Air Conditioning, Oct. 30, 2026 evaluation at 1–2. The dispute concerns the maintenance and repair response, not whether seeking an electrical evaluation was baseless. Any additional authority should be tied to identified work, qualified personnel, and an accountable repair plan.

The Debtor also identifies loss of access to network maps, an inoperative subscriber-management server, and unresolved testing and locate concerns as disputed operational issues for the hearing. Those functions require qualified personnel, preserved records, and an accountable repair plan. Movants should identify how the proposed expansion will restore those functions rather than rely on a general claim of superior operating capability.

The Motion characterizes Lindauer's June 17 request for $10,000 as extortion. Dkt. 133 ¶ 31. That characterization seems unsupported and contends that the request concerned contractor work and operational assistance. The payment and work history can be addressed through admissible evidence at the hearing.

Upon information and belief a state court hearing regarding these issues was held today, without the Debtor present (though upon information and belief Mr. Lindauer was present at the hearing personally.) The Debtor requests clarification at the hearing of the status and scope of the Receiver's November 9 state-court request for continuing access and a writ of assistance, and of any resulting order. Relief from the Debtor's stay should neither duplicate undefined authority sought elsewhere nor authorize control beyond the limits this Court sets.

## 4. OWNERSHIP AND THE TRANSACTION DISPUTES SHOULD REMAIN IN THE ADVERSARY PROCEEDING

CR seeks a declaration in Adversary Proceeding No. 26-01240-MER that the disputed Acquired Assets left the estate before bankruptcy. The Debtor has asserted retained interests and challenges concerning closing, transfer timing, and the scope of IRU rights, together with alternative claims. Adv. Dkts. 1, 8, 10. The Debtor acknowledges that the trustee has agreed not to oppose CR's summary-judgment motion, subject to the stipulation addressed below. That position is not an adjudication of ownership. The adversary proceeding remains undecided, and the Court can resolve the present operational request without deciding those merits.

Docket No. 146 seeks approval of that stipulation, which provides for the trustee's non-opposition to CR's summary-judgment motion and dismissal of the counterclaims without prejudice. The stipulation makes that authorization effective on the first business day after entry of an approval order, subject to its appeal-and-stay provision, and expressly conditions the stipulation on Court approval. Dkt. 146-1 ¶¶ 2–4, 7. Docket No. 147 sets December 3, 2026 as the objection deadline. The Court should not treat the stipulation as an already-effective authorization or use interim relief under Dkt. 133 to implement the proposed compromise before its consideration. The Debtor requests that the Court defer disposition of the summary-judgment

motion until it has ruled on Dkt. 146 and the stipulation has become effective, if approved, and enter any necessary scheduling order in the adversary proceeding. This request does not assume that Dkt. 146 automatically stays that proceeding or extends any response deadline. Objections to the compromise itself remain for that separate proceeding.

The approved APA makes closing dependent on satisfaction or waiver of conditions, or another mutually agreed date, provides for written waivers, and requires specified deliveries. APA §§ 3.1, 7.1–7.3, 9.6, Adv. Dkt. 10-3 at 12, 21–24. CR relies on declarations and an August 28 email stating that Buyer waived the officer's certificate. Adv. Dkt. 10-1 at 2–4; Adv. Dkt. 10-2 at 2. The legal effect and sufficiency of the claimed deliveries and waivers are matters for the adversary proceeding, not assumptions necessary to authorize a repair.

The Debtor likewise preserves its challenge to rights asserted under the IRU beyond the approved transaction. That challenge must account for the APA's express contemplation of an IRU, post-closing arrangements for missing consents, and the state court's sale authorization. APA §§ 2.5(b), 3.1(b)(iv); Adv. Dkt. 10-4 ¶¶ 2–4. The Partial Settlement Agreement and the Debtor's prior non-objection form part of that record. Dkts. 49-18, 49-37. The present objection concerns the necessity and terms of additional postpetition control; the transaction claims remain for adjudication in their proper proceeding.

The IRU's scope matters even before ownership is decided. The sale order authorizes transfer of Acquired Assets, excluding Excluded Assets, while the IRU defines Covered Assets to include excluded or grant-funded assets and reaches later-acquired or installed assets. Adv. Dkt. 10-4 ¶ 3; Adv. Dkt. 10-6, definition of Covered Assets & §§ 2.2, 15(b)–(c). Even without disposition, operational authority could be used to implement those disputed use rights. Any

interim order should therefore distinguish preservation and repairs from implementation of the IRU, leaving its scope and enforceability for the adversary proceeding.

Preservation must also remain distinct from implementing CR's disputed transaction rights. The Receiver describes its objective as transferring assets to CR, while APA § 2.5(b) and IRU §§ 12(b), 15(d) contemplate actions for CR's benefit and restrictions on adverse positions. Adv. Dkt. 10-2 at 297, 301; Adv. Dkts. 10-3, 10-6. Without deciding enforceability, any interim order should prohibit using preservation authority to implement disputed transfer or use rights and require separate identification and allocation of work performed for CR's transition.

## 5. THE COURT SHOULD CONSIDER TRUSTEE OPERATIONS; THE PROPERTY SHOULD BE REMOVED FROM LINDAUER'S LAND IF RELIEF IS GRANTED TO MOVANT

Any comparison between trustee-led operations and the current arrangement should use supported budgets and comparable categories, including operating expenses and Receiver and counsel fees. The Debtor requests production and review of the records necessary for that comparison, rather than acceptance of an unverified savings estimate.

The A/C problem arose on Lindauer's personally owned real property, not real property owned by the Debtor. Based on information and belief, neither the Receiver nor CR has a lease, easement, or other document creating a current right of entry onto that property and no current easement or right of entry remains. Control over telecommunications equipment located there is distinct from a right to enter the land on which it sits. It would appear that the apparent relief sought, if granted, would be to (and would seem to require) remove all of the property from Lindauer's residence and relocate to another location.

The Bill of Sale lists a purported "Lease with David Lindauer to access telecommunications equipment on his property located at 2755 Winter Way Parker, CO 80138."

Adv. Dkt. 10-5 at 4. Mr. Lindaeur states that the alleged lease does not exist, the undersigned has inquired of case parties but not been able to locate one.

The proposed summary-judgment order makes the distinction concrete. It would declare CR the owner of all scheduled property except enumerated exclusions, which do not include Schedule A/B lines 50.2 and 50.4. Adv. Dkt. 10-9 ¶ H & decretal ¶ 2. Line 50.2 includes network electronics and on-site network-management servers at several locations, including 2755 Winter Way; line 50.4 lists the shipping container at that address. Dkt. 98, Schedule A/B, continuation sheet, lines 50.2, 50.4. Even if that proposed ownership declaration were entered, ownership of the scheduled personal property would not itself create a lease, easement, license, or right to enter the separately owned land.

Therefore, requestd relief will not solve the Receiver's or CR's ongoing access problem. Even if the Court grants possession and control of additional LLC assets, the Receiver and CR will still apparently lack a right to enter Lindauer's real property. Expanding control over estate property cannot supply the missing right of entry onto separately owned land. That failure is the LLC's objection: the requested relief will not remedy the problem offered to justify it. Lindauer's individual property apparently remains separate. Again, it would appear that absent some unknown right for the equipment to remain there on an ongoing basis, if control is granted to the receiver, the property should forthwith be removed from his personal property without further delay as the only viable long term solution.

**6. ALTERNATIVE RELIEF AND THE FOURTEEN-DAY STAY**

Alternatively, any relief should be limited to identified preservation and service needs, subject to trustee oversight and a defined duration, without authorizing disposition, deciding disputed ownership, or creating rights to enter separately owned land.

The Debtor also requests that the fourteen-day stay remain in effect. The governing provision is Fed. R. Bankr. P. 4001(a)(4). Any waiver should be supported by findings identifying the work that cannot await that period and limited to the authority necessary to address that immediate need.

## 7. PRAYER FOR RELIEF

WHEREFORE, the Debtor requests that the Court deny the blanket expansion requested in Dkt. 133; alternatively, limit any relief to demonstrated operational needs on the conditions stated above, expiring on the earlier of a date certain fixed in the order or entry of an order disposing of Dkt. 146 unless expressly extended by this Court; preserve the fourteen-day stay except to the extent specific findings justify a narrower exception; and grant such other relief consistent with these requests and the evidence presented at hearing as is proper.

Dated: November 13, 2026.

Respectfully submitted,
LAW OFFICES OF MATTHEW C. CAMPBELL LLC

/s/ Matthew C. Campbell
Matthew C. Campbell, Colorado Registration No. 42713
170 E 12th St., Suite 9
Durango, CO 81301
Telephone: (970) 422-4270
Facsimile: (970) 478-0178
Email: matthew@cswlegal.com
Counsel for Maverix LLC

## CERTIFICATE OF SERVICE

I certify that on this 13th day of November, 2026, I served the foregoing document (and all attached documents, if any) upon the following:

Alan Motes (Attorney for US Trustee) - ECF System

Patrick R. Akers for Creditor CooperReilly Investment Fund, LLC - ECF System

Matthew T. Faga for Creditor CooperReilly Investment Fund, LLC - ECF System

Benjamin Wieck for Creditor CooperReilly Investment Fund, LLC - ECF System

David A. Laird on behalf of Interested Party Sonoran Capital Advisors - ECF System

Theodore J. Hartl, counsel for the chapter 11 trustee - ECF System

Jared C. Walters, chapter 11 trustee - ECF System

Any other parties who appear in the ECF system.

/s/ Matthew C. Campbel